# 14-3794-cv

## United States Court of Appeals
## for the Second Circuit

GARY BEAUVIOR and HUSBENE BEAUVIOR
on behalf of themselves and all other similarly
situated consumers,

*Appellant,*

-against-

DAVID M. ISRAEL,

*Appellees.*

On Appeal from the United States District Court
for the Eastern District of New York
Honorable Frederic Block, Senior Judge

## APPELLANTS' BRIEF

Submitted *by*:

Levi Huebner, Esq.
Levi Huebner & Associates, PC
*Attorneys for Appellants*
535 Dean Street, Suite 100
Brooklyn, NY 11217
Tel: (212) 354-5555
Fax: (347) 350-8789
Email: newyorklawyer@msn.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES: Rule 28(a)(3)........................................................ii

PRELIMINARY STATEMENT..........................................................................1

APPELLATE JURISDICTION AND SUBJECT MATTER: Rule 28(a)(4) .........1

STATEMENT OF ISSUES: Rule 28(a)(5).........................................................2

    i.    May a debt collector avoid compliance with the FDCPA, on a FRCP 12(b)(6) pre-answer-motion, by labeling the debtor as a thief?......... 2

    ii.    On a FRCP 12(b)(6) pre-answer-motion, did the district court err in taking questions of fact and applying them in the light most favorable to defendant, the moving party? ........................................................ 2

STATEMENT OF THE CASE: Rule 28(a)(6) ....................................................2

    a.    The issue as it appeared before the district court .............................. 2

    b.    Statement of Facts between the parties .............................. 8

SUMMARY ARGUMENT: Rule 28(a)(7)........................................................12

THE ARGUMENT: Rule 28(a)(8)...................................................................15

    I.    Every other debt collector will say the debtor is a thief, without some guidance from this Court setting precedent as to when a debt collector can assert so, the district court erred to assume that the defendant did not need clear and convincing evidence to make the thief assertion.15

    II.    Defendant's FRCP 12(b)(6) pre-answer-motion failed to meet the summary judgment standard of showing that there is no genuine dispute as to any material fact; thus, the district court erred in applying disputed facts in the light most favorable to the moving party. .............................................................................................. 18

CONCLUSION: Rule 28(a)(9) .......................................................................22

CERTIFICATE OF COMPLIANCE: Rule 32(a)(10) ........................................23

# TABLE OF AUTHORITIES: Rule 28(a)(3)

### Cases

*Caceres v. McCALLA Raymer, LLC*,
    755 F.3d 1299 (11th Cir. 2014) ................................................................... 12

*Cf. Staub v. Harris*,
    626 F.2d 275 (3d Cir. 1980) ....................................................................... 13

*Coretti v. Lefkowitz*,
    965 F. Supp. 3 (D. Conn. 1997) ........................................................... 13, 16

*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009) ..................................................................... 16

*Goldman v. Cohen*,
    445 F.3d 152 (2nd Cir. 2006) ..................................................................... 12

*Goldstein v. Hutton, Ingram, Yuzek, Gainen*,
    374 F.3d 56 (2nd Cir. 2004) ....................................................................... 12

*Hamilton v. United Healthcare of Louisiana*,
    310 F.3d 385 (5th Cir. 2002) ..................................................................... 12

*Hawthorne v. Mac Adjustment, Inc.*,
    140 F.3d 1367 (11th Cir. 1998) ................................................................. 17

*Perry v. Dowling*,
    95 F.3d 231 (2d Cir. 1996) ......................................................................... 12

*Piper v. Portnoff Law Associates, Ltd.*,
    396 F.3d 227 (3rd Cir. 2005) ..................................................................... 12

*Romea v. Heiberger & Associates*,
    163 F.3d 111 (2nd Cir. 1998) ............................................................. passim

*Scotto v. Almenas*,
    143 F.3d 105 (2d Cir. 1998) ....................................................................... 12

*Stratton v. Portfolio Recovery Associates, LLC*,
   770 F.3d 443 (6th Cir. 2014) ....................................................................... 15

*U.S. v. Big Crow*,
   327 F.3d 685 (8th Cir. 2003) ....................................................................... 12

*Williams v. Riel*,
   1855 WL 6277 (N.Y. Super. 1855) ............................................................. 17

*Wilson v. Draper & Goldberg, P.L.L.C.*,
   443 F.3d 373 (4th Cir. 2006) ....................................................................... 12

*Zimmerman v. HBO Affiliate Group*,
   834 F.2d 1163 (3d Cir. 1987) ...................................................................... 13

## **Statutes**

15 U.S.C. § 1692 ................................................................................... 1, 15, 21

15 U.S.C. § 1692a(5) ................................................................................... 20

15 U.S.C. § 1692e ....................................................................................... 15

15 U.S.C. § 1692g(1) ........................................................................ 2, 10, 11

15 U.S.C. § 1692g(3) ................................................................... 2, 10, 11, 20

15 U.S.C. § 1692g(4) ........................................................................ 2, 10, 11

15 U.S.C. § 1692g(5) ................................................................... 2, 10, 11, 13

15 U.S.C. § 1692k(a)(3) ............................................................................... 22

## **Rules**

16 NYCRR 11.14(e) ............................................................................ passim

16 NYCRR 13.9(c) ............................................................................... passim

Fed. R. App. P. 3 ....................................................................................... 1, 2

Fed. R. App. P. 39 ........................................................................................ 22

FRCP 12 (b)(6)..................................................................................... 18

FRCP 9(b) ............................................................................................ 18

FRCP Rule 7(b)(1) ............................................................................... 18

**PRELIMINARY STATEMENT**

Usually, on a FRCP 12(b)(6) motion, the facts in a complaint are viewed in the most favorable light to plaintiff, the non moving party. This case, involves a gas bill, which is based on usage, there are no limits to the amount of gas the consumer may consume; the consumer-debt relationship squarely focuses on *usage*. The district court mistakenly assumed that if the debt collector labels a **debt** as "theft," they can escape the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq*. ("FDCPA"). Unfortunately, the district court, reached this error under the rational that, "the Second Circuit has not offered much guidance as to when a particular demand for payment qualifies as a 'debt'." (Joint Appendix "JA" – N, decision p. 3 ¶2).

**APPELLATE JURISDICTION AND SUBJECT MATTER: Rule 28(a)(4)**

The district court had subject matter jurisdiction insofar that the complaint alleges that David M. Israel ("Israel") violated the FDCPA in the "collection of the debt in the amount set forth above, based upon the consumption of unmetered gas" without providing notice of the amount and the 30 days for dispute. (JA-B1 ¶1).

This appeal now proceeds from the Eastern District of New York (Block, *J*) of a final decision entered on August 7, 2014. (JA-O). By Electronic Order, the district court granted the October 6, 2014 notice of appeal as timely. (JA-A). Jurisdiction follows 28 U.S.C. § 1291 and Fed. R. App. P. 4(a)(5).

## STATEMENT OF ISSUES: Rule 28(a)(5)

i.     May a debt collector avoid compliance with the FDCPA, on a FRCP

12(b)(6) pre-answer-motion, by labeling the debtor as a thief?

*District Court's answer: Yes*

ii.     On a FRCP 12(b)(6) pre-answer-motion, did the district court err in

taking questions of fact and applying them in the light most favorable to defendant,

the moving party?

*District Court's answer: No*

## STATEMENT OF THE CASE: Rule 28(a)(6)

### a. The issue as it appeared before the district court

The district court for the Eastern District of New York (Block, *J*) dismissed

this case on August 7, 2014.  (JA-O).  The decision is unpublished.

This case filed March 8, 2013 arose of a demand for payment through a debt

collection letter, in which Gary and Husbene Beauvior ("Beauviors") are in

collection for the ***usage*** of gas.  (JA-B).

The causes of action are, on or about April 23, 2012, Israel demanded

payment from the Beauviors without notice of the amount to be collected, in

violation of 15 U.S.C. § 1692g(1); without providing the required thirty days for

dispute in violation of 15 U.S.C. §§ 1692g(3), 1692g(4), and 1692g(5). (JA-B ¶¶

12 and 25).  The said payment demand states: "Please be advised that I am an

attorney and that I represent The Brooklyn Union Gas Company d/b/a National

Grid New York, the original creditor with respect to the above described matter. My client has referred the above described claim to me *for purposes of collection of the debt* in the amount set forth above, based upon the consumption of unmetered gas at the above stated location." (JA-G5 ¶1) (emphasis added).

The confusion at the district court level comes from the excuse National Grid gives for the $28,305.64 gas bill, through relying on 16 NYCRR 11.14(e) and 16 NYCRR 13.9(c). Never mind that 16 NYCRR is inconsistent in informing when a Utility provider can bill a customer retroactively, called "backbilling." National Grid exclaimed that if the backbilling results from National Grid's error, the backbill could only go back 24-months. (See JA-G3 ¶4). In this case, National Grid relied on 16 NYCRR 11.14(e) and 16 NYCRR 13.9(c)[1] to backbill the Beauviors for six years. (See JA-G3, G4). Regardless of the reasons for the backbill, the debt-collection demand is still based on usage; based on the terms of the *contractual relationship* the Beauviors have with National Grid.[2]

---

[1] Whether National Grid may collect the debt, the claim being in a substantial part barred by the statute of limitations, or the defenses the Beauviors have to the billing amount, those questions are not before the Court. We only discuss here briefly the dispute of the bill itself, to the extent necessary, because the district court judged this debt collection based on its content presumption of the National Grid's complaint in the State court proceeding.

[2] *See* JA-E3 ¶ 18, defendant agrees that the Beauviors have a *contractual relationship* with National Grid.

Despite its inconsistencies, 16 NYCRR 11.14(e) limits backbilling to utility usage: "No utility may render a bill for previously unbilled service or adjust upward a bill previously rendered to a residential customer after the expiration of 24 months from the time the service to which the new billing or adjustment pertains was provided unless the culpable conduct of the customer caused or contributed to the failure of the utility to render a timely or accurate billing." In sum, what "caused or contributed to the failure of the utility to render a timely or accurate billing"−whether the *Customer* or the *Utility*−is certainly a question of fact, negating the unsupported label of unmetered gas as a theft. Still, 16 NYCRR 11.14(e) classifies that backbilling of usage as a debt for a service the Customer received from the Utility provider.

Likewise, 16 NYCRR 13.9(c) provides "Limitations on backbilling period. (1) When the failure to bill at an earlier time was due to utility deficiency, a utility shall not bill a customer for service rendered more than 12 months before the utility actually became aware of the circumstance, error or condition that caused the *underbilling*, unless the utility can demonstrate that the customer knew or reasonably should have known that the original billing was incorrect. (2) A utility shall not bill a customer for service rendered more than 24 months before the utility actually became aware of the *circumstance*, error or condition that caused the *underbilling*, unless the utility can demonstrate that the customer knew or

reasonably should have known that the original billing was incorrect." 16 NYCRR 13.9(c)(emphasis added). Conterminously, it should be obvious that the language "unless the utility can demonstrate that the customer knew or reasonably should have known that the original billing was incorrect" means what it says, to place the burden of proof on the utility provider. Regardless, 16 NYCRR 13.9(c) clearly identifies the *underbilling* as a *circumstance* between the Customer and the Utility provider. This only makes sense, where like here; the Utility provider can charge the consumer only for usage.

The simplicity of this case is: the Beauviors reside at 10 Paerdegat 7 Street since 1992. (JA-G1 ¶ 2). They are National Grid customers since 1992. (JA-G1 ¶¶ 5-6). National Grid's relationship with the Beauviors allows for the gas usage as much as the Beauviors please. (JA-G1, G3, and G4). There are no minimums and there no limits, the bill is for usage. (JA-G3). During that time, from 1992 through 2011, a stretch of 19 years, it is even unknown how many meter readers attended the Beauviors residence to read the meter installed by National Grid. Notably during that period, not a single meter reader reported any problem with the meter, and the Beauviors paid whatever bill National Grid furnished. (JA-G4). From 2005 through 2011, the Beauviors paid at least $5,414.24, based on the recordings reported by the meter readers. (JA-G4).

At this point, the customers-Beauviors are in collection for "unmetered gas." (JA-G5 ¶ 1). The debt collection letter Israel sent to the Beauviors demanding payment seeks to backbill for the duration of 2005 through 2011.  It is obvious, Israel's payment demand, seeks "collection of the ***debt*** in the amount set forth above, based upon the consumption of unmetered gas at the above stated location," an amount relying on 16 NYCRR 11.14(e) and 16 NYCRR 13.9(c).  (JA-B ¶ 24 and B1 ¶ 1) (emphasis added).

To escape liability imposed by the FDCPA, Israel alleged in his FRCP 12(b)(6) motion, that the customer's 20+ year old meter device had a "Green tamper seal torn; Red tamper seal torn; Missing screws on index box missing; and Tamper seals on index box missing," which supposedly delayed the timely billing. (JA-F).  Did the meter fail in "performing its recording function," (JA-N, decision p. 3 ¶ 1),  certainly, Israel omitted to explain how National Grid metered the Beauviors for over 19 years, and never noticed any issue with the meter; these questions are better left for the trier of fact.  Nevertheless, whether the Beauviors meter was broken is irrelevant, as it is obvious, Israel's debt-collection demand only seeks to collect payment of a debt for the gas usage. (JA-G3 and G4).

Likewise, Israel concedes that the Beauviors were under a "contract" with National Grid to pay for the usage of gas, and that the Beauviors are in collection for consumption, known as usage, of unmetered gas.  (JA-E3 ¶ 18). What delayed

National Grid to bill the Beauviors earlier and whether the Beauviors owe that

amount, does not escape the fact that the consumer usage of gas defines the nature

of the debt.

Regardless, the district court understood that it could not decide what

particular demand for payment qualifies as a debt this case because this Court has

not offered much guidance as to when that determination must be made, on a

FRCP 12(b)(6) pre-answer-motion, on summary judgment, or at trial. (JA-N,

decision p. 3). Without the benefit of discovery, the district court thus took judicial

notice that Israel filed a complaint in State court complaining about the unmetered

reading, and reasoning, "What matters in the context of an FDCPA claim is the

asserted basis for the obligation to pay." (JA-N, decision p. 4). However, the

asserted basis for the obligation to pay stems from the contract that the Beauviors

ought to pay for gas usage. Yet, the district court took up on itself to defer the

important question of consumer debt for appellate review because "the Second

Circuit has not offered much guidance as to when a particular demand for payment

qualifies as a 'debt'." (JA-N, id). Moreover, the way Israel defines *customer* and

*utility* cited in 16 NYCRR 11.14(e) and 16 NYCRR 13.9(c) as a "theft" (JA-F

plaintiff's memorandum), is merely a gimmick to exempt from the FDCPA his

letter demand stating "for purposes of collection of the debt." (JA-G5 ¶1). Thus,

Israel's labeling of the debt as a theft is a gimmick conceived to prevent the district

court from properly deciding the FRCP 12(b)(6) motion without some guidance from this Court.

### b. Statement of Facts between the parties

The Beauvoirs have resided at 10 Paerdegat 7 Street since 1992. (JA-G1 ¶2). The gas for 10 Paerdegat 7 Street is supplied through two separate meters. (JA-G1 ¶5 and ¶13). National Grid installed each of the meters.[3] (JA-G1 ¶14). The Beauvoirs reside with their two children on the first and second floor. Wherein National Grid billed them under the account number 6521/61873, and they are currently billed under the account number 90/47098. (JA-G3). A tenant resides on the third floor and is billed under the account number 06521/61863. (JA-G1 ¶¶12-13).

Since 1992, in every billing period, National Grid sent a trained meter reader to inspect the Beauvoirs meter, and to record its usage for that period; thus, between the years of 2005 and 2011, the Beauvoirs paid at least $5,414.24 for their gas bill, based on the recordings of the meter reader. (JA-G4).

The gas usage for the Beauvoirs remained at a regular volume since 1992. (JA-G1 ¶ 10,"). National Grid notes the same volume of gas usage in the more recent billing of 2012 onwards, even after upgrading the meter. (JA-G1). The key

---

[3] Brooklyn Union Gas installed these meters when the house was built in 1965.

here is the Beauvoirs had no reason to suspect anything was wrong with their gas meter.

At some point in 2011, National Grid came to upgrade the Beauvoirs gas meter. (JA-G1). Thereafter, the Beauvoirs received a bill, dated December 5, 2011, for gas usage between October 25, 2005 and September 7, 2011 claiming an outstanding balance of $28,305.64. (JA-G4). Believing that the bill is a mistake, the Beauvoirs disputed it.

To justify the $28,305.64 gas bill, by letter dated January 10, 2012, National Grid communicated with the Beauviors "Dear Customer:" (JA-G3). The letter says, "Our investigation shows that you were not billed for all service from 10/25/05, to 09/07/11" (never mind the Beauvoirs were billed and paid $5,414.24 during that time). (JA-G3 ¶ 2). National Grid provided no explanation for the method of their investigation or the basis for the determination of the $28,305.64 outstanding balance. The Beauvoirs remained befuddled.

On April 23, 2012, David M. Israel sent a debt collection letter by mail to the Beauvoirs demanding payment, "Please be advised that I am an attorney and that I represent The Brooklyn Union Gas Company d/b/a National Grid New York, the original creditor with respect to the above described matter. My client has referred the above described claim to me for purposes of collection of the debt in the amount set forth above, based upon the consumption of unmetered gas at the

above stated location."  (JA-G5 ¶ 1).  The demand for payment did not state the

amount sought in collection, in violation of 15 U.S.C. § 1692g(1).  Yet, the debt-

collection letter demanded payment in full within five (5) days, in contravention of

the required thirty (30) day notice, mandated by 15 U.S.C. §§ 1692g(3), 1692g(4),

and 1692g(5) stating:

> "If you do not respond to this letter and do not dispute all
> or a portion of the debt, my client and I shall assume that
> the debt is valid and we now believe it is… within five (5)
> days from my receipt of your request.  If you so dispute all
> or a portion of this claim, my office shall cease collection
> of the debt, or any disputed portion thereof, until I provide
> you with verification of the debt, or the name and address
> of the original creditor, as applicable."

(JA-G5 ¶ 2).

In his FRCP 12(b)(6) motion, Israel attached National Grid's complaint

against the Beauvoirs filed in 2012 in the Supreme Court of New York, Kings

County on May 31, notably each and every allegation in the complaint is merely

based "upon information and belief."  (JA-E3).  The first cause of that action

construed, National Grid charges, "upon information and belief" the Beauvoirs

"consumed unmetered natural gas . . .  related charges is $28,305.64," "plaintiff

issued an invoice," and there is no "billing dispute."  (JA-G3 ¶¶ 1 through 14).

The remaining causes of that action repeats, "upon information and belief" the

Beauvoirs: (2) received a bill being "account stated," (3) there is a "contractual

relationship" to pay the bill for gas consumption, (4) "unjustly enriched" for using

gas through a "quasi contract," and (5) that the Beauvoirs violated an "implied

bailment agreement" to care for the gas meter. (JA-E3 ¶¶ 15 through 24). The

Beauvoirs filed an answer dated September 16, 2012 denying each and every

allegation of that complaint. (JA-E4). National Grid never filed a reply.

Discovery is still looming in that action. In fact, this Court may take judicial notice

to date a Request for Judicial Intervention has not been filed and a Preliminary

Conference has not been held in that state action.

On March 6, 2013, the Beauvoirs commenced suit against David M. Israel

because Israel's debt collection letter demanding payment from the Beauviors is

without notice of the amount it seeks to collect in violation of 15 U.S.C. §

1692g(1); and fails to provide the required thirty day notice mandated in 15 U.S.C.

§§ 1692g(3), 1692g(4), and 1692g(5). (JA-B ¶¶ 12 and 25).

In its FRCP 12(b)(6) motion, Israel introduced for the first time a "report"

that is neither sworn nor notarized stating that the "Test Report States: Green

tamper seal torn; Red tamper seal torn; Missing screws on index box missing; and

Tamper seals on index box missing." (JA-F2). Beside the report being unsigned

and unsworn to, the report fails to contain the name of its alleged reporter.

Correctly, the district court cited the report: as "documents that the Court cannot

consider." (JA-M, p. 2).

## **SUMMARY ARGUMENT: Rule 28(a)(7)**

The standard of review is the same as *Romea v. Heiberger & Associates*, 163 F.3d 111, 114 (2nd Cir. 1998)*,* which involved a FDCPA claim, the Court reviewed "the district court's decision de novo, both because it involves a motion to dismiss under Rule 12(b)(6), [citing *Scotto v. Almenas*, 143 F.3d 105, 109 (2d Cir. 1998)), and because it requires us to answer an issue of statutory interpretation, [citing *Perry v. Dowling*, 95 F.3d 231, 235 (2d Cir. 1996)]. *Romea* at 114. The Court went on to say, even in a FDCPA claim, "In evaluating a motion to dismiss for failure to state a claim, we are 'required to accept as true all factual allegations in the complaint and to consider documents attached to or incorporated by reference in the complaint." *Id. Romea* is relevant because the Court found that backbilling of rent constitutes consumer debt, and is within the meaning of the FDCPA.[4]

As Israel did here, the Heiberger debt collector in *Romea t*ried to argue "that the FDCPA does not apply to the letter because rent due is not a 'debt' and its

---

[4] *Romea* is followed in *Caceres v. McCALLA Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014) ("The Second Circuit held that if a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within the scope of the Act"); *Goldman v. Cohen*, 445 F.3d 152, 156 (2nd Cir. 2006); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006); *Piper v. Portnoff Law Associates, Ltd.*, 396 F.3d 227, 234-236 (3rd Cir. 2005); *Goldstein v. Hutton, Ingram, Yuzek, Gainen*, 374 F.3d 56, 60 (2nd Cir. 2004); *U.S. v. Big Crow*, 327 F.3d 685, 689 (8th Cir. 2003); and *Hamilton v. United Healthcare of Louisiana*, 310 F.3d 385, 395 (5th Cir. 2002).

letter was not a debt collection 'communication' as the FDCPA defines those

terms." *Id* at 114. Israel alleged before the district court that the Beauvoirs were

in default for breaching the mechanics of the gas meter, thus demanding payment

on behalf of National Grid for providing gas to the Beauvoirs. In *Romea* the

Heiberger debt collector, as did Israel here, mistakenly relied on:

> "the logic of dicta in a Third Circuit opinion, [citing
> *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1168
> (3d Cir. 1987)] … that rent is not an extension of credit
> and that hence the obligation to pay it does not constitute a
> debt . . . [and] because by definition a tenant who owes
> back rent has breached her lease and thereby terminated it.
> In the absence of a lease, the argument continues, no
> transaction between the landlord and tenant exists."

*See Romea* at 114-115. "[A]s Heiberger note[d], courts have held that such

unauthorized uses are not debt." *See Romea* at 115, citing "*Cf. Staub v. Harris*, 626

F.2d 275 (3d Cir. 1980) (nonpayment of taxes); *Coretti v. Lefkowitz*, 965 F. Supp.

3 (D. Conn. 1997) (unauthorized use of cable television)" the same logic that the

district court applied here.

However, in *Romea* the Court properly rejected that argument and said,

"Heiberger's first ground misconstrues the issue, which is not whether all rent is an

extension of credit, but whether back rent is a debt. Under the FDCPA, 'debt' is an

'obligation . . . to pay money arising out of a transaction' that involves 'personal,

family, or household purposes.' [citing] 15 U.S.C. § 1692a(5)." *Romea* at 115. It

suffices to say, without discussing the Beauvoirs dispute of the bill, the entire

$28,305.64 balance that Israel demands, seeks payment for using gas for household

purposes under National Grid's contract and billing agreement with the Beauvoirs.

*See* JA-G3 and G4.  Thus, the district court's label of the Beauvoirs as thieves for

disputing a consumer bill is reversible error.

Appellant's position echoes the reasoning of the *Romea* Court:

> "Back rent by its nature is an obligation that arises only
> from the tenant's failure to pay the amounts due under the
> contractual lease transaction.  In this respect, back rent is
> much like the obligation arising out of a dishonored check
> where a service has been rendered or goods sold on the
> premise of immediate payment. The obligation to pay the
> bounced check, like the duty to pay back rent, does not
> derive from an extension of credit but rather because the
> payor breached its payment obligations in the contract
> between the parties. Virtually all circuits that have
> addressed the issue of dishonored checks have held such
> checks to fall under the plain language of the FDCPA's
> definition of 'debt.'  For the same reasons that those courts
> deemed dishonored checks to be debts under the FDCPA,
> we conclude that back rent is a debt."

*See Romea* at 115.  Likewise, even if the gas meter did not work properly like a

bounced check, and failed to perform its function, the relevant test is the back

billing of $28,305.64, which Israel demanded the Beauvoirs pay for "account

number 90/47098" to cover the balance that reflects a consumer transaction much

like any consumer receiving a gas bill from accounts receivable.

Page 14

## THE ARGUMENT: Rule 28(a)(8)

**I.  Every other debt collector will say the debtor is a thief, without some guidance from this Court setting precedent as to when a debt collector can assert so, the district court erred to assume that the defendant did not need clear and convincing evidence to make the thief assertion.**

The district court's decision conflicts the *de novo* review of *Romea*.

In enacting the Federal Debt Collection Protection Act, Congress found that "There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.  Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692, Congressional findings and declaration of purpose.  The issue of deceptive practices is as equally true when a debt collector calls a debtor a *thief*.  "The FDCPA prohibits both 'false, deceptive, or misleading representations or means in connection with the collection of any debt,' 15 U.S.C. § 1692e." *See Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 450 (6th Cir. 2014).  Moreover, the Beauvoirs were never charged with theft, *i.e*, crime or a civil penalty for gas usage.  No evidence was ever presented before the district court offering proof sufficient to label the Beauvoirs as thieves.  Yet, Israel labeled them so, to escape the FDCPA, while further violating the very terms it prohibits.

The common denominator in every single case cited by the district court for the proposition that the Beauvoirs are thieves is inapposite to the conclusions of the

district court in this case.  In each case cited by the district court there was clear

and convincing evidence to make the thief assertion, but no evidence sufficient to

support that assertion was presented in this case.  For instance, *Coretti v.*

*Lefkowitz*, 965 F. Supp. 3 (D. Conn. 1997) the demand for payment was for

unauthorized use of cable television.  Cable television charges consumers based on

service packages.  There is a limit how many television channels one can get in a

package.  There is clear and convincing evidence that the channels a person obtains

outside of that service package is unauthorized, and only happens through piracy.

Here, the Beauvoirs were since 1992—and still are—authorized to use as much gas

as they please.  In one way or the other, the gas bill reflects the consumer's use of

gas, whether the consumer's use is metered or unmetered.

Likewise, the district court erred in relying on *Fleming v. Pickard*, 581 F.3d

922 (9th Cir. 2009), there no consumer transaction arose in goods stolen by

individuals who were arrested and indicted for theft; thus, a cause of action for

conversion shied away from consumer debt.  In *Fleming* there was clear and

convincing evidence that the thieves were charged for theft. Here, in the state

complaint "conversion" is not even alleged against the Beauvoirs let alone any

illegality.  Nor is there any basis for conversion since the Beauvoirs are National

Grid customers, using gas as they were authorized under a contractual agreement

with National Grid.

Moreover, *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) stands for the opposite of the dicta language the district court clinched. *Hawthorne* involved the collection on the terms of a car accident settlement, not a consumer transaction. Stating, "when we speak of 'transactions,' we refer to consensual or contractual arrangements . . . The FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services . . . at a minimum, a 'transaction' under the FDCPA must involve some kind of business dealing or other consensual obligation." *Hawthorne* at 1371. As this Court said in *Romea*, back billing of a household service does fall under the FDCPA.

National Grid's complaint in State court, which Israel drafted, if not illusion definitely falls much shorter than hearsay, since each and every allegation is based "upon information and belief." Moreover, National Grid's complaint fails to even contain an attorney verification[5]. There is not a single fact in that action that Israel can point to in a clear conscience, and knowingly allege, that the Beauvoirs stole

---

[5] For over a century it is established New York State law that "An affidavit, verifying a complaint, which merely states that the complaint *is true,* without stating that it is true *to the knowledge of the party making the affidavit,* is substantially defective." *Williams v. Riel*, 1855 WL 6277 (N.Y. Super. 1855).

gas. The district court's notice of that complaint, as discussed *infra*, points to nothing more than a mistaken presumption.

The Federal Rules of Civil Procedure require that "The motion must: (A) be in writing . . . (B) state with particularity the grounds for seeking the order..." *See* Rule 7(b)(1). This means, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See* FRCP 9(b). In his FRCP 12 (b)(6) motion, seeking to label the Beauvoirs as thieves, Israel had to state so with particularity the grounds that paints the Beauvoirs as thieves. Yet, Israel could not, and did not, do that; the National Grid complaint in State court drafted by Israel also fails to do that. Israel's gimmick in labeling the Beauvoirs as thieves succeeded and the district court fell for it. This unfortunate mistake demands reversal.

## II. Defendant's FRCP 12(b)(6) pre-answer-motion failed to meet the summary judgment standard of showing that there is no genuine dispute as to any material fact; thus, the district court erred in applying disputed facts in the light most favorable to the moving party.

The district court acknowledged, "The Beauvoirs emphasize that they have denied National Grid's claim of theft. They are correct that the merits of that claim is [*sic*] not a matter for the Court to decide." Yet, somehow the district court managed to err and view Israel's "April 23rd letter" favorably to Israel and take "the state-court complaint" to infer "that Israel was asserting an obligation to pay arising out of an alleged theft." (JA-N). The district court's interpretation of the

letter is contradicted by the language of the letter itself which states that the claim is about the consumer "account number 0090/47098," and states:

> "Please be advised that I am an attorney and that I represent The Brooklyn Union Gas Company d/b/a National Grid New York, the original creditor with respect to the above described matter. My client has referred the above described claim to me *for purposes of collection of the debt* in the amount set forth above, based upon the consumption of unmetered gas at the above stated location."

See (JA-G5) (emphasis added). Even if Israel would have alleged in National Grid's complaint in state court that the Beauvoirs are thieves—which clearly Israel did not do, that complaint still would have fallen short of stating with factual particularity the elements required to label the Beauvoirs as thieves, especially since the Beauvoirs are authorized since 1992 to consume gas at the home which they reside. Furthermore, as a matter of substance, National Grid's complaint in state court does not even meet the federal standard of "particularity" to move a district court to determine an ongoing controversy as a matter of law.

The district court failed to adhere to the circuits' standard that "In evaluating a motion to dismiss for failure to state a claim, we are 'required to accept as true all factual allegations in the complaint and to consider documents attached to or incorporated by reference in the complaint." *Romea* at 114. It shouldn't have been so hard for the district court to determine what Consumer Debt means because the FDCPA clearly defines "The term 'consumer' means any natural person obligated

or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. 15 U.S.C. § 1692a(5). Although Israel demanded payment in money from the Beauvoirs for gas usage, which is for a "service" that National Grid claims to have provided for the Beauvoirs. Still the district court was confused because "the Second Circuit has not offered much guidance as to when a particular demand for payment qualifies as a 'debt'." (JA-N). Yet, the § 1692a(5) is crystal clear that it does not need much judicial interpretation or the making of new case law.

Even if assuming, just for the sake of *arguendo,* that the Beauvoirs altered the gas meter from its function, it is undisputed that the Beauvoirs are only in collection for gas usage, neither for a new gas meter nor for anything else. Even if assuming, just for the sake of *arguendo,* that the Beauvoirs avoided paying for gas since 2005 (never mind that they did pay over $5,414.24), that still does not change the fact that the Beauvoirs are in collection for a bill *Nunc pro tunc* (Latin: now for then). Even if assuming, just for the sake of *arguendo,* that the backbill is allowed according to 16 NYCRR 11.14(e) and 16 NYCRR 13.9(c), Israel and National Grid still has a duty to "demonstrate that the customer knew or reasonably should

have known that the original billing was incorrect." *See* 16 NYCRR 11.14(e) and 16 NYCRR 13.9(c). Yet, the district court was satisfied by the mere "upon information and belief" allegations of Israel in National Grid's unverified state court complaint, and FRCP 12(b)(6) motion to labeling the *debt* a "*theft.*" The district court's logic if anything is repugnant to common sense and § 1692, which was enacted to stop abusive and invasive practices of debt collectors. The district court's logic, simply nullifies the FDCPA for any debt collector allowing them to escape responsibility by merely vilifying the debtor as a thief. There is a reason that in evaluating a motion to dismiss for failure to state a claim, we are required to accept as true all factual allegations in the complaint, to prevent cases from being determined on name calling as unfortunately occurred here.

## CONCLUSION: Rule 28(a)(9)

In light of the foregoing, the decision of the district court dismissing the

Class Action Complaint should be VACATED and REVERSED. The Court should

REMAND this case for proceedings consistent with the Court's precedent. The

Court should also award costs under FRAP 39, attorney fees associated with this

appeal under 15 U.S.C. § 1692k(a)(3) upon judgment after remand, as well as such

other relief as the Court deems just and equitable under the circumstances.

Dated:        Brooklyn, NY
              February 5, 2015

Levi Huebner & Associates, PC

By:   /s/ Levi Huebner
_____
Levi Huebner

*Attorneys for Appellants*

535 Dean Street, Suite 100
Brooklyn, NY 11217
Tel:  (212) 354-5555
Fax: (347) 350-8789
Email: newyorklawyer@msn.com

## **CERTIFICATE OF COMPLIANCE: Rule 32(a)(10)**

I, Levi Huebner, hereby certify that I am an attorney at law in the State of

New York. I certify that I reviewed the rules pursuant to Federal Rules of

Appellate Procedure Rule 32(a)(7)(B) and that the attached brief according to

Microsoft Word processing system is proportionally spaced, has a typeface (New

Times Roman) of 14 points, double spaced, and contains less than 5,400 words

excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). In addition, the

principle brief is formatted as 1" inch margins from top to bottom and right to left

excluding page numbers.

Dated:      Brooklyn, NY
            February 5, 2015

Levi Huebner & Associates, PC

By: _/s/ Levi Huebner_____

Levi Huebner

*Attorneys for Appellants*

535 Dean Street, Suite 100
Brooklyn, NY 11217
Tel: (212) 354-5555
Fax: (347) 350-8789
Email: newyorklawyer@msn.com