# 14-3794-cv

## United States Court of Appeals for the Second Circuit

GARY BEAUVIOR and HUSBENE BEAUVIOR
on behalf of themselves and all other similarly
situated consumers,

*Appellant,*

- against -

DAVID M. ISRAEL,

*Appellees.*

On Appeal from the United States District Court
for the Eastern District of New York
Honorable Frederic Block, *Senior Judge*

## JOINT APPENDIX

Submitted *by*:

Levi Huebner & Associates, PC
*Attorneys for Appellants*
535 Dean Street, Suite 100
Brooklyn, NY 11217
Tel: (212) 354-5555
Fax: (347) 350-8789
Email: newyorklawyer@msn.com

KARKAFTA APPELLATE PRINTERS

PDF (Pagination) Page Number 2

**TABLE OF APPENDIX**

## <u>TABLE OF APPENDIX</u>

Docket Report 13-cv-1236(FB)(RML)............................................................. A

Complaint against David M. Israel - Dated: 3/06/2013.................................... B

Civil Cover Sheet ........................................................................................ C

Defendant's Notice of Motion - Dated: 7/24/2013............................................ D

Defendant's Declaration - Dated: 7/24/2013 ................................................... E

> ➢ Exhibit 1: Class Action Complaint ...................................................... E1
> ➢ Exhibit 2: Service Report ................................................................... E2
> ➢ Exhibit 3: Verified Complaint – *National Grid v. Beauvior*................. E3
> ➢ Exhibit 4: Verified Answer – *National Grid v. Beauvior* ..................... E4

Defendant's Memorandum of Law - Dated: 7/24/2013 .................................. F

Plaintiff's Declaration in Opposition - Dated 9/03/2013.................................. G

> ➢ Exhibit 1: Declaration of Gary Beauvoir............................................... G1
> ➢ Exhibit 2: Class Action Complaint....................................................... G2
> ➢ Exhibit 3: Letter by National Grid addressed to customers Beauvior.... G3
> ➢ Exhibit 4: Invoice by National Grid ...................................................... G4
> ➢ Exhibit 5: Debt Collection Letter by David M. Israel............................ G5

Plaintiff's Memorandum of Law - Dated: 9/03/2013 ...................................... H

Defendant's Reply - Dated: 10/03/2013 .......................................................... I

Plaintiff's Letter Objection to Reply - Dated: 10/03/2013 .............................. J

Plaintiff Withdrawing Objections - Dated: 10/04/2013.................................... K

Defendant's Letter Accepting Sur-Reply - Dated: 10/04/2013 ....................... L

Plaintiff's Sur-Reply - Dated: 10/18/2013........................................................ M

Memorandum and Order - Dated: 8/07/2014 .................................................. N

Judgment - Dated: 8/07/2014.................................................................... O

Notice of Appeal - Dated: 10/06/2014................................................... P

Motion for Extension - Dated: 10/06/2014.......................................... Q

Declaration for Extension - Dated: 10/06/2014................................. R

PDF (Pagination) Page Number 5

**A**

APPEAL

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:13–cv–01236–FB–RML

Beauvior et al v. Israel
Assigned to: Judge Frederic Block
Referred to: Magistrate Judge Robert M. Levy
Cause: 15:1692 Fair Debt Collection Act

Date Filed: 03/08/2013
Date Terminated: 08/07/2014
Jury Demand: Plaintiff
Nature of Suit: 480 Consumer Credit
Jurisdiction: Federal Question

**Plaintiff**

**Gary Beauvior**

represented by **Levi Huebner**
Levi Huebner &Associates, PC
478 Malbone Street
Suite 100
Brooklyn, NY 11225
212–354–5555
Fax: 347–350–8789
Email: newyorklawyer@msn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Husbene Beauvior**
*on behalf of themselves and all other*
*similarly situated consumers*

represented by **Levi Huebner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**David M. Israel**

represented by **Matthew J. Bizzaro**
L'Abbate, Balkan, Colavita &Contini, LLP
1001 Franklin Avenue 3rd Floor
Garden City, NY 11530
516–294–8844
Fax: 516–294–8202
Email: mbizzaro@lbcclaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/08/2013 | 1 | COMPLAINT against David M. Israel Disclosure Statement on Civil Cover Sheet completed –Yes,, filed by Gary Beauvior, Husbene Beauvior. (Attachments: # 1 Civil Cover Sheet) (Davis, Kimberly) (Entered: 03/08/2013) |
| 03/08/2013 | | The case of **Beauvior et al v. Israel**, has been opened in the Eastern District of New York. The case number is **13–cv–1236**. PLEASE NOTE: You must pay the case filing fee **within seven (7) days**. Select the event (Civil Case Filing Fee) and pay online. (Davis, Kimberly) (Entered: 03/08/2013) |
| 03/08/2013 | 2 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link:http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You** |

| | | |
|---|---|---|
| | | may withhold your consent without adverse substantive consequences. **Do NOT return or file the consent <u>unless</u> all parties have signed the consent.** (Davis, Kimberly) (Entered: 03/08/2013) |
| 03/09/2013 | | CIVIL CASE FILING FEE: $ 350, receipt number 0207−6057764 (Huebner, Levi) (Entered: 03/09/2013) |
| 03/11/2013 | 3 | Summons Issued as to David M. Israel. (Davis, Kimberly) (Entered: 03/11/2013) |
| 03/11/2013 | 4 | ORDER: An initial conference has been scheduled for July 11, 2013 at 12:00 p.m., before the Hon. Robert M. Levy, United States Magistrate Judge at 225 Cadman Plaza East, Brooklyn, New York. Parties are directed to check−in with chambers, Room 1223−S, upon arrival. All counsel must be present. Plaintiffs' counsel is directed to confirm with defendant's counsel that all necessary participants are aware of this conference. Ordered by Magistrate Judge Robert M. Levy on 3/11/2013. (Marino, Janine) (Entered: 03/11/2013) |
| 03/28/2013 | 5 | NOTICE of Appearance by Matthew J. Bizzaro on behalf of David M. Israel (aty to be noticed) (Bizzaro, Matthew) (Entered: 03/28/2013) |
| 03/29/2013 | 6 | MOTION for Extension of Time to File Answer re 1 Complaint by David M. Israel. (Bizzaro, Matthew) (Entered: 03/29/2013) |
| 03/29/2013 | | ORDER granting 6 Motion for Extension of Time to Answer All Defendants.. Ordered by Magistrate Judge Robert M. Levy on 3/29/2013. (Levy, Robert) (Entered: 03/29/2013) |
| 04/17/2013 | 7 | Letter MOTION for pre motion conference by David M. Israel. (Bizzaro, Matthew) (Entered: 04/17/2013) |
| 04/24/2013 | 8 | REPLY in Opposition *to Defendant's Application for Pre Motion Conferance* filed by All Plaintiffs. (Huebner, Levi) (Entered: 04/24/2013) |
| 05/09/2013 | 9 | ELECTRONIC ORDER: Defendant letter application 7 dated 4/17/13 is GRANTED. A pre motion conference is scheduled for June 7, 2013 @ 11AM. There will be no formal notice mailed to counsel. Upon receipt of this email counsel shall confirm with each other the date and time of this conference. If this date presents a conflict counsel shall first obtain the consent from all the parties to adjourn this conference and then ECF file a letter application. Ordered by Judge Frederic Block on 5/9/2013. (Innelli, Michael) (Entered: 05/09/2013) |
| 06/07/2013 | | Minute Entry for proceedings held before Judge Frederic Block: Levi Huebner, Esq. for the plaintiff and Matthew Bizzaro, Esq. for the defendants, all present. Pre−motion conference held on 6/7/2013. Defendants anticipated motion to dismiss is discussed. By June 14, 2013 counsel shall ECF file a letter with their agreed upon briefing schedule. Counsel shall serve and ECF file their motion according to J. Blocks motion rules.(Court Reporter: Not Reported) (Innelli, Michael) (Entered: 06/07/2013) |
| 06/14/2013 | 10 | Letter *re briefing schedule* by David M. Israel (Bizzaro, Matthew) (Entered: 06/14/2013) |
| 06/28/2013 | 11 | Letter MOTION to Adjourn Conference *currently scheduled for July 11, 2013* by David M. Israel. (Bizzaro, Matthew) (Entered: 06/28/2013) |
| 07/09/2013 | | ORDER granting 11 Motion to Adjourn Conference. The conference scheduled for 7/11/13 is adjourned until after the motion to dismiss is decided. Ordered by Magistrate Judge Robert M. Levy on 7/9/2013. (Marino, Janine) (Entered: 07/09/2013) |
| 07/24/2013 | 12 | Notice of Motion to Dismiss for Failure to State a Claim by David M. Israel. (Attachments: # 1 Declaration Declaration in Support, # 2 Exhibit Ex. 1, # 3 Exhibit Ex. 2, # 4 Exhibit Ex. 3, # 5 Exhibit Ex. 4, # 6 Affidavit Affidavit of Service, # 7 Memorandum in Support Memorandum of Law in Support of Motion to Dismiss, # 8 Affidavit Affidavit of Service) (Bizzaro, Matthew) (Entered: 07/24/2013) |

| 07/24/2013 | | Motions terminated, docketed incorrectly: 12 Notice of Motion to Dismiss for Failure to State a Claim. THIS MOTION SHALL BE ECF FILED ONCE FULLY BRIEFED WHICH ACCORDING TO COUNSEL'S AGREED UPON SCHEDULE WILL BE BY 9/24/13. ALSO ONCE FULLY BRIEFED COUNSEL SHALL ECF FILE THEIR MOTION AND PROVIDE A HARD COURTESY COPY TO CHAMBERS. COUNSEL SHALL REVIEW J. BLOCK'S MOTION RULES WHICH CAN BE LOCATED ON THE COURT'S HOME PAGE. (Innelli, Michael) (Entered: 07/24/2013) |
|---|---|---|
| 07/24/2013 | 13 | Letter by David M. Israel (Bizzaro, Matthew) (Entered: 07/24/2013) |
| 09/13/2013 | 14 | Letter MOTION for Extension of Time to File Response/Reply *to plaintiffs' opposition to motion* by David M. Israel. (Bizzaro, Matthew) (Entered: 09/13/2013) |
| 09/13/2013 | | ELECTRONIC ORDER: Defendant's letter application 14 dated 9/13/13, with the consent of plaintiff's counsel is GRANTED. By October 4, 2013 counsel shall serve and ECF their fully briefed motion to dismiss with a hard courtesy copy to chambers. Ordered by Judge Frederic Block on 9/13/2013. (Innelli, Michael) (Entered: 09/13/2013) |
| 10/04/2013 | 15 | Notice of Motion to Dismiss for Failure to State a Claim by David M. Israel. (Attachments: # 1 Declaration, # 2 Exhibit Exhibit 1, # 3 Exhibit Exhibit 2, # 4 Exhibit Exhibit 3, # 5 Exhibit Exhibit 4, # 6 Memorandum in Support) (Bizzaro, Matthew) (Entered: 10/04/2013) |
| 10/04/2013 | 16 | AFFIDAVIT/DECLARATION in Opposition re 15 Notice of Motion to Dismiss for Failure to State a Claim filed by David M. Israel. (Attachments: # 1 Declaration, # 2 Exhibit Ex. 1, # 3 Exhibit Ex. 2, # 4 Exhibit Ex. 3, # 5 Memorandum in Opposition) (Bizzaro, Matthew) (Entered: 10/04/2013) |
| 10/04/2013 | 17 | REPLY in Support *(Reply Memorandum of Law)* filed by David M. Israel. (Bizzaro, Matthew) (Entered: 10/04/2013) |
| 10/04/2013 | 18 | Letter *to plaintiffs' counsel enclosing defendant's Reply Memo of Law* by David M. Israel (Bizzaro, Matthew) (Entered: 10/04/2013) |
| 10/04/2013 | 19 | Letter *requesting oral argument and in opposition to Defendant's submission of an improper reply memorandum of law* by Gary Beauvior, Husbene Beauvior (Huebner, Levi) (Entered: 10/04/2013) |
| 10/04/2013 | 20 | Letter *withdrawing objection to Defendant's MOL and requesting time for Plaintiff to submit oppostion* by Gary Beauvior, Husbene Beauvior (Huebner, Levi) (Entered: 10/04/2013) |
| 10/04/2013 | 21 | Letter *in response to plaintiffs' correspondence* by David M. Israel (Bizzaro, Matthew) (Entered: 10/04/2013) |
| 10/07/2013 | | ELECTRONIC ORDER: Plaintiff's unopposed letter 20 application dated 10/4/13 and defendant's unopposed letter 21 application dated 10/4/13 are GRANTED. By October 18, 2013 the plaintiff shall serve and ECF file a sur–reply. Ordered by Judge Frederic Block on 10/7/2013. (Innelli, Michael) (Entered: 10/07/2013) |
| 10/18/2013 | 22 | MEMORANDUM in Opposition *Sur–Reply* filed by All Plaintiffs. (Huebner, Levi) (Entered: 10/18/2013) |
| 08/07/2014 | 23 | MEMORANDUM &ORDER: Isreals motion to dismiss 15 is granted and the complaint is dismissed. Ordered by Judge Frederic Block on 8/7/2014. (Innelli, Michael) (Entered: 08/07/2014) |
| 08/07/2014 | 24 | JUDGMENT, that deft's motion to dismiss is granted and pltffs shall take nothing of the deft. (Ordered by Michele Gapinski, Chief Deputy Clerk of Court on 8/7/2014) (Galeano, Sonia) (Entered: 08/07/2014) |
| 10/06/2014 | 25 | NOTICE OF APPEAL by Gary Beauvior, Husbene Beauvior. Filing fee $ 505, receipt number 0207–7247719. Appeal Record due by 10/6/2014. (Attachments: # 1 Notice of Motion, # 2 Declaration) (Huebner, Levi) (Entered: 10/07/2014) |

| 10/06/2014 | 26 | MOTION for Extension of Time to File *a Notice of Appeal* by Gary Beauvior, Husbene Beauvior. (Attachments: # 1 Declaration in Support of Motion for an Extension of Time to File Appeal) (McGee, Mary Ann) (Entered: 10/07/2014) |
|---|---|---|
| 10/07/2014 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 25 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 10/07/2014) |
| 10/08/2014 | | ELECTRONIC ORDER: Granting the plaintiff's motion 26 for an extension of time to file a notice of appeal. Ordered by Judge Frederic Block on 10/8/2014. (Innelli, Michael) (Entered: 10/08/2014) |
| 10/13/2014 | 27 | Letter MOTION for pre motion conference by David M. Israel. (Bizzaro, Matthew) (Entered: 10/13/2014) |
| 10/14/2014 | | ELECTRONIC ORDER: Defendant's letter application 27 dated 10/13/14 is DENIED. A pre–motion is not required on a motion for reconsideration. Counsel should follow the Federal Rules &Local Rules when filing and serving their papers. Ordered by Judge Frederic Block on 10/14/2014. (Innelli, Michael) (Entered: 10/14/2014) |
| 10/20/2014 | 28 | Notice of MOTION for Reconsideration by David M. Israel. (Attachments: # 1 Declaration, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit) (Bizzaro, Matthew) (Entered: 10/20/2014) |
| 10/20/2014 | 29 | MEMORANDUM in Support re 28 Notice of MOTION for Reconsideration filed by David M. Israel. (Bizzaro, Matthew) (Entered: 10/20/2014) |
| 10/23/2014 | 30 | Letter by David M. Israel (Bizzaro, Matthew) (Entered: 10/23/2014) |
| 11/03/2014 | 31 | Letter MOTION for Extension of Time to File Response/Reply as to 28 Notice of MOTION for Reconsideration , 29 Memorandum in Support by Gary Beauvior, Husbene Beauvior. (Huebner, Levi) (Entered: 11/03/2014) |
| 11/03/2014 | | ELECTRONIC ORDER: Plaintiff's letter application 31 dated 11/3/14 with the consent of the defendants is GRANTED. By December 9, 2014 the defendant's motion for reconsideration will be fully briefed and submitted to the Court. Ordered by Judge Frederic Block on 11/3/2014. (Innelli, Michael) (Entered: 11/03/2014) |
| 11/19/2014 | 32 | MEMORANDUM in Opposition *To Motion of Defendant's* filed by Gary Beauvior, Husbene Beauvior. (Huebner, Levi) (Entered: 11/19/2014) |
| 12/09/2014 | 33 | REPLY in Support re 28 Notice of MOTION for Reconsideration filed by David M. Israel. (Bizzaro, Matthew) (Entered: 12/09/2014) |

**B**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GARY BEAUVIOR and HUSBENE BEAUVIOR
on behalf of themselves and
all other similarly situated consumers

                              Plaintiffs,
                 -against-

DAVID M. ISRAEL

                              Defendant.
-----------------------------------------------------------X

## CLASS ACTION COMPLAINT

*Introduction*

1.      Plaintiffs Gary Beauvior and Husbene Beauvior seek redress for the illegal practices of David M. Israel in which it unlawfully engaged in the collection of consumer debts in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

### *Parties*

2.      Plaintiffs are citizens of the State of New York who reside within this District.

3.      Plaintiffs are a consumers as that term is defined by Section 1692(a)(3) of the FDCPA.

4.      The alleged debt that Defendant sought to collect from the Plaintiff involves a consumer debt purportedly owed to The Brooklyn Union Gas Company d/b/a National Grid New York.

5.      Upon information and belief, Defendant's principal place of business is located within New York, New York.

6.    Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

7.    Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

*Jurisdiction and Venue*

8.    This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, within this district.

*Allegations Particular to Husbene and Gary Beauvior*

10.    Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from the Plaintiffs.

11.    On or about April 23, 2012, Defendant sent the Plaintiffs a collection letter seeking to collect a balance allegedly incurred for personal purposes. A true copy of the letter dated April 23, 2012 is attached hereto as Exhibit 1.

12.    Said letter did not include the required thirty day time period for disputing the debt rendering the validation notice ineffective in violation of 1692g(3), 1692g(4), and 1692g(5).

13.    Validation of debts  [15 USC 1692g] states:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

(1) **the amount of the debt**;

(2) the name of the creditor to whom the debt is owed;

(3) **a statement that unless the consumer, within thirty days after receipt of the notice,** disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) **a statement that if the consumer notifies the debt collector in writing within the thirty-day period** that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) **a statement that, upon the consumer's written request within the thirty-day period**, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

14.   Section 1692g(b) of the FDCPA states, "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."  15 U.S.C. § 1692g(b).

15.   "Importantly, the FDCPA does not assume that the recipient of a collection letter is aware of h[is] right to require verification of the debt. Instead, the statute requires the debt collector to inform the debtor of his rights by sending him a `validation notice' with the initial dunning letter (or within 5 days thereafter)."  *Owens v. Hellmuth & Johnson, PLLC*, 550 F. Supp. 2d 1060,1064(D. Minn. 2008).

16.    One of the reasons for requiring notice is to "ensure that debt collectors [give] consumers adequate information concerning their legal rights."  S*wanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir.1988),  quoting S. Rep. No. 382, 95th Cong. 2d Sess. 4, reprinted in 1977 U.S. Code Cong. & Admin. 17 News 1695, 1702. However, if the consumer fails to contact the debt collector within 30 days these rights are lost forever.  Id.  It is therefore in the interest of an unscrupulous debt collector to not actually alert the consumer to his or her rights.

17.    Overshadowing occurs not only when the validation notice contains contradictory language, but also when the overall tenor, form, and context of the communication would mislead the least sophisticated debtor and encourages him to disregard his rights. *Terran v. Kaplan*,109 F.3d 1428, 1432 (9th Cir.1997); see also *Voris v. Resurgent Capital Services, L.P.*, 494 F. Supp. 2d 1156,1163 (S.D.Cal. 2007). see also *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996). A notice is overshadowing or contradictory if least sophisticated consumer would be confused as to the consumer's rights.

18.    Thus, it makes sense that under the FDCPA, notice of the thirty-day validation period is mandatory, but is not, under every circumstance, sufficient to satisfy § 1692g(a); a debt collector must "effectively convey" the notice to the debtor. *Smith v. Computer Credit, Inc.*, 167 F. 3d 1052, 1054 (6th Cir. 1999).

19.    To determine whether a debt collector has "effectively conveyed" the validation notice, the United States Court of Appeals for the Third Circuit applies the "least sophisticated debtor" standard. The FDCPA is to be interpreted in accordance with the "least sophisticated debtor" standard. See *Clark Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir.2006).

20.    The least sophisticated debtor standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith*, 167 F.3d at 1054, quoting *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988)).

21.    In this case, when confronted with David M. Israel's letter threatening to take any action to fullest extent of the law and requesting payment in full to be remitted immediately.

22.    A demand for payment or action by the consumer within a time less than the disclosed thirty-day validation period contradicts § 1692g(a) and thus violates the Act. See *U.S. v. National Financial Services*, 98 F.3d 131, 139 (4th Cir.1996); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2nd Cir.1996); *Miller v.Payco-General Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir.1991); *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1226 (9th Cir. 1988).

23.    Defendant's letter is in violation of 15 U.S.C. §§ 1692g, 1692e(5) and 1692e(10) for failing to accurately set forth the dispute and verification rights and for engaging in deceptive and falsely threatening practices.

24.    The said collection letter also states in pertinent: "My client has referred the above-described claim to me for purposes of collection of the debt in the amount set forth above…"

25.    No amount of debt appears on the said letter in violation of 1692g(1).

## AS AND FOR A FIRST CAUSE OF ACTION

***Violations of the Fair Debt Collection Practices Act brought by Plaintiffs on behalf of themselves and the members of a class, as against the Defendant.***

26.    Plaintiffs re-state, re-allege, and incorporates herein by reference, paragraphs one (1) through twenty-five (25) as if set forth fully in this cause of action.

27.    This cause of action is brought on behalf of Plaintiffs and the members of a class.

28.    The class consists of all person*s* whom Defendant's records reflect resided in the State of New York and who were sent a collection letter (a) bearing the Defendant's letterhead in substantially the same form as the letter sent to the Plaintiffs, sent within one year prior to the date of the within complaint concerning The Brooklyn Union Gas Company d/b/a National Grid New York (b) the collection letter was sent to a consumer seeking payment of a consumer debt; and (c) the collection letter was not returned by the postal service as undelivered (d) and the Plaintiffs assert that the letter contained violations of 15 U.S.C. §§ 1692e(5), 1692e(10),1692g, 1692g(1), 1692g(3), 1692g(4), and 1692g(5).

29.    Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

(a)    Based on the fact that form collection letters are at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

(b)    There are questions of law and fact common to the class and these questions predominate over any question(s) affecting only individual class members.    The principal question presented by this claim is whether the Defendant violated the FDCPA.

(c)    The only individual issue involves the identification of the consumers who received such collection letters (*i.e.* the class members).   This is purely a matter capable of ministerial determination from the records of the Defendant.

(d)    The claims of the Plaintiffs are typical of those of the class members.   All of the respective class claims are based on substantially similar facts and legal theories.

(e)      The Plaintiffs will fairly and adequately represent the class members' interests. The Plaintiffs have retained counsel experienced in bringing class actions and collection abuse claims. The Plaintiff' interests are consistent with those of the members of the class.

30.    A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

31.    If the facts are discovered to be appropriate, the Plaintiffs will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

32.    Collection attempts, such as those made by the Defendant are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

***Violations of the Fair Debt Collection Practices Act***

33.    The Defendant's actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

34.    Because the Defendant violated of the Fair Debt Collection Practices Act, the Plaintiffs and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

**WHEREFORE**, Plaintiffs, respectfully request that this Court enter judgment in their favor and

against the Defendant and award damages as follows:

a)      Statutory and actual damages provided under the FDCPA, 15 U.S.1692(k);

b)      Attorney fees, litigation expenses and costs incurred in bringing this action; and

c)      Any other relief that this Court deems appropriate and just under the circumstances.


Dated: Brooklyn, NY
           March 6, 2013

                                                    **Levi Huebner & Associates, PC**

                                                    / s / Levi Huebner
                                         _____
                                         By:     Levi Huebner (LH1360)

                                                    478 Malbone Street, Suite 100
                                                    Brooklyn, NY  11225
                                                    Phone:        (212) 354-5555
                                                    Facsimile:    (347) 350-8789

                                                    *Attorneys for Plaintiffs*
                                                    Husbene Beauvior & Gary Beauvior


Plaintiff requests trial by jury on all issues so triable

           / s / Levi Huebner
     _____
By:     Levi Huebner (LH1360)

# EXHIBIT 1

DAVID M. ISRAEL
ATTORNEY AT LAW
111 JOHN STREET
SUITE 1115
NEW YORK, N.Y. 10038

TEL: (212) 514-5000
FAX: (212) 514-5004

April 23, 2012

Husbene Beauvoir
10 Paerdegat 7th Street
Brooklyn, NY 11236
"Personal & Confidential"

Gary Beauvoir
10 Paerdegat 7th Street
Brooklyn, NY 11236
"Personal & Confidential"

Re:    The Brooklyn Union Gas Company d/b/a National Grid New York
       & Husbene Beauvoir & Gary Beauvoir
       National Grid Bypass File Number: 00090/47098
       National Grid's Attorney File Number: BUG 18595

Dear Husbene Beauvoir & Gary Beauvoir,

Please be advised that I am an attorney and that I represent The Brooklyn Union Gas Company d/b/a National Grid New York, the original creditor with respect to the above-described matter.  My client has referred the above-described claim to me for purposes of collection of the debt in the amount set forth above, based upon the consumption of unmetered gas at the above stated location. I have annexed my client's invoice to this letter.

If you do not respond to this letter and do not dispute all or a portion of the debt, my client and I shall assume that the debt is valid and we now believe it is. However, if you communicate with this office, in writing, and dispute all or a portion of the debt, I shall obtain and provide you with verification of the claim, or a copy of the judgment, if applicable, and mail it to you, within five (5) days from my receipt of your request.  If you so dispute all or a portion of this claim, my office shall cease collection of the debt, or any disputed portion thereof, until I provide you with verification of the debt, or the name and address of the original creditor, as applicable.

I urge you or your attorney to contact my office as soon as possible.  If you wish to make an arrangement for the payment of the debt, in lump sum, or in reasonable and appropriate installments, please contact my office at once. This office reserves the right to immediately commence legal action with respect to this matter.

Case 1:13-cv-01236-FB-RML   Document 1   Filed 03/08/13   Page 11 of 12 PageID #: 11

**PLEASE NOTE THAT MY LAW OFFICE, INCLUDING THE UNDERSIGNED AND STAFF, ARE ACTING ON BEHALF OF OUR CLIENT TO COLLECT A DEBT AND ANY INFORMATION THAT THIS OFFICE OBTAINS WILL BE USED FOR THAT PURPOSE.**

Very truly yours,

DAVID M. ISRAEL

Enclosure
DMI/df

2

## **VERIFICATION**

Gary Beauvior being duly sworn, deposes and says pursuant to 28 U.S.C. § 1746:

I am the Plaintiff in the within action. I have read the foregoing Verified Complaint, that the same is true to my knowledge, except as to those matters therein stated to be upon information and belief, and as to those matters I believe them to be true.

/ s / Gary Beauvior

_____

Gary Beauvior

Affirmed:       Brooklyn, New York
                March 6, 2013

Affirmed to before me this
6th day of March, 2013

/ s / Paul Huebner

_____

Notary Public

        Paul Huebner
Notary Public, State of New York
        No. 02HU6157168
    Qualified in Kings County
Commission Expires Dec. 4, 2014

**C**

JS 44   (Rev. 09/11)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

Gary Beauvoir & Husbene Beauvior
on behalf of themselves and
all other similarly situated consumers

**(b)** County of Residence of First Listed Plaintiff    Kings
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Levi Huebner & Associates, PC, 478 Malbone Street, Suite 100
Brooklyn, NY 11225

### DEFENDANTS

DAVID M. ISRAEL

County of Residence of First Listed Defendant    New York
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION   *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government
  Plaintiff
- ☒ 3   Federal Question
  *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government
  Defendant
- ☐ 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT   *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☒ 480 Consumer Credit |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN   *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from another district *(specify)*
- ☐ 6   Multidistrict Litigation

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA").

Brief description of cause:
6. Defendant is a "debt collector" and violated the FDCPA

### VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
03/06/2013

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

EDNY Revision 12/2011

CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

I, _Levi Huebner_____, counsel for _Plaintiffs_____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):  Not Applicable

☐  monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐  the complaint seeks injunctive relief,

☐  the matter is otherwise ineligible for the following reason

### DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

None

### RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

### NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.)  Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County: No_____

2.)  If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? No_____

b) Did the events of omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? Yes_____

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?_____
(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).

### BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.
☒  Yes          ☐  No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?
☐  Yes   (If yes, please explain)   ☒  No

I certify the accuracy of all information provided above.

**Signature:** Levi Huebner_____

JS 44 Reverse  (Rev. 09/11)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

I.      **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.      **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

III.      **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

IV.      **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

V.      **Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

VI.      **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.      Example:      U.S. Civil Statute: 47 USC 553
                                             Brief Description: Unauthorized reception of cable service

VII.      **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.      **Related Cases.**  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.

**D**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

GARY BEAUVIOR and HUSBENE BEAUVIOR
on behalf of themselves and all other similarly
situated consumers,

|                          |                                 |
|--------------------------|---------------------------------|
|                          | Case No. 13-CV-01236            |
|                          | (FB)(RML)                       |

Plaintiffs,

**NOTICE OF MOTION**

-against-

DAVID M. ISRAEL,

Defendant.

-------------------------------------------------------------------X

**MOTION BY:**

L'ABBATE, BALKAN, COLAVITA
& CONTINI, L.L.P.
Attorneys for Defendant
1001 Franklin Avenue
Garden City, New York 11530
(516) 294-8844

**DATE, TIME &
PLACE OF HEARING:**

September 24, 2013, at a time to be determined by the Court, in the United States District Court, Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201.

**SUPPORTING PAPERS:**

(1) Affidavit of Matthew J. Bizzaro, dated July 24, 2013, together with all exhibits annexed thereto; and

(2) Defendant's memorandum of law dated July 24, 2013.

**RELIEF DEMANDED:**

(1) An Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing plaintiffs' complaint; and

**OTHER RELIEF:**    (2)    such other and further relief as this court deems just and proper.

DATED:    Garden City, New York
          July 24, 2013

Yours, etc.,

L'ABBATE, BALKAN, COLAVITA
 & CONTINI, LLP

By:    _____
       Matthew J. Bizzaro, Esq.
       Attorneys for Defendant
       1001 Franklin Avenue
       Garden City, New York 11530
       (516) 294-8844
       Our File No. 566-97010

TO:    Levi Huebner & Associates, P.C.
       Attorneys for Plaintiffs
       478 Malbone Street, Suite 100
       Brooklyn, NY 11225
       (212) 354-5555

-2-

**E**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GARY BEAUVIOR and HUSBENE BEAUVIOR                   Index No.: 13-CV-01236 (FB)
on behalf of themselves and all other similarly      (RML)
situated consumers,,

                                    Plaintiffs,

                                                     **DECLARATION IN SUPPORT**
        -against-

DAVID M. ISRAEL,

                                    Defendant.

-------------------------------------------------------------------X

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK  )

                Matthew J. Bizzaro, being duly sworn, deposes and states as follows:

                1.       I am associated with the law firm of L'Abbate, Balkan, Colavita & Contini,

L.L.P., attorneys for defendant, David M. Israel, in the above-captioned action.  As such, I am fully

familiar with the facts and circumstances of this action based upon a review of the file maintained

by this office.

                2.       This affidavit is made in support of Defendant's motion for an order

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the complaint of

plaintiffs, Gary Beauvior and Husbene Beauvior ("Plaintiffs").[1]

                3.       A copy of the Class Action Complaint in this matter is annexed as *Ex. "1."*

                4.       A copy of the "Theft of Services Report" is annexed as *Ex. "2."*

_____

[1] It should be noted that Plaintiffs' last name in the caption of this lawsuit is misspelled as "Beauvior," whereas in the
underlying matter upon which this action is based, all real estate instruments and correspondence with Mr. Israel spell
the last name as "Beauvoir."

5.      A copy of the summons and complaint in the underlying action from which this lawsuit arises (the "Underlying Matter") is annexed as *Ex. "3."*

6.      A copy of the answer in the Underlying Matter is annexed as *Ex. "4*

**WHEREFORE**, it is respectfully requested that Defendant's motion be granted in its entirety, together with such further relief as this Court deems just and proper.

_____
MATTHEW J. BIZZARO

Sworn to me before this
24th day of July, 2013.

_____
Notary Public

DENISE MITCHELL
Notary Public, State of New York
No. 4816888
Qualified in Nassau County
Commission Expires December 31, 20__

-2-

# EXHIBIT "1"

Case 1:13-cv-01236-FB-RML   Document 15-2   Filed 10/04/13   Page 2 of 16 PageID #: 122

Case 1:13-cv-01236-FB-RML   Document 1   Filed 03/08/13   Page 1 of 12 PageID #: 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GARY BEAUVIOR and HUSBENE BEAUVIOR
on behalf of themselves and
all other similarly situated consumers

                                   Plaintiffs,

         -against-

DAVID M. ISRAEL

                                   Defendant.
----------------------------------------------------------------X

## CLASS ACTION COMPLAINT

*Introduction*

1.       Plaintiffs Gary Beauvior and Husbene Beauvior seek redress for the illegal practices of David M. Israel in which it unlawfully engaged in the collection of consumer debts in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

### *Parties*

2.       Plaintiffs are citizens of the State of New York who reside within this District.

3.       Plaintiffs are a consumers as that term is defined by Section 1692(a)(3) of the FDCPA.

4.       The alleged debt that Defendant sought to collect from the Plaintiff involves a consumer debt purportedly owed to The Brooklyn Union Gas Company d/b/a National Grid New York.

5.       Upon information and belief, Defendant's principal place of business is located within New York, New York.

1

6.    Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

7.    Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

**_Jurisdiction and Venue_**

8.    This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, within this district.

**_Allegations Particular to Husbene and Gary Beauvior_**

10.    Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from the Plaintiffs.

11.    On or about April 23, 2012, Defendant sent the Plaintiffs a collection letter seeking to collect a balance allegedly incurred for personal purposes. A true copy of the letter dated April 23, 2012 is attached hereto as Exhibit 1.

12.    Said letter did not include the required thirty day time period for disputing the debt rendering the validation notice ineffective in violation of 1692g(3), 1692g(4), and 1692g(5).

13.    Validation of debts  [15 USC 1692g] states:

    (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

2

(1) **the amount of the debt**;

(2) the name of the creditor to whom the debt is owed;

(3) **a statement that unless the consumer, within thirty days after receipt of the notice,** disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) **a statement that if the consumer notifies the debt collector in writing within the thirty-day period** that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) **a statement that, upon the consumer's written request within the thirty-day period**, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

14.  Section 1692g(b) of the FDCPA states, "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b).

15.  "Importantly, the FDCPA does not assume that the recipient of a collection letter is aware of h[is] right to require verification of the debt. Instead, the statute requires the debt collector to inform the debtor of his rights by sending him a `validation notice' with the initial dunning letter (or within 5 days thereafter)."  *Owens v. Hellmuth & Johnson, PLLC*, 550 F. Supp. 2d 1060,1064(D. Minn. 2008).

3

16.   One of the reasons for requiring notice is to "ensure that debt collectors [give] consumers adequate information concerning their legal rights." *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir.1988), quoting S. Rep. No. 382, 95th Cong. 2d Sess. 4, reprinted in 1977 U.S. Code Cong. & Admin. 17 News 1695, 1702. However, if the consumer fails to contact the debt collector within 30 days these rights are lost forever. Id.  It is therefore in the interest of an unscrupulous debt collector to not actually alert the consumer to his or her rights.

17.   Overshadowing occurs not only when the validation notice contains contradictory language, but also when the overall tenor, form, and context of the communication would mislead the least sophisticated debtor and encourages him to disregard his rights. *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir.1997); see also *Voris v. Resurgent Capital Services, L.P.*, 494 F. Supp. 2d 1156,1163 (S.D.Cal. 2007). see also *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996). A notice is overshadowing or contradictory if least sophisticated consumer would be confused as to the consumer's rights.

18.   Thus, it makes sense that under the FDCPA, notice of the thirty-day validation period is mandatory, but is not, under every circumstance, sufficient to satisfy § 1692g(a); a debt collector must "effectively convey" the notice to the debtor. *Smith v. Computer Credit, Inc.*, 167 F. 3d 1052, 1054 (6th Cir. 1999).

19.   To determine whether a debt collector has "effectively conveyed" the validation notice, the United States Court of Appeals for the Third Circuit applies the "least sophisticated debtor" standard. The FDCPA is to be interpreted in accordance with the "least sophisticated debtor" standard. See *Clark Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir.2006).

4

20.    The least sophisticated debtor standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith*, 167 F.3d at 1054, quoting *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988)).

21.    In this case, when confronted with David M. Israel's letter threatening to take any action to fullest extent of the law and requesting payment in full to be remitted immediately.

22.    A demand for payment or action by the consumer within a time less than the disclosed thirty-day validation period contradicts § 1692g(a) and thus violates the Act. See *U.S. v. National Financial Services*, 98 F.3d 131, 139 (4th Cir.1996); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2nd Cir.1996); *Miller v.Payco-General Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir.1991); *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1226 (9th Cir. 1988).

23.    Defendant's letter is in violation of 15 U.S.C. §§ 1692g, 1692e(5) and 1692e(10) for failing to accurately set forth the dispute and verification rights and for engaging in deceptive and falsely threatening practices.

24.    The said collection letter also states in pertinent: "My client has referred the above-described claim to me for purposes of collection of the debt in the amount set forth above…"

25.    No amount of debt appears on the said letter in violation of 1692g(1).

### AS AND FOR A FIRST CAUSE OF ACTION

*Violations of the Fair Debt Collection Practices Act brought by Plaintiffs on behalf of themselves and the members of a class, as against the Defendant.*

26.    Plaintiffs re-state, re-allege, and incorporates herein by reference, paragraphs one (1) through twenty-five (25) as if set forth fully in this cause of action.

27.    This cause of action is brought on behalf of Plaintiffs and the members of a class.

Case 1:13-cv-01236-FB-RML   Document 1   Filed 03/08/13   Page 6 of 12 PageID #: 6

28.   The class consists of all person*s* whom Defendant's records reflect resided in the State of New York and who were sent a collection letter (a) bearing the Defendant's letterhead in substantially the same form as the letter sent to the Plaintiffs, sent within one year prior to the date of the within complaint concerning The Brooklyn Union Gas Company d/b/a National Grid New York (b) the collection letter was sent to a consumer seeking payment of a consumer debt; and (c) the collection letter was not returned by the postal service as undelivered (d) and the Plaintiffs assert that the letter contained violations of 15 U.S.C. §§ 1692e(5), 1692e(10),1692g, 1692g(1), 1692g(3), 1692g(4), and 1692g(5).

29.   Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

(a)     Based on the fact that form collection letters are at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

(b)     There are questions of law and fact common to the class and these questions predominate over any question(s) affecting only individual class members.   The principal question presented by this claim is whether the Defendant violated the FDCPA.

(c)     The only individual issue involves the identification of the consumers who received such collection letters (*i.e.* the class members).   This is purely a matter capable of ministerial determination from the records of the Defendant.

(d)     The claims of the Plaintiffs are typical of those of the class members.   All of the respective class claims are based on substantially similar facts and legal theories.

(e)      The Plaintiffs will fairly and adequately represent the class members' interests. The Plaintiffs have retained counsel experienced in bringing class actions and collection abuse claims. The Plaintiff interests are consistent with those of the members of the class.

30.   A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

31.   If the facts are discovered to be appropriate, the Plaintiffs will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

32.   Collection attempts, such as those made by the Defendant are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

***Violations of the Fair Debt Collection Practices Act***

33.   The Defendant's actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

34.   Because the Defendant violated of the Fair Debt Collection Practices Act, the Plaintiffs and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

**WHEREFORE**, Plaintiffs, respectfully request that this Court enter judgment in their favor and

against the Defendant and award damages as follows:

a)   Statutory and actual damages provided under the FDCPA, 15 U.S.1692(k);

b)   Attorney fees, litigation expenses and costs incurred in bringing this action; and

c)   Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Brooklyn, NY
       March 6, 2013

                                        **Levi Huebner & Associates, PC**

                                        / s / Levi Huebner
                                        _____
                              By:       Levi Huebner (LH1360)

                                        478 Malbone Street, Suite 100
                                        Brooklyn, NY  11225
                                        Phone:      (212) 354-5555
                                        Facsimile:  (347) 350-8789

                                        *Attorneys for Plaintiffs*
                                        Husbene Beauvior & Gary Beauvior

Plaintiff requests trial by jury on all issues so triable

        / s / Levi Huebner
        _____
By:     Levi Huebner (LH1360)

**EXHIBIT 1**

Case 1:13-cv-01236-FB-RML   Document 1   Filed 03/08/13   Page 10 of 12 PageID #: 10

**DAVID M. ISRAEL**
ATTORNEY AT LAW
111 JOHN STREET
SUITE 1115
NEW YORK, N.Y. 10038
———
TEL: (212) 514-5000
FAX: (212) 514-5004

April 23, 2012

Husbene Beauvoir
10 Paerdegat 7th Street
Brooklyn, NY 11236
"Personal & Confidential"

Gary Beauvoir
10 Paerdegat 7th Street
Brooklyn, NY 11236
"Personal & Confidential"

Re:   The Brooklyn Union Gas Company d/b/a National Grid New York
&amp; Husbene Beauvoir & Gary Beauvoir
National Grid Bypass File Number: 00090/47098
National Grid's Attorney File Number: BUG 18595

Dear Husbene Beauvoir & Gary Beauvoir,

Please be advised that I am an attorney and that I represent The Brooklyn Union Gas Company d/b/a National Grid New York, the original creditor with respect to the above-described matter.  My client has referred the above-described claim to me for purposes of collection of the debt in the amount set forth above, based upon the consumption of unmetered gas at the above stated location. I have annexed my client's invoice to this letter.

If you do not respond to this letter and do not dispute all or a portion of the debt, my client and I shall assume that the debt is valid and we now believe it is. However, if you communicate with this office, in writing, and dispute all or a portion of the debt, I shall obtain and provide you with verification of the claim, or a copy of the judgment, if applicable, and mail it to you, within five (5) days from my receipt of your request.  If you so dispute all or a portion of this claim, my office shall cease collection of the debt, or any disputed portion thereof, until I provide you with verification of the debt, or the name and address of the original creditor, as applicable.

I urge you or your attorney to contact my office as soon as possible.  If you wish to make an arrangement for the payment of the debt, in lump sum, or in reasonable and appropriate installments, please contact my office at once. This office reserves the right to immediately commence legal action with respect to this matter.

1

**PLEASE NOTE THAT MY LAW OFFICE, INCLUDING THE UNDERSIGNED AND STAFF, ARE ACTING ON BEHALF OF OUR CLIENT TO COLLECT A DEBT AND ANY INFORMATION THAT THIS OFFICE OBTAINS WILL BE USED FOR THAT PURPOSE.**

Very truly yours,

DAVID M. ISRAEL

Enclosure
DMI/df

## <u>VERIFICATION</u>

Gary Beauvior being duly sworn, deposes and says pursuant to 28 U.S.C. § 1746:

I am the Plaintiff in the within action. I have read the foregoing Verified Complaint, that the same is true to my knowledge, except as to those matters therein stated to be upon information and belief, and as to those matters I believe them to be true.

/ s / Gary Beauvior

_____

Gary Beauvior

Affirmed:      Brooklyn, New York
               March 6, 2013

Affirmed to before me this
6th day of March, 2013

/ s / Paul Huebner

_____

Notary Public

Paul Huebner
Notary Public, State of New York
No. 02HU6157168
Qualified in Kings County
Commission Expires Dec. 4, 2014

Case 1:13-cv-01236-FB-RML   Document 15-2   Filed 10/04/13   Page 14 of 16 PageID #: 134

JS 44 (Rev. 09/11)   Case 1:13-cv-01236-FB-RML   Document 1-1   Filed 03/08/13   Page 1 of 3 PageID #: 13

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Gary Beauvior & Husbene Beauvior on behalf of themselves and all other similarly situated consumers | DAVID M. ISRAEL |

**(b)** County of Residence of First Listed Plaintiff   Kings
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   New York
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Levi Huebner & Associates, PC, 478 Malbone Street, Suite 100
Brooklyn, NY 11225

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability / ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander   Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability / ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine   Injury Product | | | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 345 Marine Product   Liability | | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability / **PERSONAL PROPERTY** | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability / ☐ 380 Other Personal | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury / ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury -   Product Liability | Leave Act | | Act |
| | Med. Malpractice | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc.   Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting   Sentence | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   **Habeas Corpus:** | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ / ☐ 530 General | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | Employment / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 555 Prison Condition | Alien Detainee | | |
| | Other / ☐ 560 Civil Detainee - | (Prisoner Petition) | | |
| | ☐ 448 Education   Conditions of   Confinement | ☐ 465 Other Immigration   Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA").
Brief description of cause:
6. Defendant is a "debt collector" and violated the FDCPA

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
03/06/2013

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

EDNY Revision 12/2011
Case 1:13-cv-01236-FB-RML   Document 1-2   Filed 03/08/13   Page 2 of 3 PageID #: 14

CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

I, ___Levi Huebner_____, counsel for ___Plaintiffs_____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):   Not Applicable

☐   monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐   the complaint seeks injunctive relief,

☐   the matter is otherwise ineligible for the following reason

**DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1**

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

None

**RELATED CASE STATEMENT (Section VIII on the Front of this Form)**

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

**NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)**

1.)   Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County: No_____

2.)   If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? No_____

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? Yes_____

If your answer to question 2 (b) is "No", does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?_____
(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).

**BAR ADMISSION**

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☒   Yes        ☐   No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?
☐   Yes   (If yes, please explain)        ☒   No

I certify the accuracy of all information provided above.

**Signature:** Levi Huebner

Case 1:13-cv-01236-FB-RML   Document 1-1   Filed 03/08/13   Page 3 of 3 PageID #: 15

JS 44 Reverse  (Rev. 09/11)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# EXHIBIT "2"

08 13 01:51p        David M Israel Esq                          212 514 5004            p.1

# national**grid**

**One MetroTech Center**
**Brooklyn, NY 11201-3850**

Theft of Service Report

| OF REPORT: 7-13-11 | OCCURRENCE DATE: 7-7-11 | ARRIVAL TIME: DEPART TIME: | BYPASS ACCOUNT # 00090- |
|---|---|---|---|
| DRESS: 10 PAERDEGAT 7ST | | TYPE DWELLING: 4 FAM | VOUCHER #: H 379 |
| NAME: ☑OWNER ☐TENANT: | | TELEPHONE #: | ☐ CALL OUT ☐ ZONE METER |

| NIT #: | TOS ORGIN: |
|---|---|

TOS TYPE: ☑FLEX ☐PIPE ☐HOSE ☐US ☑TM ☐RM ☐UM ☐RP ☐PTOS
☐HOT TO THE TOUCH ☐CURB VALVE FOUND OPENED ☐TAMPERED COLLAR

| TOS LOCATION: ☐CELLAR ☐ROOM SET ☐OTHER ☐OUTSIDE SET | FINDERS EMPLOYEE # 1. 5912 2. | DEPT #: | AWARD $ |
|---|---|---|---|

| CONNECTION LOCATION: METER ☐HEADER ☐DRIP ☐SERVICE # ☑OTHER | CORRECTIVE ACTION: ☑MULCARE ☐SM PLUG ☐SM CAP ☐CV CLOSED ☐LC ☑OTHER |
|---|---|
| CONNECTION REMOVED BY EMPLOYEE # | INVESTIGATOR'S EMPLOYEE # 1. 5912 2. |

| METER #: 4223116 | INDEX: 78513 | SIZE CODE: 511 | LEL |
|---|---|---|---|
| PHOTOS: | PREVIOUS TOS: | PART SUPPLIED: NA | SA CODE: 17-1 |

| APPLIANCES - MAKE, MODEL AND BTU: |
|---|
| RANGE: 3 RANGES |
| DRYER: 1 DRYER |
| WATER HEATER: 1 KENMORE WH @ 75,000 BTU |
| HEATING UNIT: 1 CROWN HH @ 140,000 BTU |
| ADDITIONAL APPLIANCES |

INVESTIGATOR'S REMARKS (CONDITION FOUND)

RE ABOVE INFORMATION ON 7/7/11 GAS
WAS FOUND ON AND FLOWING THROUGH METER
# 4223116 BY SERVICE PERSON # 1909. METER WAS
CHANGED AND SENT TO METER OPERATIONS
TEST REPORT STATES:
      GREEN TAMPER SEAL TORN
      RED TAMPER SEAL TORN
      MISSING SCREWS ON INDEX BOX
      TAMPER SEALS ON INDEX BOX MISSING

Attest To The Facts As Stated Above:
Investigator's Initials: ___          Supervisor's Initials: ___          Date: ___
Sworn This ___ Day Of ___ , 20 __

Notary Public

# EXHIBIT "3"

SUPREME COURT OF THE STATE OF NEW YORK:
COUNTY OF KINGS:

--------------------------------------------------------------x

THE BROOKLYN UNION GAS COMPANY                          INDEX NO: 11477-12
d/b/a NATIONAL GRID NEW YORK,

                                      Plaintiff,

                                                       **VERIFIED COMPLAINT**

             -against-

HUSBENE BEAUVOIR & GARY BEAUVOIR
a/k/a GARY L. BEAUVOIR,

                                      Defendants.

--------------------------------------------------------------x

PLAINTIFF, THE BROOKLYN UNION GAS COMPANY d/b/a NATIONAL GRID NEW

YORK (hereinafter "Plaintiff"), by its attorney DAVID M. ISRAEL, ESQ., complaining against

the defendants, HUSBENE BEAUVOIR & GARY BEAUVOIR a/k/a GARY L. BEAUVOIR

(hereinafter collectively "Defendants") alleges, as follows:

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST
### HUSBENE BEAUVOIR & GARY BEAUVOIR a/k/a GARY L. BEAUVOIR

1. That at all times hereinafter mentioned, Plaintiff was and still is a domestic energy

corporation organized and existing under and by virtue of the laws of the State of New York and

maintains its principal place of business in the Borough of Brooklyn, County of Kings, City and

State of New York.

2. That upon information and belief, at all times hereinafter mentioned, defendant,

**HUSBENE BEAUVOIR** (hereinafter "Husbene") was and still is resident of the Borough of

Brooklyn, County of Kings, City and State of New York.

3. That upon information and belief, at all times hereinafter mentioned, defendant, GARY

1

BEAUVOIR a/k/a GARY L. BEAUVOIR (hereinafter "Gary") was and still is resident of the Borough of Brooklyn, County of Kings, City and State of New York.

4. Upon information and belief, Defendants were and still are the record owner of premise, **10 Paerdegat 7th Street, Brooklyn 11236** ("premise") and resided therein during all or a portion of the period set forth hereunder. Upon further information and belief, , at all times hereinafter mentioned, the aforementioned premise was an occupied **3 to 4-family multiple dwelling**, *de facto* or *de jure*, with **a central heating and hot water system, three (3) ranges and one (1) clothes dryer.**

5. Pursuant to the <u>Multiple Dwelling Law</u>, at all times hereinafter mentioned Defendants had a non-delegable duty to furnish heat and hot water to the occupants of the aforementioned premise.

6. Upon information and belief, at all times hereinafter mentioned, Defendants resided in the premise and rented certain apartments to others.

7. Upon information and belief, Defendants were and still are directly and/or indirectly personally responsible for the day-to-day management, operation and control of the premise and did, in fact, manage and control the aforementioned premise, including providing heat and hot water, as described hereunder. Upon further information and belief, at all times hereinafter mentioned the premise was occupied, in whole or in part. Upon further information and belief, during the period set forth above and at the present time, Defendants failed to register either of them, or anyone else as the premise's managing agent with New York City Department of Housing, Preservation and Development, in violation of law.

8. Upon information and belief, during the period set forth below, **Husbene**, on behalf of

2

and as agent for and on behalf of all of the co-defendants, maintained a metered gas account with Plaintiff for gas service to the premise, under **account number 06521/61873**, which was for the Plaintiff's supply of natural gas to fuel the premise's heating and hot water system and that in connection with this account Plaintiff installed a gas meter, which belonged to Plaintiff, and which was set to accurately record Defendants' gas consumption.

8. Upon information and belief, on or about and between **October 25, 2005** through **September 7, 2011**, Defendants, pursuant to an ongoing common scheme and plan, intentionally, wrongfully, unlawfully, wantonly and recklessly diverted and consumed unmetered natural gas belonging to Plaintiff at the aforementioned premise, by means of unlawfully tampering with Plaintiff's aforementioned gas meter to impede, impair, obstruct and prevent the said meter from performing its recording function. Upon further information and belief, Defendants did thereby intentionally, willfully, recklessly, maliciously and fraudulently fueled the premise's **house heating and hot water system, three (3) ranges and one (1) dryer**, without Plaintiff's prior knowledge, permission or authority.

9. Upon information and belief, the value of the aforementioned unmetered natural gas and related charges is **$28,305.64**, pursuant to rates set by the Public Service Commission for the sale of the said natural gas at the time of its diversion and consumption.

10. Upon information and belief, the above-described unlawful condition was a hazardous condition that endangered the health, safety and well being of the occupants of the said premise and its vicinity, the employees of Plaintiff and the general public.

11. Upon information and belief, in diverting and consuming Plaintiff's natural gas, as

3

alleged hereinabove, Defendants were wanton, reckless, malicious and fraudulent, thereby evincing an intent justifying an award of punitive damages.

12.   Upon information and belief, in addition to the foregoing, Defendants had actual and/or constructive notice that Plaintiff's aforementioned gas meter was tampered with and that Plaintiff's unmetered and unregistered natural gas was being consumed in the unlawful manner and for the entire period set forth above.

13. Upon information and belief, Plaintiff duly issued an invoice to Defendants (exhibit "1"), in the above-stated amount and thereby demanded payment thereof, but Defendants failed and refused to make payment.

14.   Upon information and belief, Defendants failed to protest the accuracy of the aforementioned invoice, or Defendants' obligation to pay to Plaintiff or to the Public Service Commission, a domestic administrative agency that has primary subject matter jurisdiction over "billing disputes" between a public utility, such as Plaintiff, and the users of its gas, whether metered/registered, or unmetered/unregistered, such as Defendants. Therefore, by failing to invoke or exhaust Defendants' administration remedies, Defendants waived Defendants' right to contest its liability to pay the aforementioned invoice.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST
### HUSBENE BEAUVOIR & GARY BEAUVOIR a/k/a GARY L. BEAUVOIR

15. Plaintiff repeats, reiterates and re-alleges each and every allegation contained within paragraphs "1" through "14", as if fully set forth at length herein.

16. Upon information and belief, Plaintiff's aforementioned invoice was made by Plaintiff in the ordinary course of business and duly mailed to Defendants, pursuant to Plaintiff's tariff, and

4

all applicable laws, rules and regulations. Upon information and belief, the said invoice represented and represents an "**account stated,**" for which Defendants are liable.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST**
**<u>HUSBENE BEAUVOIR & GARY BEAUVOIR a/k/a GARY L. BEAUVOIR</u>**

17. Plaintiff repeats, reiterates and re-alleges each and every allegation contained within paragraphs "1" through "16", as if fully set forth at length herein.

18. Upon information and belief, based upon law, rule, regulation and Plaintiff's tariff, when Defendants consumed Plaintiff's natural gas, as alleged hereinabove, a **contractual relationship** existed by and between the Plaintiff, which contract Defendants breached by tampering with the gas meter and by failing to make payment to Plaintiff for the reasonable value of Plaintiff's natural gas that Defendants' unlawfully consumed, based upon Plaintiff's tariff.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST**
**<u>HUSBENE BEAUVOIR & GARY BEAUVOIR a/k/a GARY L. BEAUVOIR</u>**

19. Plaintiff repeats, reiterates and re-alleges each and every allegation contained within paragraphs "1" through "18", as if fully set forth at length herein.

20. Upon information and belief, based upon the foregoing, Defendants were unjustly enriched in that Defendants knowingly, wrongfully and unlawfully received the direct and indirect use and benefit of the said unmetered natural gas with either actual or constructive knowledge that Defendants were receiving same, and which Defendants utilized to fulfill Defendants' contractual and legal duty to provide heat and hot water to the premise and the occupants of the subject premise, if any, and for said Defendants' own personal use and benefit.

21. Upon information and belief, based upon the law of *quasi contract*, it is respectfully

5

demanded that the Court imply the existence of a contract whereby Defendants shall be obliged to pay to Plaintiff the reasonable value of the unmetered natural gas Defendants consumed, as alleged hereinabove, to recompense Plaintiff for its loss and to disgorge Defendants' unjust enrichment.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST
## HUSBENE BEAUVOIR & GARY BEAUVOIR a/k/a GARY L. BEAUVOIR

22. Plaintiff repeats, reiterates and re-alleges each and every allegation contained within paragraphs "1" through "21", as if fully set forth at length herein.

23. Upon information and belief, at all times mentioned in this complaint, an express or implied bailment contract existed by and between the parties which governed Defendants' duty to exercise reasonable care to protect the gas meter and not tamper with the gas meter which was in Defendants'' premise and to that extent under its care and control.

24. Upon information and belief, based upon the foregoing, Defendants breached the aforementioned bailment agreement by failing to exercise reasonable care to safeguard and protect Plaintiff's gas service pipe from unlawful tampering, damage and diversion of gas. Accordingly, Defendants are liable to Plaintiff for the resulting damage, as set forth above.

WHEREFORE, plaintiff, THE BROOKLYN UNION GAS COMPANY d/b/a NATIONAL GRID NEW YORK, demands judgment against the defendants, HUSBENE BEAUVOIR & GARY BEAUVOIR a/k/a GARY L. BEAUVOIR, jointly and severally, as follows:

On the first cause of action, in the amount of $28,305.64, compensatory damages, with interest thereon from September 7, 2011, and punitive damages of $84,000.00;

On the second cause of action, in the amount of $28,305.64, compensatory damages, with

6

interest thereon from **September 7, 2011**, and exemplary damages of **$84,000.00**;

On the third cause of action, in the amount of **$28,305.64**, compensatory damages, with interest thereon from **September 7, 2011**, and exemplary damages of **$84,000.00**;

On the fourth cause of action, in the amount of **$28,305.64**, compensatory damages, with interest thereon from **September 7, 2011**, and exemplary damages of **$84,000.00**; and

On the fifth cause of action, in the amount of **$28,305.64**, compensatory damages, with interest thereon from **September 7, 2011**, and exemplary damages of **$84,000.00**, all together with the costs and disbursements of this action.

DATED:     May 31, 2012
           New York, NY

YOURS ETC,

DAVID M. ISRAEL, ESQ.
ATTORNEY FOR PLAINTIFF
THE BROOKLYN UNION GAS COMPANY
d/b/a NATIONAL GRID NEW YORK
111 JOHN STREET
SUITE 1115
NEW YORK, N.Y. 10038
TELEPHONE: 212-514-5000
FILE NUMBER: BUG 18595

PLEASE TAKE NOTICE that plaintiff's attorney, David M. Israel, is acting on behalf of plaintiff to collect a debt and any information that plaintiff's attorney obtains from defendant(s), or otherwise, will be used for that purpose.

7

# EXHIBIT "4"

Apr 08 13 02:05p          David M Schrader          Case 1:13-cv-01236-SP-BML          Document 15-5          Filed 10/04/13          Page 4 of 5 PageID #: 148

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------X    INDEX NO. 11477/12
THE BROOKLYN UNION GAS COMPANY
d/b/a NATIONAL GRID NEW YORK,

                                          Plaintiff,          **VERFIED ANSWER**

              -against-

HUSBENE BEAUVOIR & GARY BEAUVOIR,
a/k/a GARY L. BEAUVOIR
                                          Defendants.
-----------------------------------------------------------------X

Defendants Husbene Beauvuir and Gary Beuavoir (the "Beauvoirs") by their attorneys Levi Huebner & Associates, PC, as and for their Verified Answer to the Complaint, respectfully:

**AS AND FOR AN ANSWER TO PLAINTIFF'S FIRST CAUSE OF ACTION**

1.    Defendants deny the allegations contained in paragraphs "4", "6", "7", "8" [1], "8" [2], "9", "10", "11", "12", "13", and "14" of the Complaint.

2.    Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph "1" and "5" of the Complaint.

**AS AND FOR AN ANSWER TO PLAINTIFF'S SECOND CAUSE OF ACTION**

3.    Defendants repeat and reassert their responses to each of the allegations restated in paragraph "15" of the Complaint.

4.    Defendants deny the allegations contained in paragraph "16" of the Complaint.

---

[1]    The Complaint has two paragraphs denoted as paragraph "8". Thus, this denial refers to the first paragraph "8" in the Complaint.

[2]    The Complaint has two paragraphs denoted as paragraph "8". Thus, this denial refers to the second paragraph "8" in the Complaint.

Apr 08 13 02:00p        David M Israel Esq

## AS AND FOR AN ANSWER TO PLAINTIFF'S THIRD CAUSE OF ACTION

5.    Defendants repeat and reassert their responses to each of the allegations restated in paragraph "17" of the Complaint.

6.    Defendants deny the allegations contained in paragraph "18" of the Complaint.

## AS AND FOR AN ANSWER TO PLAINTIFF'S FOURTH CAUSE OF ACTION

7.    Defendants repeat and reassert their responses to each of the allegations restated in paragraph "19" of the Complaint.

8.    Defendants deny the allegations contained in paragraph "20" and "21" of the Complaint.

## AS AND FOR AN ANSWER TO PLAINTIFF'S FITH CAUSE OF ACTION

9.    Defendants repeat and reassert their responses to each of the allegations restated in paragraph "22" of the Complaint.

10.    Defendants deny the allegations contained in paragraph "23" and "24" of the Complaint.

## AS AND FOR DEFENDANT'S FIRST AFFIRMATIVE DEFENSE

11.    The Complaint is vague and ambiguous, fails to state a cause of action and fails to apprise the Defendants of the facts upon which this proceeding is based.

## AS AND FOR DEFENDANT'S SECOND AFFIRMATIVE DEFENSE

12.    Plaintiff is estopped from asserting any claims since such claims are barred by laches, waiver and/or estoppel.

## AS AND FOR DEFENDANT'S THIRD AFFIRMATIVE DEFENSE

13.    Plaintiff's Complaint must be dismissed based on defenses founded upon documentary evidence.

Apr 08 13 02:01p    David M Israel Esq    Case 1:13-cv-01236-EB-RML    Document 15-5    Filed 10/04/13    Page 4 of 5 PageID #: 150    212 514 5004    p.23



### AS AND FOR DEFENDANT'S FOURTH AFFIRMATIVE DEFENSE

14.    Upon information and belief, Plaintiff has failed to mitigate any alleged damages.

### AS AND FOR DEFENDANT'S FIFTH AFFIRMATIVE DEFENSE

15.    Plaintiff's Complaint must be dismissed based upon the Statute of Limitations.

### AS AND FOR DEFENDANT'S SIXTH AFFIRMATIVE DEFENSE

16.    This court lacks personal jurisdiction over the Defendants herein.

**WHEREFORE,** the Defendants demand judgment against Plaintiff Dismissing the Complaint; for reasonable attorney's fees; for the allowable costs and disbursements herein; for such other and further relief as may be just and proper.

**PLEASE TAKE NOTICE** that Defendant hereby demands trial by jury.

Dated: Brooklyn, New York
      September 16, 2012

                                **Levi Huebner & Associates, PC**

                                       / s /

                            By: _____
                                Levi Huebner

                                478 Malbone Street, Suite 100
                                Brooklyn, NY 11225
                                (212) 354-5555

                                *Attorneys for Defendants*

TO:    David M. Israel, Esq.
        111 John Street, Suite 1115
        New York, NY 10038
        (212) 514-5000

        *Attorney for Plaintiff*

Apr 08 13 02:01p   David M. Israel Esq

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

THE BROOKLYN UNION GAS COMPANY              Index No.  11477/12
d/b/a NATIONAL GRID NEW YORK,

                              Plaintiff,

        -against-

HUSBENE BEAUVOIR & GARY BEAUVOIR
a/k/a GARY L. BEAUVOIR

                              Defendants.

---

## VERIFIED ANSWER

---

Attorney certification
pursuant to Section 130-1.1-a
of the Rules of the Chief
Administrator (22 NYCRR)

/ s /

Levi Huebner

# LEVI HUEBNER & ASSOCIATES, PC
*Attorneys for Defendants*

478 Malbone Street, Suite 100
Brooklyn, NY 11225
Tel. (212) 354-5555

**F**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

GARY BEAUVIOR and HUSBENE BEAUVIOR      Index No.  13-CV-01236
on behalf of themselves and all other similarly      (FB)(RML)
situated consumers,

Plaintiffs,

    -against-

DAVID M. ISRAEL,

Defendant.

----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO DISMISS

L'ABBATE, BALKAN, COLAVITA & CONTINI, L.L.P.
Attorneys for Defendant
David M. Israel
1001 Franklin Avenue
Garden City, New York 11530
(516) 294-8844
Our File No. 566-97010

Case 1:13-cv-01236-FB-RML   Document 15-6   Filed 10/04/13   Page 2 of 19 PageID #: 153

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT..........................................................................................1

STATEMENT OF RELEVANT FACTS ............................................................................1

RELEVANT GOVERNING STANDARD .........................................................................3

POINT I

      THE DEBT UPON WHICH THIS LAWSUIT IS BASED
      INVOLVES "THEFT OF SERVICES" WHICH DOES NOT
      FALL UNDER THE PURVIEW OF THE FDCPA .......................................................4

POINT II

      EVEN IF THE UNDERLYING DEBT DOES NOT
      INVOLVE "THEFT OF SERVICES", IT IS STILL NOT
      COVERED BY THE FDCPA ........................................................................................13

CONCLUSION.....................................................................................................................14

i

Case 1:13-cv-01236-FB-RML   Document 15-6   Filed 10/04/13   Page 3 of 19 PageID #: 154

## TABLE OF AUTHORITIES

Cases Page

*Atuahene v. Sears Mortg. Corp.*,
 2000 WL 134326 (E.D.Pa., 2000) ............................................................. 14

*Barstow Road Owners, Inc. v. Billing*,
 179 Misc.2d 958, 687 N.Y.S.2d 845 (Dist. Ct. Nassau Co. 1998) .......................................... 13

*Bass v. Stolper, Koritzinsky, Brewster & Nelder, S.C.*,
 111 F.3d 1322 (7th Cir. 1997) ................................................................. 6

*Colavito v. New York Organ Donor Network, Inc.*,
 8 N.Y.3d 43, 860 N.E.2d 713, 827 N.Y.S.2d 96 (2006) ........................................ 11

*Cook v. Hamrick*,
 278 F.Supp.2d 1202 (D. Colo. 2003) ........................................................ 4

*Dekom v. New York*,
 2013 WL 3095010 (E.D.N.Y. 2013) ...................................................... 3, 4

*Directv, Inc. v. Cavanaugh*,
 321 F.Supp.2d 825 (E.D. Mich. 2003) .................................................... 5, 9

*Dunn v. Meridian Mortg.*,
 2009 WL 1165396 (W.D.Va., 2009) ...................................................... 14

*Fleming v. Pickard*,
 581 F.3d 922 (9th Cir. 2009) ............................................................. 5

*Grimard v. Palmer, Reifler and Associates, P.C.*,
 2007 WL 2287831 (E.D. Mich. 2007) ..................................................... 5

*Harris v. Mills*,
 572 F.3d 66 (2d Cir.2009) .............................................................. 3, 4

*Hawthorne v. Mac Adjustment, Inc.*,
 140 F.3d 1367 (11th Cir. 1998) ........................................................... 5

*Hicken v. Arnold, Anderson & Dove, P.L.L.P.*,
 137 F.Supp.2d 1141 (D. Minn. 2001) ...................................................... 4

*Mabe v. G.C. Services Limited Partnership*,
 32 F.3d 86 (4th Cir. 1994) .............................................................. 4

*Piper v. Portnoff Law Associates,*
   215 F.R.D. 495 (E.D.Pa., 2003) ........................................................................... 14

*Pollice v. National Pack Funding, L.P.,*
   225 F.3d 379 (3rd Cir. 2000) ............................................................................... 14

*Robinson v. Goulet,*
   2013 WL 2123723 (2d Cir. 2013) ......................................................................... 4

*Sealey v. Affiliated Computer Services, Inc.,*
   2013 WL 2278415  (2d Cir. 2013) ........................................................................ 3

*Shorts v. Palmer,*
   155 F.R.D. 172 (S.D. Ohio 1994) .................................................................. 6, 8, 11

*Vigilant Ins. Co. of America v. Housing Authority of City of El Paso,*
   87 N.Y.2d 36, 660 N.E.2d 1121, 637 N.Y.S.2d 342 (1995) .................................... 11

*Zimmerman v. HBO Affiliate Group, ACS,*
   834 F.2d 1163 (3rd Cir. 1988) ........................................................................... 5, 6

<u>Statutes</u>
15 U.S.C. §1692a(5) ............................................................................................ 14
Penal Law, Section 155.35 .................................................................................. 11

<u>Rules</u>
Rule 11 of the FRCP ........................................................................................... 15
Rule 12 (b)(6) of the Federal Rules of Civil Procedure ........................................ 1, 3

<u>Other Authorities</u>
Restatement [Second] of Torts §§ 8A, 223, 243 ................................................... 11

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of the motion of defendant, David M. Israel ("Defendant" or "Mr. Israel"), seeking an Order pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure ("FRCP"), dismissing the complaint of plaintiffs, Gary Beauvior and Husbene Beauvior ("Plaintiffs").[1]

Plaintiffs' complaint seeks damages for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), based upon Mr. Israel's actions in sending a letter to Plaintiffs, on behalf of his client, The Brooklyn Union Gas Company d/b/a National Grid New York ("National Grid"), regarding Plaintiffs' improper use of "unmetered gas" at certain premises located at 10 Paerdegat 7th Street, Brooklyn, New York 11236 (the "Premises"). *See, Ex. "1."*[2] As set forth below, the underlying debt referenced in the Letter pertains to Plaintiffs' suspected "theft of services," which is not covered by the FDCPA. In addition, the underlying debt was not incurred primarily for personal, family or household purposes, as required under the FDCPA. Therefore, it is respectfully submitted that the Plaintiffs' baseless complaint should be dismissed in its entirety.

## STATEMENT OF RELEVANT FACTS

Mr. Israel was retained by National Grid to represent it with respect to a debt owed by Plaintiffs which arose out of their consumption of "unmetered gas" at the Premises, also known as theft of services, by tampering with National Grid's gas meter. Specifically, Plaintiffs had an account with National Grid governing their usage of natural gas at the Premises. Thereafter,

---

[1] It should be noted that Plaintiffs' last name in the caption of this lawsuit is misspelled as "Beauvior," whereas in the underlying matter upon which this action is based, all real estate instruments and correspondence with Mr. Israel spell the last name as "Beauvoir."

[2] All exhibits referenced herein are annexed to the Declaration of Matthew J. Bizzaro, dated July 24, 2013.

1

National Grid suspected that Plaintiffs were improperly consuming a certain amount of unregistered natural gas at the Premises for which National Grid was not receiving compensation.

As a result of the foregoing, an inspector from National Grid visited the Premises and determined that Plaintiffs had indeed tampered with the gas meter (which monitors a consumer's gas usage). More particularly, the inspector prepared a "Theft of Services Report" (the "Report"), which states in part:

> *Green tamper seal torn;*
>
> *Red tamper seal torn;*
>
> *Missing screws on index box missing; and*
>
> *Tamper seals on index box missing.*

*See, Ex. "2."*

The Report further states that in addition to gas used for house heating, three "ranges" (or stoves) were present at the Premises, where Plaintiffs claim to reside by themselves. *Id.*

Subsequently, National Grid retained Mr. Israel to collect from Plaintiffs compensation in the form of restitution for their improper use of unmetered gas obtained by meter tampering in the amount of $28,305.64. On April 24, 2012, Defendant prepared and sent to Plaintiffs the Letter, which stated in pertinent part as follows:

> Please be advised that I am an attorney and that I represent The Brooklyn Union Gas Company d/b/a National Grid New York, the original creditor with respect to the above-described matter. My client has referred the above-described claims to me for purposes of collection of the debt in the amount set forth above, ***based upon the consumption of unmetered gas*** at the above stated location. I have annexed my client's invoice to this letter (Emphasis Added).
>
> If you do not respond to this letter and do not dispute all or a portion of the debt, my client and I shall assume that the debt is valid and we now believe it is. However, if you communicate with this office, in

> writing, and dispute all or a portion of the debt, I shall obtain and provide you with verification of the claims, or a copy of the judgment, if applicable, and mail it to you, within five (5) days from my receipt of your request.  If you so dispute all or a portion of this claim, my office shall cease collection of the debt, or any disputed portion thereof, until I provide you with verification of the debt, or the name and address of the original creditor, as applicable.

*See, Ex. "1."*  Mr. Israel did not seek to collect on National Grid's behalf for any gas that was properly recorded on the gas meter and billed accordingly.  *Id.*  Rather, Defendant's letter only sought restitution for Plaintiff's consumption of unmetered/unregistered gas, which amount had not originally been billed because Plaintiffs interfered with the meter's recording function.

As a result of Plaintiffs' failure to pay the amount due and owing to National Grid, Mr. Israel commenced a lawsuit on his client's behalf, in the Supreme Court, Kings County (the "Underlying Matter"), seeking compensatory and punitive damages.  *See, Ex. "3."*  Plaintiffs served an answer to National Grid's summons and complaint.  *See, Ex. "4."*  Upon information and belief, the Underlying Matter is currently pending.

## RELEVANT GOVERNING STANDARD

In deciding Rule 12(b)(6) motions to dismiss for failure to state a claim, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." *See, Dekom v. New York*, 2013 WL 3095010 (E.D.N.Y. 2013); *Harris v. Mills*, 572 F.3d 66 (2d Cir.2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See, Dekom at 11* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. *Id.  See also, Sealey v. Affiliated Computer Services, Inc.*, 2013 WL 2278415  (2d Cir. 2013) ("To survive a Rule 12(b)(6)

3

motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face'"); *See also, Robinson v. Goulet*, 2013 WL 2123723 (2d Cir. 2013). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See, Dekom at 12; see also Harris*, 572 F.3d at 72.

As set forth more fully below, Plaintiffs have failed to state a plausible claim for relief against Defendant for violations of the FDCPA.

### POINT I

### THE DEBT UPON WHICH THIS LAWSUIT IS BASED INVOLVES "THEFT OF SERVICES" WHICH DOES NOT FALL UNDER THE PURVIEW OF THE FDCPA

The term "debt" as defined under the FDCPA means: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction *are primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to judgment.*" See, Section 1692a(5)* (emphasis added); *See also, Cook v. Hamrick*, 278 F.Supp.2d 1202 (D. Colo. 2003) ("Because the prayer for attorney fees at issue in this case, as well as any right of AIMCO to collect those fees, would have arisen out of the legal proceedings in the action for unlawful detainer and not our of any consumer transaction with Cook, it does not constitute a "debt" or a communication regarding a "debt" and the FDCPA does not apply"); *Mabe v. G.C. Services Limited Partnership*, 32 F.3d 86 (4th Cir. 1994) ("In the instant case, the appellants' child support obligation arose out of an administrative support order issued by Virginia's Department of Social Services ("DSS"). These obligations, therefore, do not qualify as "debts" under the FDCPA because they were not incurred to receive consumer goods or services."); *Hicken v. Arnold, Anderson & Dove, P.L.L.P.*, 137 F.Supp.2d 1141 (D. Minn. 2001) ("Hicken's property settlement obligations under the terms of the divorce

4

decree did not arise out of a consensual consumer obligation or business dealing and therefore does not implicate a 'transaction' within the meaning of the FDCPA").

It is well settled that the FDCPA does not cover actions constituting the theft or conversion of goods and services. In fact, every court that has been called upon to address this issue has decided that it does not. *See, Directv, Inc. v. Cavanaugh*, 321 F.Supp.2d 825 (E.D. Mich. 2003) ("The receipt of satellite signals above and beyond what was subscribed to simply does not give rise to the type of consensual transaction envisioned by the FDCPA"); *Coretti v. Lefkowitz*, 965 F.Supp.3 (D. Conn. 1997) ("Plaintiff's alleged unauthorized reception of Cablevision's Pay Per View and Premium Programming constitutes theft not a receipt of services giving rise to 'debt'"); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998) ("Hawthorne's obligation to Mac Adjustment, which arose purely out of an accident, involved no contract of any type between Hawthorne and the damaged party, the insurer, or Mac Adjustment. Likewise, it involved no consumer transaction. Accordingly, it does not constitute the type of obligation that Congress envisioned protecting through the FDCPA"); *Zimmerman v. HBO Affiliate Group, ACS*, 834 F.2d 1163 (3rd Cir. 1988) (Cable television companies were not seeking to collect a "debt" within meaning of the FDCPA when they demanded monetary compensation in the settlement of asserted legal claims against persons suspected of having illegally received microwave television signals); *Grimard v. Palmer, Reifler and Associates, P.C.*, 2007 WL 2287831 (E.D. Mich. 2007) ("Federal courts have consistently held that a money obligation arising from a tort does not constitute a "debt" for purposes of the FDCPA"); *Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009) ("Plaintiffs fail to recognize, however, that Ace did not consent to Barnes's stealing the merchandise, selling it at a discount, or pocketing the proceeds. Barnes's actions far exceeded the scope of Ace's consent, placing the resulting obligations well outside the scope of the debt obligation contemplated by the

5

FDCPA"); *Bass v. Stolper, Koritzinsky, Brewster & Nelder, S.C.*, 111 F.3d 1322 (7th Cir. 1997) ("And although a thief undoubtedly has an obligation to pay for the goods or services he steals, the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services"); *Shorts v. Palmer*, 155 F.R.D. 172 (S.D. Ohio 1994) (the court held that plaintiff was not a "consumer" within the meaning of the FDCPA when the obligation arose out of a theft).

The Letter seeks to collect a debt related solely to Plaintiff's consumption of unmetered/unregistered natural gas based upon Plaintiff's meter tampering and not for any gas that had been registered on the gas meter. Therefore, since the debt referenced in the Letter is not covered by the FDCPA, Plaintiffs complaint should be dismissed.

In opposition to Defendant's request for a pre-motion conference, and at the pre-motion conference itself, Plaintiffs' counsel, Levi Huebner, Esq., asserted several arguments, all of which are without merit. Initially, Mr. Huebner argued that his clients have contested the claim that they tampered with the gas meter and improperly consumed natural gas, and as a result, this issue must be determined in the Underlying Matter before Mr. Israel can file the instant motion. Mr. Huebner's assertion is baseless. It is the allegation that determines whether or not a claim falls under the purview of the FDCPA, not whether it is ultimately established in a court of law. For example, in *Zimmerman,* Plaintiff's lawsuits arose out of a letter which the companies sent "to persons *suspected* of signal piracy", and which demanded monetary compensation. *Id.* There, the defendants made efforts to identify unauthorized users of HBO signal, including visual inspection of the exterior of homes to which were affixed "unauthorized" antennae apparently capable of receiving HBO signal and in some cases, electronic devices were employed to determine whether these antennae were being used to receive the HBO signal at the time of the observation. *Id. at 1165.* From that

6

survey, the defendants compiled a list of names and addresses of "persons *suspected* of receiving HBO programming without a subscription." *Id*. "Approximately 5,600 persons received the letter although only 200-300 homes had actually been electronically monitored and, of those monitored, approximately 1/3 had produced no reading or data of any kind. The remaining recipients of the letter were selected due to the presence on their homes of antennae assertedly capable of receiving the HBO signal. Zimmerman had no antenna on his roof. Wires from an antenna on his neighbor's roof ran into Zimmerman's house but were not connected to anything. Other members of the putative class did not have an antenna of any kind. *Id*. The Court dismissed plaintiff's claims under the FDCPA, and in doing so, held as follows:

> Therefore, we find that the complaint fails to state a claim under the FDCPA. Insofar as the defendants may have overreached in their accusations and efforts to collect money in settlement of their claims, the plaintiff's remedy is elsewhere than under the FDCPA. We will affirm the district court's dismissal of this count.

*Id. 1169*.

In *Grimard*, Plaintiff alleged that the defendant was liable under the FDCPA for a letter it sent to plaintiff for failure to make a payment under a settlement agreement. *Id. at 2*. Specifically, plaintiff's minor son was involved in a civil lawsuit with Kmart due to his alleged shoplifting. The case was resolved pursuant to the terms of a settlement agreement. *Id. at 3*. The Court refers to the shoplifting as "*an alleged tort*" and "*the shoplifting allegation*" (Emphasis Added). *Id*. Therefore, similar to the case at bar, the plaintiff's son denied the allegations of shoplifting in the underlying matter and the Court nonetheless, held: "Federal courts have consistently held that a money obligation arising from a tort does not constitute a "debt" for purposes of the FDCPA." *Id. at 3*.

7

In *Shorts*, an employee of the Rite Aid Drug Store in Steubenville, Ohio stopped plaintiff and accused him of stealing two boxes of cigars valued at $1.74. *Id. at 173*. Plaintiff offered to pay for the cigars, but the Rite Aid employee refused the offer. Rite Aid took possession of the cigars before plaintiff left the store. *Id.* Rite Aid did not file criminal charges against plaintiff. *Id.* Later that month, plaintiff received a letter from defendant James R. Palmer, acting as a legal representative of Rite Aid of Ohio, Inc. and/or Rite Aid Corporation, in which Palmer demanded that plaintiff pay Rite Aid $106.59 in tort damages allegedly arising from his attempted theft. *Id.* The Court dismissed the FDCPA claim and held: "Plaintiff has never had a contractual arrangement of any kind with any of the defendants. The defendants did not extend him credit or engage in any other transaction with him."

Finally, in *Coretti*, the Court dismissed the FDCPA claims where the communication pertained to plaintiff's *"alleged"* unauthorized reception of Cablevision's Pay Per View and Premium Programming constitutes theft not a receipt of services giving rise to a "debt." *Id. at 5*.

Therefore, Mr. Huebner's assertion that the issue of whether Plaintiffs actually tampered with the gas meter and/or improperly consumed natural gas must be resolved before Mr. Israel can prevail on the instant motion is contradicted by the well-settled law throughout this country. In fact, the Theft of Services statute in PL 165.15(6) creates a statutory presumption of Plaintiffs' guilt. Particularly, PL 165.15(6) states:

A person is guilty of theft of services when:

With intent to avoid payment by himself or another person for a prospective or already rendered service the charge or compensation for which is measured by a meter or other mechanical device, he tampers with such device or with other equipment related thereto, or in any manner attempts to prevent the meter or device from performing its measuring function, without the consent of the supplier of the service. In any prosecution under this subdivision, proof that a

8

> meter or related equipment has been tampered with or otherwise intentionally prevented from performing its measuring function without the consent of the supplier of the service shall be presumptive evidence that the person to whom the service which is at the time being furnished by or through such meter or related equipment has, with intent to avoid payment by himself or another person for a prospective or already rendered service, created or caused to be created with reference to such meter or related equipment, the condition so existing. A person who tampers with such a device or equipment without the consent of the supplier of the service is presumed to do so with intent to avoid, or to enable another to avoid, payment for the service involved

It is respectfully submitted that this presumption should be applied in the civil causes of action, as well.

Mr. Huebner argued next that this lawsuit states a claim for violations of the FDCPA since Plaintiffs had a contract/agreement for services with National Grid. This, however, is irrelevant. For example, in *Directv*, the Court stated: "it is undisputed in this case that [plaintiff] purchased the piracy device, *was a DIRECTV subscriber*, and *possessed a DIRECTV receiver*." *Id. at 830*. The plaintiff in *Directv* made the same argument asserted by Mr. Huebner in the case at bar, *i.e.*, that since the service provider had no actual knowledge of the alleged theft, as a subscriber, any services received but not paid for by Plaintiffs, constitutes "debt" under the FDCPA. *Id. at 837*. The Court rejected plaintiff's argument and held:

> Cavanaugh offers no persuasive reason why this Court should deviate from the above holdings. Cavanaugh argues that "[i]f DIRECTV has no actual knowledge of signal theft then as a subscriber of DIRECTV's services any programming received but not paid for would be a debt." This argument only serves to confuse the legal meaning of "debt" under EUDG. Cavanaugh would have the Court believe that if there is no evidence of theft, then the demand letters are mere over billing for excessive programming that was received but not paid for...

> Even if there was no evidence of piracy, Cavanaugh's argument still falters because it fails to distinguish between the dictionary and

9

> statutory meanings of the word "debt." By arguing that the receipt of unsubscribed-to signals constitutes some sort of surplus or mistaken credit, Cavanaugh attempts to divorce the notion of "debt" from the text of the statute. The receipt of satellite signals above and beyond what was subscribed to simply does not give rise to the type of consensual transaction envisioned by the FDCPA. Accordingly, the Court finds the demand letters do not seek to collect a "debt" within the meaning of the Act.

*Id.*

Similarly, in *Coretti*, plaintiff had a contract with Cablevision, but was not authorized to access Pay Per View and Premium Programming. The Court dismissed the complaint and held as follows:

> Plaintiff's alleged unauthorized reception of Cablevision's Pay Per View and Premium Programming constitutes theft not a receipt of services giving rise to a "debt." While Cablevision did extend to Plaintiff the right to defer payment with respect to its *basic* cable package, it did not extend any such right with respect to Cablevision's Pay Per View or Premium Programming Services.
>
> Plaintiff is correct that a debt collector cannot escape the provisions of the FDCPA by using alternative means of collecting a debt, such as through a court proceeding. However, there must be a debt. Plaintiff's alleged theft by use of an illegal decoding device does not constitute a "debt" within the meaning of the FDCPA. Accordingly, Defendants' April 29 letter and the lawsuit were not an attempt to collect a "debt."

*Id. at 5.*

Based upon the foregoing, the debt that arose from the case at bar arose from Plaintiffs' meter tampering and their resulting consumption of unmetered/unregistered natural gas, and therefore, is not covered under the FDCPA.

Mr. Huebner also argued that Mr. Israel's motion should be denied since National Grid did not file any criminal charges against Plaintiffs and did not assert a cause of action for conversion in the Underlying Matter. First, the filing of criminal charges is not a prerequisite to

10

moving to dismiss a claim brought under the FDCPA which is based upon theft of services.  In fact, whether or not criminal charges have been filed is inapposite to a defendant's rights to file a motion under such circumstances.  *See, Shorts at 173* ("Rite Aid did not file criminal charges against plaintiff Shorts.").  Moreover, National Grid's complaint in the Underlying Matter clearly pleads the elements required in order to charge an individual with Grand Larceny in the third degree (*see, Penal Law, Section 155.35)* and "Theft of Services" (*see, Section 165.15*).  *See, Ex. "3."*

Finally, while none of the cases cited above hold that a debt collector must first assert a cause of action against a debtor for conversion in order for a debt to be considered "theft of services," the complaint in the Underlying Matter does plead all of the required elements of a cause of action for conversion.  Particularly, a conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession. *See, Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 860 N.E.2d 713, 827 N.Y.S.2d 96 (2006) *citing State of New York v. Seventh Regiment Fund*, 98 N.Y.2d 249, 746 N.Y.S.2d 637, 774 N.E.2d 702 [2002].  Under New York law, "[c]onversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *See, Vigilant Ins. Co. of America v. Housing Authority of City of El Paso*, 87 N.Y.2d 36, 660 N.E.2d 1121, 637 N.Y.S.2d 342 (1995) Two key elements of conversion are: (1) plaintiff's possessory right or interest in the property; and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights. *See, Colavito; see also Restatement [Second] of Torts §§ 8A, 223, 243; Prosser and Keeton, Torts §15, at 92, 102 [5th ed.].*  In its complaint in the Underlying Matter, National Grid alleged as follows:

11

Upon information and belief, during the period set forth below, Husbene, on behalf of and as an agent for an on behalf of all of the co-defendants, maintained a metered gas account with Plaintiff for gas services to the premise, under **account number 06521/61873**, which was for the Plaintiff's supply of natural gas to fuel the premise's heating, and hot water system and that in connection with this account Plaintiff installed a gas meter, which belonged to Plaintiff, and which was set to accurately record Defendant's gas consumption.

Upon information and belief, on or about and between **October 25, 2005** through **September 7, 2011**, Defendants, pursuant to an ongoing common scheme and plan, intentionally, wrongfully, unlawfully, wantonly and recklessly diverted and consumed unmetered natural gas belonging to Plaintiff at the aforementioned premise, by means of unlawfully tampering with Plaintiff's aforementioned gas meter to impede, impair, obstruct and prevent the said meter from performing its recording function. Upon further information and belief, Defendants did thereby intentionally, willfully, recklessly, maliciously and fraudulently fueled the premise's house heating and hot water system, three (3) ranges and one (1) dryer, without Plaintiff's prior knowledge , permission or authority.

*See, Ex. "3" paragraphs "7" and "8."* Therefore, Mr. Israel's complaint does allege the elements of conversion, and Mr. Huebner's argument merely places form over substance.

In addition to the foregoing, it is worth noting that courts have awarded utility companies, including National Grid, punitive damages in matters such as this, involving the "theft of services." *See e.g., The Brooklyn Union Gas Company d/b/a National Grid New York v. Johnson* (Index No. 4922/11) (the court awarded judgment in the amount of $28,759.32 in compensatory damages, plus $50,000 punitive damages in a "theft of services" case); *The Brooklyn Union Gas Company d/b/a KeySpan Energy Delivery New York v. Collocated Inc.*, (Index No. 121687/06) (February 6, 2007) (the Civil Court, Kings County awarded plaintiff compensatory damages of $8,676.04 and $5,000 punitive damages in a "theft of services" case); *The Brooklyn Union Gas Company d/b/a KeySpan Energy Delivery New York v. Reid*, (Index No. 103500/06 (January 16,

2007) (the Civil Court, Kings County, awarded this plaintiff compensatory damages of $10,166.39 and punitive damages of $8,500.00, in a "theft of services" case); *Brooklyn Union Gas Company d/b/a KeySpan Energy Co. v. John A. Diggs* (Index No. 39371/02) (the Civil Court, Kings County awarded judgment after trial in the amount of $1.00 in compensatory damages and punitive damages in the amount of $4,000 in a "theft of services" case). Therefore, the State of New York employs a strong public policy of deterring the practices of tampering with gas meters and improperly consuming unmetered gas.

Based upon the foregoing, in the Letter, Mr. Israel seeks to collect a debt on behalf of National Grid for Plaintiffs' suspected "theft of services." Therefore, the instant lawsuit does not fall under the purview of the FDCPA, and should be dismissed accordingly.

## POINT II

### EVEN IF THE UNDERLYING DEBT DOES NOT INVOLVE "THEFT OF SERVICES", IT IS STILL NOT COVERED BY THE FDCPA

In the event this Court determines that the debt referenced in the Letter does not constitute "theft of services," Plaintiffs' complaint should nonetheless, be dismissed. Specifically, the FDCPA only covers services, which are primarily for personal family or household purposes.' Although, upon information and belief, Plaintiffs (husband and wife) claim to reside at the Premises by themselves, the Report indicates that three stoves were discovered during the inspection. *See, Ex. "2."* It is unfathomable to ascertain why a single family home would require three stoves for their own personal use. Rather, it is respectfully submitted that Plaintiffs leased all or part of the Premises to tenants, thereby removing this lawsuit from the purview of the FDCPA. More specifically, if Plaintiffs are deriving income from their ownership of the Premises, any debt incurred with respect to same would be related to business purposes. *See, Barstow Road Owners, Inc. v. Billing,* 179

Misc.2d 958, 687 N.Y.S.2d 845 (Dist. Ct. Nassau Co. 1998) ("…the obligation of respondent-lessees to pay the maintenance fees to the petitioner did not arise out of "a transaction in which the money … or services which are the subject of the transaction are primarily for personal, family, or household purposes …" 15 U.S.C. §1692a(5). They were the subject of a transaction primarily for "business" purposes, as the respondent-lessees had rented the premises out to subtenants"); *Piper v. Portnoff Law* Associates, 215 F.R.D. 495 (E.D.Pa., 2003) (holding that FDCPA does not apply to debts incurred on rental properties); *Dunn v. Meridian Mortg.*, 2009 WL 1165396 (W.D.Va., 2009) ( a loan taken out to fund improvements on investment property is not governed by the FDCPA)*; Pollice v. National Pack Funding, L.P.*, 225 F.3d 379 (3rd Cir. 2000) ("water and sewer obligations owed by individuals who owned their property for business purposes does not qualify as 'debt' under the FDCPA because the services were not primarily for personal, family or household purposes"); *Atuahene v. Sears Mortg. Corp.*, 2000 WL 134326 (E.D.Pa., 2000) (holding that the business or commercial purposes exemption extends to rental property).

Based upon the foregoing, assuming arguendo that this Court determines that the debt referenced in the Letter does not involve "theft of services," it is respectfully submitted that the Complaint should nonetheless, be dismissed since it was incurred primarily for business reasons and not personal, family or household purposes.

## CONCLUSION

Plaintiffs' lawsuit is nothing more than an attempt to harass Mr. Israel and National Grid, and to frustrate and delay an attempt to collect a legitimate debt based upon their alleged use of unmetered gas. Moreover, Plaintiffs' lawsuit asserts baseless claims and legal contentions, which are not warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law. Specifically, the well-settled case law throughout this

14

country, demonstrates that an attempt to collect a debt which pertains to the debtor's alleged/suspected unauthorized and/or improper use of goods or services does not fall under the purview of the FDCPA.  Further, an attempt to collect a debt from an individual related to property owned for business purposes is also not covered by the FDCPA.

       The baseless arguments asserted by Mr. Huebner both in response to Defendant's request for a pre-motion conference and at the conference itself, clearly demonstrate his wanton disregard of applicable law pertaining to the type of debt covered by the FDCPA.

       Based upon the foregoing, it is respectfully submitted that Plaintiffs' complaint be dismissed in its entirety.

       Finally, both Plaintiffs and their counsel were previously provided with the applicable case law governing the relevant issues, but they have insisted on proceeding with the instant lawsuit, which has caused Mr. Israel to incur additional legal fees and expenses.  As such, Mr. Israel reserves his right to seek costs, sanctions and reasonable attorney's fees pursuant to Rule 11 of the FRCP against both Plaintiffs and their counsel, following the Court's determination of the instant motion.

Dated: Garden City, New York
      July 24, 2013

                        Respectfully submitted,

                        L'ABBATE, BALKAN, COLAVITA
                         & CONTINI, L.L.P.

By: _____
                        Matthew J. Bizzaro, Esq.
                        Attorneys for Defendant
                        1001 Franklin Avenue, 3rd Floor
                        Garden City, NY 11530
                        (516) 294-8844
                        Our File No. 566-97010

**G**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GARY BEAUVIOR and HUSBENE BEAUVIOR          Index No. 13-CV-01236
on behalf of themselves and all other similarly          (FB)(RML)
situated consumers,

                                        Plaintiffs,          **DECLARATION IN OPPOSITION
                                                             TO DEFENDANT'S MOTION**
                        -against-                            **TO DISMISS**


DAVID M. ISRAEL,
                                        Defendant.
-------------------------------------------------------------X

    I submit this Declaration in opposition to the defendant's motion seeking to dismiss the complaint.

    1.      I am the principal of Levi Huebner & Associates, PC, attorneys for the Plaintiffs in the within matter and as such I am fully familiar with the within matter based upon information furnished to me by the Plaintiffs and the file maintained by this office.

    2.      A true copy of the Verified Complaint in this action and the annexed letter of David M. Israel dated April 23, 2013 is attached hereto as **Exhibit "1".**

    3.      A true copy of the letter from National Grid dated January 10, 2013 and the annexed invoice from National Grid dated December 5, 2012 is attached hereto as **Exhibit "2".**

    4.      A true copy of the letter from David M. Israel dated April 23, 2013 and the annexed invoice from National Grid is attached hereto as **Exhibit "3".**

    5.      I declare under penalty of perjury that the foregoing is true and correct.

**WHEREFORE**, it is respectfully requested that Defendant's motion be denied in its entirety and

that Plaintiffs be granted such further relief as this court deems just and proper.

DATED:  Brooklyn, NY
      September 3, 2013

                LEVI HUEBNER & ASSOCIATES, PC

                    /s/ Levi Huebner

BY:  _____

                  Levi Huebner

                *Attorneys for Plaintiffs*
                .

# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
GARY BEAUVIOR and HUSBENE BEAUVIOR            Index No. 13-CV-01236
on behalf of themselves and all other similarly           (FB)(RML)
situated consumers,

                              Plaintiffs,        **DECLARATION OF GARY BEAUVOIR**
                                              **IN OPPOSITION TO DEFENDANT'S**
                                        **<u>MOTION TO DISMISS THE COMPLAINT</u>**

        -against-


DAVID M. ISRAEL,
                          Defendant.
--------------------------------------------------------------X


        Gary Beauvoir hereby being duly sworn, deposes and says:

        1.      I submit this declaration in opposition to the defendant's motion seeking to dismiss the complaint.

        2.      My wife Husbene Beauvoir and I purchased the premises located at 10 Paerdegat 7th Street, Brooklyn, New York 11236 in 1992. (the "Residence").

        3.      We moved into the Residence in 1992 where we continue to reside with our two children.

        4.      We reside with our two children on the 1st and 2nd floor of the Residence.

        5.      The gas supplied to us for the 1st and 2nd floor of the Residence by National Grid at is billed by National Grid under a metered gas account, under the account number 06521-61873 (our "Meter").

        6.      From 1992 until 2011 we always had the same meter for our account number 06521-61783.

        7.      From 1992 until 2011 the gas bill for our Meter more or less remained steady.

8.      My wife and I never tampered with our Meter or changed the settings in any way.

9.      From 1992 until 2011 we never had any notice, knowledge, or reason to believe that our Meter was broken, tampered with, or operating improperly.

10.     From 1992 until 2011 we regularly received a gas bill for our gas account, under the account number 06521-61873 from the gas company now known as National Grid and paid same on a regular basis.

11.     To date we receive gas from National Grid on our new meter under the account number 06521-61873.

12.     The 3rd floor unit of the premises is occupied by our tenant.

13.     The gas supplied to the Tenant's Unit is and always has been billed by National Grid under a separate metered account, under the account number 06521-61863.

14.     Our residence and the tenant's residence utilized separate meters and accounts when the we moved into the Residence in 1992 and continued to utilize separate meters to date

15.     When I received the summons and complaint from National Grid bearing the Index Number 11477-12 it had attached as an exhibit the invoice from National Grid dated December 5, 2013. (the "Invoice").

16.     The Invoice is attached as Exhibit "2" and "3" to my attorneys Declaration dated September 3, 2013.

17.     I have read my attorneys Memorandum of Law and Declaration and they are true and accurate.


/ s /
_____
Gary Beauvoir

Affirmed:      Brooklyn, New York
               September 3, 2013

Sworn to before me this
3[th] day of September, 2013


        / s /
_____
Notary Public

# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GARY BEAUVIOR and HUSBENE BEAUVIOR
on behalf of themselves and
all other similarly situated consumers

                                Plaintiffs,

           -against-

DAVID M. ISRAEL

                               Defendant.
-------------------------------------------------------------X

## CLASS ACTION COMPLAINT

*Introduction*

1.     Plaintiffs Gary Beauvior and Husbene Beauvior seek redress for the illegal practices of David M. Israel in which it unlawfully engaged in the collection of consumer debts in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

### *Parties*

2.     Plaintiffs are citizens of the State of New York who reside within this District.

3.     Plaintiffs are a consumers as that term is defined by Section 1692(a)(3) of the FDCPA.

4.     The alleged debt that Defendant sought to collect from the Plaintiff involves a consumer debt purportedly owed to The Brooklyn Union Gas Company d/b/a National Grid New York.

5.     Upon information and belief, Defendant's principal place of business is located within New York, New York.

6.  Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

7.  Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

### Jurisdiction and Venue

8.  This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

9.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, within this district.

### Allegations Particular to Husbene and Gary Beauvior

10.  Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from the Plaintiffs.

11.  On or about April 23, 2012, Defendant sent the Plaintiffs a collection letter seeking to collect a balance allegedly incurred for personal purposes. A true copy of the letter dated April 23, 2012 is attached hereto as Exhibit 1.

12.  Said letter did not include the required thirty day time period for disputing the debt rendering the validation notice ineffective in violation of 1692g(3), 1692g(4), and 1692g(5).

13.  Validation of debts  [15 USC 1692g] states:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

Case 13-cv-01236-TBM-RMD Document 16-2 Filed 03/04/13 Page 3 of 12 PageID #: 178

(1) **the amount of the debt**;

(2) the name of the creditor to whom the debt is owed;

(3) **a statement that unless the consumer, within thirty days after receipt of the notice,** disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) **a statement that if the consumer notifies the debt collector in writing within the thirty-day period** that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) **a statement that, upon the consumer's written request within the thirty-day period**, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

14.  Section 1692g(b) of the FDCPA states, "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b).

15.  "Importantly, the FDCPA does not assume that the recipient of a collection letter is aware of h[is] right to require verification of the debt. Instead, the statute requires the debt collector to inform the debtor of his rights by sending him a `validation notice' with the initial dunning letter (or within 5 days thereafter)."  *Owens v. Hellmuth & Johnson, PLLC*, 550 F. Supp. 2d 1060,1064(D. Minn. 2008).

Case 1:13-cv-01236-TFM-RMD Document 16-2 Filed 03/08/13 Page 4 of 12 PageID #: 79

16.    One of the reasons for requiring notice is to "ensure that debt collectors [give] consumers adequate information concerning their legal rights."  S*wanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir.1988),  quoting S. Rep. No. 382, 95th Cong. 2d Sess. 4, reprinted in 1977 U.S. Code Cong. & Admin. 17 News 1695, 1702. However, if the consumer fails to contact the debt collector within 30 days these rights are lost forever.  Id.  It is therefore in the interest of an unscrupulous debt collector to not actually alert the consumer to his or her rights.

17.    Overshadowing occurs not only when the validation notice contains contradictory language, but also when the overall tenor, form, and context of the communication would mislead the least sophisticated debtor and encourages him to disregard his rights. *Terran v. Kaplan*,109 F.3d 1428, 1432 (9th Cir.1997); see also *Voris v. Resurgent Capital Services, L.P.*, 494 F. Supp. 2d 1156,1163 (S.D.Cal. 2007). see also *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996). A notice is overshadowing or contradictory if least sophisticated consumer would be confused as to the consumer's rights.

18.    Thus, it makes sense that under the FDCPA, notice of the thirty-day validation period is mandatory, but is not, under every circumstance, sufficient to satisfy § 1692g(a); a debt collector must "effectively convey" the notice to the debtor. *Smith v. Computer Credit, Inc.*, 167 F. 3d 1052, 1054 (6th Cir. 1999).

19.    To determine whether a debt collector has "effectively conveyed" the validation notice, the United States Court of Appeals for the Third Circuit applies the "least sophisticated debtor" standard. The FDCPA is to be interpreted in accordance with the "least sophisticated debtor" standard. See *Clark Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir.2006).

20.   The least sophisticated debtor standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith*, 167 F.3d at 1054, quoting *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988)).

21.   In this case, when confronted with David M. Israel's letter threatening to take any action to fullest extent of the law and requesting payment in full to be remitted immediately.

22.   A demand for payment or action by the consumer within a time less than the disclosed thirty-day validation period contradicts § 1692g(a) and thus violates the Act. See *U.S. v. National Financial Services*, 98 F.3d 131, 139 (4th Cir.1996); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2nd Cir.1996); *Miller v.Payco-General Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir.1991); *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1226 (9th Cir. 1988).

23.   Defendant's letter is in violation of 15 U.S.C. §§ 1692g, 1692e(5) and 1692e(10) for failing to accurately set forth the dispute and verification rights and for engaging in deceptive and falsely threatening practices.

24.   The said collection letter also states in pertinent: "My client has referred the above-described claim to me for purposes of collection of the debt in the amount set forth above…"

25.   No amount of debt appears on the said letter in violation of 1692g(1).

### AS AND FOR A FIRST CAUSE OF ACTION

*Violations of the Fair Debt Collection Practices Act brought by Plaintiffs on behalf of themselves and the members of a class, as against the Defendant.*

26.   Plaintiffs re-state, re-allege, and incorporates herein by reference, paragraphs one (1) through twenty-five (25) as if set forth fully in this cause of action.

27.   This cause of action is brought on behalf of Plaintiffs and the members of a class.

Case 1:13-cv-01236-FB-RML Document 16-2 Filed 03/04/13 Page 6 of 12 PageID #: 81

28. The class consists of all person*s* whom Defendant's records reflect resided in the State of New York and who were sent a collection letter (a) bearing the Defendant's letterhead in substantially the same form as the letter sent to the Plaintiffs, sent within one year prior to the date of the within complaint concerning The Brooklyn Union Gas Company d/b/a National Grid New York (b) the collection letter was sent to a consumer seeking payment of a consumer debt; and (c) the collection letter was not returned by the postal service as undelivered (d) and the Plaintiffs assert that the letter contained violations of 15 U.S.C. §§ 1692e(5), 1692e(10),1692g, 1692g(1), 1692g(3), 1692g(4), and 1692g(5).

29. Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

(a)     Based on the fact that form collection letters are at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

(b)     There are questions of law and fact common to the class and these questions predominate over any question(s) affecting only individual class members.   The principal question presented by this claim is whether the Defendant violated the FDCPA.

(c)     The only individual issue involves the identification of the consumers who received such collection letters (*i.e.* the class members).   This is purely a matter capable of ministerial determination from the records of the Defendant.

(d)     The claims of the Plaintiffs are typical of those of the class members.   All of the respective class claims are based on substantially similar facts and legal theories.

(e)     The Plaintiffs will fairly and adequately represent the class members' interests. The Plaintiffs have retained counsel experienced in bringing class actions and collection abuse claims. The Plaintiff' interests are consistent with those of the members of the class.

30.   A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

31.   If the facts are discovered to be appropriate, the Plaintiffs will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

32.   Collection attempts, such as those made by the Defendant are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

*Violations of the Fair Debt Collection Practices Act*

33.   The Defendant's actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

34.   Because the Defendant violated of the Fair Debt Collection Practices Act, the Plaintiffs and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

**WHEREFORE**, Plaintiffs, respectfully request that this Court enter judgment in their favor and

against the Defendant and award damages as follows:

a)    Statutory and actual damages provided under the FDCPA, 15 U.S.1692(k);

b)    Attorney fees, litigation expenses and costs incurred in bringing this action; and

c)    Any other relief that this Court deems appropriate and just under the circumstances.


Dated: Brooklyn, NY
      March 6, 2013

                    **Levi Huebner & Associates, PC**

                    / s / Levi Huebner
                    _____
        By:     Levi Huebner (LH1360)

                    478 Malbone Street, Suite 100
                    Brooklyn, NY  11225
                    Phone:      (212) 354-5555
                    Facsimile:   (347) 350-8789

                    *Attorneys for Plaintiffs*
                    Husbene Beauvior & Gary Beauvior


Plaintiff requests trial by jury on all issues so triable

      / s / Levi Huebner
      _____
By:     Levi Huebner (LH1360)

**EXHIBIT 1**

**DAVID M. ISRAEL**
ATTORNEY AT LAW
111 JOHN STREET
SUITE 1115
NEW YORK, N.Y. 10038
—
TEL: (212) 514-5000
FAX: (212) 514-5004

April 23, 2012

Husbene Beauvoir
10 Paerdegat 7th Street
Brooklyn, NY 11236
"Personal & Confidential"

Gary Beauvoir
10 Paerdegat 7th Street
Brooklyn, NY 11236
"Personal & Confidential"

Re:     The Brooklyn Union Gas Company d/b/a National Grid New York
        & Husbene Beauvoir & Gary Beauvoir
        National Grid Bypass File Number: 00090/47098
        National Grid's Attorney File Number: BUG 18595

Dear Husbene Beauvoir & Gary Beauvoir,

        Please be advised that I am an attorney and that I represent The Brooklyn Union Gas Company d/b/a National Grid New York, the original creditor with respect to the above-described matter. My client has referred the above-described claim to me for purposes of collection of the debt in the amount set forth above, based upon the consumption of unmetered gas at the above stated location. I have annexed my client's invoice to this letter.

        If you do not respond to this letter and do not dispute all or a portion of the debt, my client and I shall assume that the debt is valid and we now believe it is. However, if you communicate with this office, in writing, and dispute all or a portion of the debt, I shall obtain and provide you with verification of the claim, or a copy of the judgment, if applicable, and mail it to you, within five (5) days from my receipt of your request. If you so dispute all or a portion of this claim, my office shall cease collection of the debt, or any disputed portion thereof, until I provide you with verification of the debt, or the name and address of the original creditor, as applicable.

        I urge you or your attorney to contact my office as soon as possible. If you wish to make an arrangement for the payment of the debt, in lump sum, or in reasonable and appropriate installments, please contact my office at once. This office reserves the right to immediately commence legal action with respect to this matter.

1

**PLEASE NOTE THAT MY LAW OFFICE, INCLUDING THE UNDERSIGNED AND STAFF, ARE ACTING ON BEHALF OF OUR CLIENT TO COLLECT A DEBT AND ANY INFORMATION THAT THIS OFFICE OBTAINS WILL BE USED FOR THAT PURPOSE.**

Very truly yours,

DAVID M. ISRAEL

Enclosure
DMI/df

2

**<u>VERIFICATION</u>**

Gary Beauvior being duly sworn, deposes and says pursuant to 28 U.S.C. § 1746:

I am the Plaintiff in the within action. I have read the foregoing Verified Complaint, that the same is true to my knowledge, except as to those matters therein stated to be upon information and belief, and as to those matters I believe them to be true.

/ s / Gary Beauvior
_____
Gary Beauvior

Affirmed:    Brooklyn, New York
           March 6, 2013

Affirmed to before me this
6th day of March, 2013

/ s / Paul Huebner
_____
Notary Public

      Paul Huebner
Notary Public, State of New York
     No. 02HU6157168
     Qualified in Kings County
Commission Expires Dec. 4, 2014

# Exhibit 3

# national**grid**

January 10, 2012

HUSBENE & GARY BEAUVOIR
10 PAERDEGAT 7 STREET
BROOKLYN, NY 11236

Acct No. 00090/47098

Dear Customer:

On 09/07/11, our representative found that all of the gas being uses at 10 PAERDEGAT 7 STREET, was not being registered through an authorized National Grid connection.

Our investigation shows that you were not billed for all service from 10/25/05 to 09/07/11, when the unauthorized connection was removed.

Enclosed is a bill for $28,305.64 for this un-metered service. This bill covers the period from 10/25/05 to 09/07/11.

If the enclosed bill is for a period greater than 24 months, it is in accordance with New York State Public Service Commission Rules, specifically 16 NYCRR 11.14 (e) or 13.9 (c) (2), which allows a utility to back bill for unbilled service rendered more than 24 months before the company became aware of the condition causing the under-billing only if the utility can demonstrate that the customer knew or reasonably should have known that the original billing was incorrect.

Your payment of the enclosed bill is requested immediately. If you cannot pay the bill in full, we can work out a time payment plan. If you would like further information about this bill, or want to discuss payment options, please call (718) 403-2687.

Sincerely,

Credit Controller
ByPass Division- Downstate

bp1

# Exhibit 4

# nationalGRID

nationalgrid
One Metrotech Center
Brooklyn, NY 11201-3850

HUSBENE & GARY BEAUVOIR
10 PAERDEGAT 7 STREET
BROOKLYN, NY 11236

**Amount Due**

00090/47098                                   $28,305.64
|__Account Number__|           Make checks payable to National Grid
Please mail this part of the bill with your payment      Write your account number on check

| ice To: | Account Number | Next Meter Reading | Bill Date |
|---|---|---|---|
| HUSBENE & GARY BEAUVOIR | 00090/42098 | $28,305.64 | 12/05/11 |
| 10 PAERDEGAT 7 STREET | Rate: | For Customer Assistance | |
| BROOKLYN, NY 11236 | 1017-1 | Please call (718) 643-4050 | |

| **Billing Periods** | From | 10/25/05 | |
| | To | 09/07/11 | |

| CURRENT GAS USSAGE | 21790 | |
| THERMAL FACTOR | 1.0319 | |
| CURRENT THERM USAGE | 22487 | $32,360.42 |
| TA & N.Y. STATE SURCHARGES | 0.00178 | $63.69 |
| Sale TAX @ 4.500% | | $1,295.77 |
| **Gas Used** | | **$5,414.24** |
| **Payments** | | |

| **TOTAL DUE UPON RECEIPT PLEASE PAY** | | **$28,305.64** |

This is an estimated bill calculated according to a degree day formula and / or
the equipment utilizing unmetered gas.

National Grid reserves the right to revise this bill pending any further
Investigation and / or the discovery of new information.

For information regarding this invoice, please call (718) 403-2687

# Exhibit 5

DAVID M. ISRAEL
ATTORNEY AT LAW
111 JOHN STREET
SUITE 1115
NEW YORK, N.Y. 10038

TEL: (212) 514-5000
FAX: (212) 514-5004

April 23, 2012

Husbene Beauvoir
10 Paerdegat 7th Street
Brooklyn, NY 11236
"Personal & Confidential"

Gary Beauvoir
10 Paerdegat 7th Street
Brooklyn, NY 11236
"Personal & Confidential"

Re:   The Brooklyn Union Gas Company d/b/a National Grid New York
      & Husbene Beauvoir & Gary Beauvoir
      National Grid Bypass File Number: 00090/47098
      National Grid's Attorney File Number: BUG 18595

Dear Husbene Beauvoir & Gary Beauvoir,

Please be advised that I am an attorney and that I represent The Brooklyn Union Gas Company d/b/a National Grid New York, the original creditor with respect to the above-described matter.  My client has referred the above-described claim to me for purposes of collection of the debt in the amount set forth above, based upon the consumption of unmetered gas at the above stated location. I have annexed my client's invoice to this letter.

If you do not respond to this letter and do not dispute all or a portion of the debt, my client and I shall assume that the debt is valid and we now believe it is. However, if you communicate with this office, in writing, and dispute all or a portion of the debt, I shall obtain and provide you with verification of the claim, or a copy of the judgment, if applicable, and mail it to you, within five (5) days from my receipt of your request.  If you so dispute all or a portion of this claim, my office shall cease collection of the debt, or any disputed portion thereof, until I provide you with verification of the debt, or the name and address of the original creditor, as applicable.

I urge you or your attorney to contact my office as soon as possible.  If you wish to make an arrangement for the payment of the debt, in lump sum, or in reasonable and appropriate installments, please contact my office at once. This office reserves the right to immediately commence legal action with respect to this matter.

1

**PLEASE NOTE THAT MY LAW OFFICE, INCLUDING THE UNDERSIGNED AND STAFF, ARE ACTING ON BEHALF OF OUR CLIENT TO COLLECT A DEBT AND ANY INFORMATION THAT THIS OFFICE OBTAINS WILL BE USED FOR THAT PURPOSE.**

Very truly yours,

DAVID M. ISRAEL

Enclosure
DMI/df

2

**nationalGRID**

nationalgrid
One Metrotech Center
Brooklyn, NY 11201-3850

HUSBENE & GARY BEAUVOIR
10 PAERDEGAT 7 STREET
BROOKLYN, NY 11236

| | | **Amount Due** |
|---|---|---|
| 00090/47098 | | $28,305.64 |
| !__Account Number__! | | Make checks payable to National Grid |
| Please mail this part of the bill with your payment | | Write your account number on check |

| ice To | Account Number | Next Meter Reading | Bill Date |
|---|---|---|---|
| HUSBENE & GARY BEAUVOIR | 00090/47098 | | 12/05/11 |
| 10 PAERDEGAT 7 STREET | Rate | For Customer Assistance | |
| BROOKLYN, NY 11236 | 10.17-1 | Please call (718) 643-4050 | |

| Billing Periods | | From | 10/25/05 |
|---|---|---|---|
| | | To | 09/07/11 |

| | | | |
|---|---|---|---|
| CURRENT GAS USSAGE | | 21790 | |
| THERMAL FACTOR | | 1.0319 | |
| CURRENT THERM USAGE | | 22487 | $32,360.42 |
| TA & N.Y. STATE SURCHARGES | | 0.00178 | $63.69 |
| Sale TAX @ 4.500% | | | $1,295.77 |
| **Gas Used** | | | **$5,414.24** |
| **Payments** | | | |

| **TOTAL DUE UPON RECEIPT PLEASE PAY** | | | **$28,305.64** |
|---|---|---|---|

This is an estimated bill calculated according to a degree day formula and / or
the equipment utilizing unmetered gas.

National Grid reserves the right to revise this bill pending any further
Investigation and / or the discovery of new information.

For information regarding this invoice, please call (718) 403-2687

**H**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GARY BEAUVIOR and HUSBENE BEAUVIOR          Index No. 13-CV-01236
on behalf of themselves and all other similarly          (FB)(RML)
situated consumers,

                                        Plaintiffs,

            -against-

DAVID M. ISRAEL,
                                        Defendant.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

**Levi Huebner & Associates, PC**
478 Malbone Street, Suite 100
Brooklyn, NY  11225
Phone:      (212) 354-5555

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF RELEVANT FACTS .................................................................2

DEFENDANT'S MIREPRESENTATION OF RELEVANT FACTS AND UNSUPORTED ALLEGATIONS MAY NOT BE CONSIDERED…………….....................................................5

RELEVANT GOVERNING STANDARD ...............................................................8

POINT I

THE DEBT UPON WHICH THIS LAWSUIT IS BASED
DOES FALL UNDER THE PURVIEW OF THE FDCPA .......................................................9

    a. The Dispute Regarding the Nature of the Debt Cannot Be Resolved by a Motion to Dismiss………………………………………………………………………...11

    b. The Collection Letter Defines the Nature of the Debt…………….....................................11

THE CASES CITED BY DEFENDANT ARE INNAPLICABLE TO AND/OR MAY BE DISTINGUISHED FROM THE WITHIN MATTER…………………………………...12

POINT II

EVEN IF THE PLAINTIFFS HAVE A TENANT THE DEBT IS COVERED BY THE FDCPA BECAUSE THE GAS CONSUMED BY THE BEAUVOIRS IS PRIMARILY FOR PERSONAL USAGE.....................................................................................................17

CONCLUSION ......................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Allen v. BRT Util. Corp.*,

1996 WL 776583 (D. Conn. Oct. 24, 1996)…………………………………………………..17

*Altergott v. Modern Collection Techniques*,

1994 WL 319229 (N.D. Ill. June 23, 1994)…………………………………………………..18

*Ashcroft v. Iqbal*,

556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)……………….....………………..8

*Atuahene v. Sears Mortg. Corp.*,

2000 WL 134326 (E.D .Pa., 2000) ..........................................................................................19

*Barstow Road Owners, Inc. v. Billing*,

179 Misc.2d 958, 687 N.Y.S.2d 845 (Dist. Ct. Nassau Co. 1998) .............................................18

*Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*,

111 F.3d 1322 (7th Cir. 1997) .........................................................................................13

*Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555, S.Ct. 1955, 167 L.Ed.2d 929 (2007))………………………………………..8

*Brown v. Palisades Collection, L.L.C.*, 2011 (S.D. Ind. June 24, 2011)

*Coretti v. Lefkowitz*,

965 F.Supp.3 (D. Conn. 1997)…………………………………………………………………..14

*Cook v. Hamrick*,

278 F.Supp.2d 1202 (D. Colo. 2003) .......................................................................................12

*Directv, Inc. v. Cavanaugh*,

321 F.Supp.2d 825 (E.D. Mich. 2003) .......................................................................................14

*Dunn v. Meridian Mortg.,*

2009 WL 1165396 (W.D.Va., 2009) ........................................19

*Fleming v. Pickard,*

581 F.3d 922 (9th Cir. 2009) ........................................12

*Garner v. Kansas,* 1999 WL 262100

(E.D. La. Apr. 30, 1999)……………………………………………………18

*Grimard v. Palmer, Reifler and Associates, P. C.,*

2007 WL 2287831 (E.D. Mich. 2007) ........................................13

*Harris v. Mills,*

572 F.3d 66 (2d Cir.2009) ........................................8

*Hawthorne v. Mac Adjustment, Inc.,*

140 F.3d 1367 (11th Cir. 1998) ........................................13

*Hicken v. Arnold, Anderson & Dove, P.L.L.P.,*

137 F.Supp.2d 1141 (D. Minn. 2001) ........................................12

*Holman v. West Valley Collection Servs.,*

60 F. Supp. 2d 935 (D. Minn. 1999)……………………………………11

*Kawa v. U.S. Bank,* 2009 WL 700593

(D. Neb. Mar. 13, 2009)……………………………………………………18

*Kimmel v. Cavalry Portfolio Servs.,*

L.L.C., 2011 2011 U.S. Dist. LEXIS 83008 (E.D. Pa. July 28, 2011)…………………………..12

*Mabe v.* G. C. *Services Limited Partnership,*

32 F.3d 86 (4th Cir. 1994) ........................................12

*Moss v. Cavalry Invs., L.L.C.*,

2004 U.S. Dist. LEXIS 24990, 3-4 (N.D. Tex. Sept. 20, 2004)…………………………………11

*Perovich v. Humphrey*,

1997 WL 674975 (N.D. Ill. Oct. 28, 1997)……………………………………………………16

*Piper v. Portnoff Law Associates,*

215 F.R.D. 495 (E.D.Pa., 2003) ...................................................................................19

*Pollice v. National Pack Funding, L.P.,*

225 F.3d 379 (3rd Cir. 2000) ...................................................................................19

*Randolph v. Crown Asset Mgmt., L.L.C.,*

254 F.R.D. 513 (N.D. Ill. 2008) ………………………………………………………...17, 18

Rochester Gas & Elec. Corp. v. Greece Park Realty Corp.,

195 A.D.2d 956, 600 N.Y.S.2d 985, 1993 N.Y. App. Div. (N.Y. App. Div. 4th Dep't 1993)

……………………………………………………………………………………...9, 10

*Shafe v. Tek-Collect, Inc.*,

2007 U.S. Dist. LEXIS 90665 (W.D. Mo. Dec. 7, 2007)………………………………………11

*Sheehan v. Mellon Bank,*

*N.A.*, 1995 U.S. Dist. LEXIS 13457 (E.D. Pa. Sept. 7, 1995)………………………………...11

*Shorts v. Palmer,*

155 F.R.D. 172 (S.D. Ohio 1994) ...................................................................................6, 8, 11

*Spiegel v. Judicial Attorney Servs., Inc.*,

2011 WL 382809 (N.D. Ill. Feb. 1, 2011)……………………………………………………17

*Thies v. Law Offices of William A. Wyman*,

969 F. Supp. 604 (S.D. Cal. 1997)……………………………………………………………17

*Yee v. Ventus Capital Servs., Inc.,*

2006 WL 1310463 (N.D. Cal. May 12, 2006)………………………………………………..17

*Zimmerman v. HBO Affiliate Group, ACS,*

834 F .2d 1163 (3rd Cir. 1988) .....................................................................................13

**Statutes**

15 U.S.C. §1692a(5) ......................................................................................................9

**Rules**

Rule 12 (b)(6) of the Federal Rules of Civil Procedure ...........................................1, 3

New York State Public Service Commission Rules §16 NYCRR 11.14(e).........................5,7,11

## PRELIMINARY STATEMENT

This memorandum of law is submitted in opposition to the motion of defendant, David M. Israel ("Defendant" or "Mr. Israel"), seeking an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), dismissing the complaint of plaintiffs, Gary Beauvior ("Mr. Beauvior") and Husbene Beauvior ("Mrs. Beauvoir") and/or collectively ("Plaintiffs" or the "Beauvoirs").[1]

The Beauvoirs' complaint seeks damages for violations of the Fair Debt Collection Practices Act ("FDCPA"), which occurred when Mr. Israel sent a letter dated April 23, 2013 (the "Letter") to the Beauvoirs, on behalf of his client, The Brooklyn Union Gas Company d/b/a National Grid New York ("National Grid"), regarding the Beauvoirs alleged use of gas at their residence located at 10 Paerdegat 7th Street, Brooklyn, New York 11236 (the "Premises"). *See, Exhibit "1."*[2] As set forth below, the underlying debt referenced in the Letter pertains to the debt allegedly incurred by the Beauvoirs as reflected in the invoice dated December 5, 2012 (the "Invoice") which National Grid sent to the Beauvoirs in January of 2013. *See, Exhibit "2."*

The Defendant in his motion does not deny that the language of the Letter violates the FDCPA, but rather, alleges that the underlying debt is not a consumer debt. However, the alleged underlying debt was incurred primarily for personal, family or household purposes, as required under the FDCPA. *See, ¶¶ 3-4 of the Complaint*. Therefore, it is respectfully submitted that the Defendants motion should be denied in its entirety.

---

[1] Plaintiffs' last name in the caption of this lawsuit is misspelled as "Beauvior," whereas in the underlying matter upon which this action is based, all real estate instruments and correspondence with Mr. Israel spell the last name as "Beauvoir."

[2] All exhibits referenced herein are annexed to the Declaration of Levi Huebner, dated September 3, 2013.

## STATEMENT OF RELEVANT FACTS

The Beauvoirs have resided at the Premises since 1992. The Beauvoirs reside with their two children on the 1st and 2nd floor of the Premises (the "Residence"). The gas supplied to the Beauvoirs by National Grid at their Residence is billed by National Grid under a metered gas account, under the account number 06521-61873 (the "Residence Meter"). The 3rd floor unit of the Premises is occupied by a tenant (the "Tenant's Unit"). The gas supplied to the Tenant's Unit is and always has been billed by National Grid under a separate metered account, under the account number 06521-61863 (the "Tenant's Meter"). See ¶¶ 2, 3, 4, 5, 10, 11, 12 and 13" of the Declaration of Gary Beauvoir.

The Residence and the Tenant's Unit utilized separate meters and accounts when the Beauvoirs moved into the Premises in 1992 and continued to utilize separate meters to date.

In or about January of 2013 National Grid sent a letter dated January 10, 2013 (the "National Grid Letter") to the Beauvoirs stating following:

> On 09/07/11, our representative found that all of the gas being used at 10 PAERDEGAT 7 STREET, was not being registered through an authorized National Grid connection. Our investigation shows that you were not *billed for all services* from 10/25/05 to 09/07/11 when the unauthorized connection was removed. Enclosed is a *bill* for $28,305.64 for this unmetered service. This *bill* covers the period from 10/25/05 to 09/07/11. If the enclosed bill is for a period greater than 24 months, it is in accordance with New York State Public Service Commission Rules, specifically 16 NYCRR 11.14(e) or 13.9 (c)(2), which allows a utility to *back bill* for *unbilled* service rendered more than 24 months before the company became aware of the condition causing the *under-billing* only if the utility can demonstrate that the customer knew or reasonably should have known that the *original billing* was incorrect. Your payment of the enclosed bill is requested immediately.[3] Emphasis added.

Additionally, enclosed with the National Grid Letter was the Invoice. *See, Exhibit "2."*

---

[3] The National Grid Letter cites 16 NYCRR 11.4(e) and 13.9 (c)(2) which apply different standards for back billing of under billed gas usage. The proper standard is discussed at length below.

The National Grid Letter clearly indicates that National Grid is billing the Beauvoirs for alleged unbilled services. Absent from the National Grid Letter is any mention of "theft of services" or "improper use".

Attached to the National Grid Letter was the Invoice which in part sates as follows:

| Service To | Account Number | Next Meter Reading | Bill Dated |
|---|---|---|---|
| HUSBENE & GARY BEAUVOIR<br>10 PAERGEGAT 7 STREET<br>BROOKLYN, NY 11236 | 00090/47098 | | 12/05/11 |

| | | | |
|---|---|---|---|
| Billing Periods | From<br>To | 10/25/05<br>09/07/11 | |
| CURRENT GAS USSAGE | | 21790 | |
| THERMAL FACTOR | | 1.0319 | |
| CURRENT THERM USAGE | | 22487 | $32,360.42 |
| TA & N.Y. STATE SURCHARGES | | 0.00178 | $63.69 |
| Sale TAX@ 4.500% | | | $1,295.24 |
| **Gas Used** | | | **$5,414.24** |
| Payments | | | |
| TOTAL DUE UPON RECEIPT PLEASE PAY | | | **$28,305.64** |

This is an estimated bill calculated according to a degree day formula and/or the equipment utilizing unmetered gas.

National Grid reserves the right to revise this bill pending any further Investigation and / or the discovery of new information.

For information regarding this invoice, please call (718) 403-2687

The Invoice clearly references an estimated bill "for service to" the Beauvoirs for the "Billing Periods" from October 25, 2005 through September 7, 2011 indicating a sum allegedly due in the amount of $32,360.42 and then deducts the payments made by the Beauvoirs during the period due in the sum of $5,414.24 arriving at a final balance due in the sum of $28,305.64.

Subsequently, in or about April of 2013 Mr. Israel sent the Letter to the Beauvoirs. Additionally, enclosed with the Letter was a copy of the Invoice. *See, ¶ 11 of the Complaint and* **Exhibit "3."**

The Letter evidences that Mr. Israel was retained by National Grid to represent it with respect to a debt allegedly owed by Plaintiffs which arose out of their consumption of "unmetered gas" at the Residence and the sum due on the Invoice. In fact the Letter specifically states "I represent [National Grid], the original creditor . . . I have annexed my client's invoice to this letter." *See, Exhibit "3."*

Absent from the Letter is any mention of "theft of services," "improper use" or "meter tampering".

Subsequently, Mr. Israel commenced a lawsuit on behalf of National Grid, in the Supreme Court, Kings County (the "Underlying Matter"), alleging "unmetered gas", "meter tampering" and bringing causes of action for "account stated" breach of "contractual relationship" implied "existence of a contract" liability for "unmetered natural gas" and breached of "bailment agreement".  Plaintiffs duly served an answer regarding National Grid's complaint. The Underlying Matter is still pending.

There is nothing that the Mr. Israel, his counsel, or National Grid can say that will change the nature of the alleged debt and/or the dispute of same. The amount the consumer allegedly owes the original creditor arising from the consumption of improperly billed gas is a "debt" within the meaning of the FDCPA because the obligation to pay the gas company is not a matter of tort liability, Rather, it is imposed by the ongoing gas billing and invoicing, as evidenced by the National Grid Letter, the Invoice, and the Letter. The Beauvoirs, do not dispute that they are

4

responsible for gas which they consumed and were billed for. The issue in dispute is whether the Beauvoirs caused or contributed to the failure of the utility to render a timely or accurate billing.

Pursuant to the New York State Public Service Commission Rules §16 NYCRR 11.14(e):

> No utility may render a bill for previously unbilled service or adjust upward a bill previously rendered to a residential customer after the expiration of 24 months from the time the service to which the new billing or adjustment pertains was provided unless the *culpable conduct* of the customer *caused or contributed* to the failure of the utility to render a timely or accurate billing. Emphasis added.

Here the issue is whether the Beauvoirs *caused or contributed* to the failure of the utility to render a timely or accurate billing. In sum, there is a triable issue of fact of whether National Grid may render a bill for 24 months or more and if so, the factors they may use in determining the estimated use of the Beauvoirs.

## DEFENDANT'S MIREPRESENTATION OF RELEVANT FACTS AND UNSUPPORTED ALLEGATIONS MAY NOT BE CONSIDERED

Matthew J. Bizzaro ("Counsel for Defendant") in his sworn affidavit states that "[a] copy of the summons and complaint in the underlying action from which this lawsuit arises is annexed as Ex. '3'." *See ¶ "5" of the Bizzaro Affidavit.* Notably, Counsel for the Defendant failed to annex the Invoice which was included as an exhibit to the aforementioned complaint. See ¶ "13" of the aforementioned summons and complaint which states that "Plaintiff duly issued an invoice to Defendants (exhibit "1") . . ."

The Invoice clearly evidences that National Grid considers that the underlying debt occurred due to unmetered gas being supplied to the Beauvoirs. Additionally, the Invoice does not allege "theft of services," "improper use" or "meter tampering".

Defendant argues that "National Grid suspected that Plaintiffs were improperly consuming a certain amount of unregistered natural gas at the Premises for which National Grid was not receiving compensation. As a result of the foregoing, an inspector from National Grid visited the Premises and determined that Plaintiffs had indeed tampered with the gas meter (which monitors a consumer's gas usage)." *See page 2 of Defendant's Memorandum of Law ("MOL").*

However, the foregoing bald allegations are unsupported by the record. In fact, even the complaint in the underlying matter does not support these allegations. The record does not indicate that the National Grid suspected that the Beuavoirs had committed any wrong doing prior to the examination of the meter and/or why the Premises were visited. Thus, the foregoing allegations cannot be considered.

Defendant argues "an inspector from National Grid visited the Premises and *determined* that Plaintiffs had indeed tampered with the gas meter (which monitors a consumer's gas usage). More particularly, the inspector prepared a 'Theft of Services Report'" (the "Report") Emphasis added. *See page 2 of Defendant's MOL.* However, this too is not supported by the record. The Report does not indicate that any employee of National Grid determined that there was any wrong doing by the Beauvoirs. Thus, Defendant's unsupported allegations may not be considered.

The Report attached to Defendant's motion as Exhibit "2" does not indicate that an employee or inspector of National Grid *determined* any wrong doing by the Beauvoirs. At most the Report evidences the following:

*Meter was changed and sent to meter operations;*

*Green tamper seal torn;*

6

*Red tamper seal torn;*

*Missing screws on index box missing; and*

*Tamper seals on index box missing.*

However, the Report does not indicate when the foregoing allegedly occurred, how the alleged defects occurred, or who allegedly caused the alleged defects. Moreover, the Report is unsigned, unsworn, and does not identify its author. The alleged defects could have occurred before the Beauvoirs moved into the Premises, when the meter was changed, after the meter was changed, or never even have occurred at all. For the foregoing reasons, the report should not be credited.

Additionally, Counsel for Defendant alleges that the "report further states that in addition to gas used for house heating, three 'ranges' (or stoves) were present at the Premises, where Plaintiffs claim to reside by themselves." *See page 2 of Defendant's MOL.* However, the Report fails to indicate where the ranges are located in the Premises. Moreover, the Report fails to indicate that there were two gas meters for the Premises. Thus, in addition to the allegations in the unsigned, unsworn report, the report fails to indicate which ranges belong to the Tenant's Unit which has a separate gas meter.

Defendant further alleges that the Letter "only sought restitution . . . because Plaintiffs *interfered* with the meter's recording function." Emphasis added. *See page 2 of Defendant's Memorandum of Law ("MOL").* However, the foregoing bald allegation unsupported by the record may not be considered.

In light of the New York State Public Service Commission Rules §16 NYCRR 11.14(e), the question of whether the Beauvoirs caused or contributed to the failure of the utility to render a timely or accurate billing and if so the factors they may use in determining the estimated use of the Beauvoirs is a triable issue of fact which may not be determined by the pleadings.

## **RELEVANT GOVERNING STANDARD**

In deciding Rule 12(b)(6) motions to dismiss for failure to state a claim, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *accord Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir.2009). *First,* although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *accord Harris,* 572 F.3d at 72. *Second,* only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. *Iqbal,* 556 U.S. at 679 (citing *Twombly,* 550 U.S. at 556). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted); *accord Harris,* 572 F.3d at 72.

To prevail on an FDCPA claim, a plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.

As set forth more fully below, Plaintiffs state a plausible claim for relief against Defendant for violations of the FDCPA.

## POINT I

### THE DEBT UPON WHICH THIS LAWSUIT IS BASED
### DOES FALL UNDER THE PURVIEW OF THE FDCPA

The term "debt" as defined under the FDCPA means: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction *are primarily for personal, family, or household purposes,* whether or not such obligation has been reduced to judgment." *See, § 1692a(5)* (emphasis added);

Here, the it is undisputed that the Beauvoirs reside at the Premises and that the gas supplied by National Grid is used for the heating, hot water, cooking, and dryer of the Beauvoirs.

In fact a New York State case with the identical facts the appellate division found the same type of debt to fall within the FDCPA. In Rochester Gas & Elec. Corp. v. Greece Park Realty Corp., 195 A.D.2d 956, 957, 600 N.Y.S.2d 985, 1993 N.Y. App. Div. (N.Y. App. Div. 4th Dep't 1993) the appellate division held as follows:

> If plaintiff's failure to bill for the unmetered service occurred through its own negligence, that would not entirely bar recovery (see, Consolidated Edison Co. v Jet Asphalt Corp., supra; Matter of Capital Props. Co. v Public Serv. Commn., supra), but the period of recovery would be limited to 12 months (16 NYCRR 13.1 [19]; 13.9 [c] [1]). If the failure to bill was not attributable to plaintiff and it is determined that [defendant] did not know and had no reason to know of the unmetered service, plaintiff could then recover for 24 months of unmetered service (see, 16 NYCRR 13.9 [c] [2]). If it is determined that [defendant] knew or reasonably should have known of the underbilling, and there is no negligence attributable to plaintiff, the PSC's regulations, incorporated in plaintiff's tariff, would not limit the period for which plaintiff may recover for the unmetered service (see, Matter of Gansevoort Holding Corp. v Consolidated Edison Co., 167 AD2d 648, 650; Consolidated Edison Co. v Jet Asphalt Corp., supra). Because of those issues of fact, the motions for summary judgment were properly denied. Moreover, the amount that plaintiff may recover for the appropriate period is also an issue for the finder of fact.

The court in *Rochester* found that the nature of the debt is in dispute and in determining whether an obligation is a contractual obligation for FDCPA purposes requires an examination of the courts determination as to whether the transaction was one of erroneous faulty billing or not.

The FDCPA is concerned with the actual substance of the transaction as opposed to any framed allegations. The court in *Rochester* held that "Plaintiff may well have been an innocent recipient of faulty billing and/or defective meter equipment. A 'naked bald assertion' by the defendant that this debt arose out of meter tampering cannot change the actual character of the debt and take it out of the FDCPA's jurisdiction the court must determine the substance and actual contractual nature of the transaction as opposed to the defendants inadmissible contradictory hearsay's allegation as to the debts form."

The court in *Rochester* further held as follows:

> At best there is a genuine issue of material fact as to whether the 'debt' incurred by plaintiff was the subject of an erroneously billed contractual transaction, or a tampered meter. The defendant admits that the state court has not determined that the nature of the debt. This fact issue as to the nature of this debt mandates the motion to dismiss premature as a matter of law and accordingly the defendant's motion to dismiss must be denied.

Here, as in *Rochester*, the amount the Beauvoirs allegedly owe the creditor arising from the consumption of "improperly billed" gas is a debt within the meaning of the FDCPA, because the obligation of the Beauvoirs to pay National Grid is not a matter of tort liability. Rather, it is imposed by the ongoing gas bill invoices (i.e. the Invoice) and by statute.

Pursuant to the New York State Public Service Commission Rules §16 NYCRR 11.14(e) the standard for determining whether the utility may back bill a residential customer for more than 24 months is whether the *culpable conduct* of the customer *caused or contributed* to the failure of the utility to render a timely or accurate billing. Thus, before National Grid can back-

bill 24 months, it must be determined whether the Beauvoirs *caused or contributed* to the failure of the utility to render a timely or accurate billing.

**a.   The Dispute Regarding the Nature of the Debt Cannot Be Resolved by a Motion to Dismiss**

At best there is a genuine issue of material fact as to whether the debt allegedly incurred by the Beauvoirs was the subject of an erroneously billed contractual transaction, or a tampered meter. The Defendant admits that the state court has not determined that the nature of the debt. This fact issue as to the nature of this debt mandates the motion to dismiss premature as a matter of law and accordingly the defendant's motion to dismiss must be denied.   See, *Sheehan v. Mellon Bank, N.A.*, 1995 U.S. Dist. LEXIS 13457 (E.D. Pa. Sept. 7, 1995) (Determining whether an obligation is a debt for FDCPA purposes requires an examination of the nature of the transaction from which the debt arose); *Shafe v. Tek-Collect, Inc.*, 2007 U.S. Dist. LEXIS 90665 (W.D. Mo. Dec. 7, 2007) (Holding that the "FDCPA is concerned with the substance of the transaction as opposed to the form.); *Holman v. West Valley Collection Servs.*, 60 F. Supp. 2d 935 (D. Minn. 1999) (Holding that the nature of the debt is judged by the substance of the transaction that incurs the debt); *Moss v. Cavalry Invs., L.L.C.*, 2004 U.S. Dist. LEXIS 24990, 3-4 (N.D. Tex. Sept. 20, 2004) (Fact issue of the debts nature causes denial of defendants summary judgment.

**b.   The Collection Letter Defines the Nature of the Debt**

In *Brown v. Palisades Collection, L.L.C.*, 2011 U.S. Dist. LEXIS 68322, 2011 WL 2532909 (S.D. Ind. June 24, 2011). The court held that the fact that a letter attached to the plaintiff's complaint was addressed to the plaintiff in a personal capacity, rather than in a corporate or business capacity, was enough to give plausibility to his assertions regarding the nature of the debt at issue.

In *Kimmel v. Cavalry Portfolio Servs.*, L.L.C., 2011 2011 U.S. Dist. LEXIS 83008 (E.D. Pa. July 28, 2011), the court held that where the debt collector admitted it was a "debt collector" and the consumer was a "consumer," it was untenable for the debt collector to argue that that the debt was not a "debt" as those terms are defined in the § 1692a.

As in *Brown* and *Kimmel*, the Letter clearly refers to the collection of a debt for the consumption of gas, is addressed personally to Mr. Beauvoir and Mrs. Beauvoir, and clearly states that "My client has referred the above-described claim to me for the purposes of collection of the debt in the amount set forth above, based on the *consumption* of unmetered gas" and that "the undersigned and staff, are acting on behalf of our client to *collect* a debt." [emphasis added]

### THE CASES CITED BY DEFENDANT ARE INNAPLICABLE TO AND/OR MAY BE DISTINGUISHED FROM THE WITHIN MATTER

Defendant cites the cases discussed below for the proposition that the debt does not fall within the FDCPA because it is not a consumer debt but rather "theft of services."

However, the following cases cited by Defendant are all inapposite, as they all involve situations where the parties had no contractual relationship, a consumer transaction was not involved, or the cause of action arose out of a theft.

*Cook v. Hamrick,* 278 F.Supp.2d 1202 (D. Colo. 2003) ("the prayer for attorney fees . . . would have arisen out of the legal proceedings in the action for unlawful detainer and not out of any consumer transaction . . . . the FDCPA does not apply"); *Mabe v. G.* C. *Services Limited Partnership,* 32 F.3d 86 (4th Cir. 1994) ("child support obligation arose out of an administrative support order . . . do not qualify as 'debts' under the FDCPA because they were not incurred to receive consumer goods or services."); *Hicken v. Arnold, Anderson &Dove, P.L.L.P.,* 137 F.Supp.2d 1141 (D. Minn. 2001) ("Hicken's property settlement obligations under the terms of

the divorce decree did not arise out of a consensual consumer obligation or business dealing and therefore does not implicate a 'transaction' within the meaning of the FDCPA"); *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367 (11th Cir. 1998) ("obligations . . . which arose purely out of an accident, involved no contract of any type . . . Likewise, it involved no consumer transaction. Accordingly, it does not constitute the type of obligation that Congress envisioned protecting through the FDCPA"); *Zimmerman v. HBO Affiliate Group, ACS,* 834 F.2d 1163 (3rd Cir. 1988) (Cable television companies were not seeking to collect a "debt" within meaning of the FDCPA when they demanded monetary compensation in the settlement of asserted legal claims against persons suspected of having illegally received microwave television signals); *Grimard v. Palmer, Reifler and Associates, P.C.,* 2007 WL 2287831 (E.D. Mich. 2007) ("Federal courts have consistently held that a money obligation arising from a tort does not constitute a 'debt' for purposes of the FDCPA"); *Fleming v. Pickard,* 581 F.3d 922 (9th Cir. 2009) ("stealing the merchandise, selling it at a discount, or pocketing the proceeds. . . placing the resulting obligations well outside the scope of the debt obligation contemplated by the FDCPA"); *Bass v. Stolper, Koritzinsky, Brewster & Neider,* S.C., 111 F.3d 1322 (7th Cir. 1997) ("a thief undoubtedly has an obligation to pay for the goods or services he steals, the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services"); *Shorts v. Palmer,* 155 F.R.D. 172 (S.D. Ohio 1994) (the court held that plaintiff was not a "consumer" within the meaning of the FDCPA when the obligation arose out of a theft).

By contrast, the Letter seeks to collect a debt related solely to Plaintiffs consumption of unmetered gas which is a "debt" within the meaning of the FDCPA because the obligation to pay

the gas company is not a matter of tort liability rather it is imposed by the ongoing gas bill invoices as evidenced by the National Grid Letter, the Invoice, and the Letter.

The Beauvoirs had a contractual agreement to receive gas from National Grid. Moreover, even if the Beauvoirs received unmetered gas from National Grid, pursuant to statute, National Grid can and did back-bill the Beuavoirs for their use of unmetered gas.

Defendant argues citing *Directv, Inc. v. Cavanaugh,* 321 F.Supp.2d 825 (E.D. Mich. 2003) and *Coretti v. Lefkowitz,* 965 F.Supp.3 (D. Conn. 1997) for the proposition that it is irrelevant that the Beauvoirs had a contract or agreement for services with National Grid. However, Defendant's proposition is at best mistaken and *Directv* and *Coretti* are inapplicable to the within matter.

In *Coretti* plaintiff subscribed for cable television services supplied by Cablevision. However, plaintiff did not have a contract to receive Cablevision's pay per view and premium programming. Moreover, plaintiff received Cablevision's pay per view and premium programming by using an illegal decoding device. Moreover, in *Coretti* Cablevision did not bill the plaintiff for receiving Cablevision's pay per view and premium programming. Rather, defendants charged plaintiff with purchasing and using an illegal decoding device in violation of federal and state law.

*Directv* was decided pursuant to motions for summary judgment where there were no genuine issues at to any material fact. In *Directv* Plaintiff was a *Directv* subscriber and possessed a Directtv receiver. However, plaintiff also purchased a piracy device.  Moreover, the piracy device was a violation of federal law.  *Id. at 83*1.

Here, unlike *Directv* and *Coretti* the Beauvoirs had a contractual agreement to receive gas from National Grid. Moreover, it is not alleged that the Beauvoirs used an illegal separate device

to obtain gas from National Grid.  Rather, it is alleged that the Beauvoirs received gas from National Grid of which they contracted for but for some reason, the gas usage was not being recorded properly by the meter supplied by National Grid. Moreover, the Beauvoirs are not charged with receiving gas from National Grid in violation of federal and state law. Additionally, any allegation of "meter tampering" is a triable issue of fact which is in dispute.

The Defendant makes the following three unsupported irrelevant arguments which should not be considered:

a. Without statutory or precedential support the Defendant argues that the statutory presumption of guilt in the Theft of Services statute in Penal Law §165.15(6) should be applied in the civil causes of action, as well. However, the Defendant fails to understand the presumption in Penal Law §165.15(6) is statutory presumption and cannot be randomly applied at whim in a civil matter.

b. Defendant argues that while no criminal charges have been filed, National Grid's complaint in the underlying matter pleads the elements required to charge an individual with Grand Larceny and Theft of Services. However, that argument is specious and legally without merit.

c. Defendant further argues that while National Grid's complaint in the underlying matter does not contain a cause of action for conversion the elements of conversion are alleged in the complaint. However, the foregoing argument of Defendant is a red herring, because Counsel for the Defendant admits that conversion is not a cause of action in National Grid's complaint in the underlying matter. Thus, it seems that Mr. Israel drafts his complaints in manner intended to frighten the defendants using scandalous allegations which he never intends to prove and are merely prejudicial in nature.

Furthermore, the above three irrelevant arguments of the Defendant are unsupported by any law and should not be considered by this Court.

Additionally, Defendant argues that courts have awarded utility companies, including National Grid, punitive damages in matters involving the "theft of services." However, the cases cited by Defendant are impracticable to look up and are most probably inapplicable to the within matter. After a search on the West Law, the New York Web Civil and Web Supreme and the Supreme Court Records On Line Library, only one of the Kings County cases cited by Defendant was located. *Brooklyn Union Gas Company d/b/a KeySpan Energy Co. v. John A. Diggs* (Index No. 39371/02) (the Civil Court, Kings County awarded judgment after trial in the amount of $1.00 in compensatory damages and punitive damages in the amount of $4,000 in a case alleging causes of damages for conversion, quasi contract, and punitive damages. The defendants answer merely stated "No I don't (sic) no money to Keyspan) Contrary to the allegations of Counsel for Defendant the case did not contain allegations of "theft of services". Moreover, the foregoing case is not approved by the reporter of decisions for reporting in state reports. Additionally, the foregoing civil court case has no weight or authority in an FDCPA matter.

## POINT II

### EVEN IF THE PLAINTIFFS HAVE A TENANT THE DEBT IS COVERED BY THE FDCPA BECAUSE THE GAS CONSUMED BY THE BEAUVOIRS IS PRIMARILY FOR PERSONAL USAGE

The courts have consistently held that debt primarily for personal, family, and household purposes is covered by the FDCPA.

In *Perovich v. Humphrey*, 1997 WL 674975 (N.D. Ill. Oct. 28, 1997), the consumers became obligated to pay money to Household based on their purchase of a bed which was used

primarily for family and household purposes. The collector argued that this was not a "debt" because it only sought to enforce a security interest against the bed, not to collect money. But this argument only described the characteristic of the defendants' collection activities, not the underlying obligation upon which defendants' acts were based. Further, the consumers alleged that the collector actually sought money because it had no authority to repossess the bed and would only be paid for its services if it collected money. Accepting the truth of the consumers' allegations and making reasonable inferences in their favor, the court found that the complaint described a "debt" sufficient to state a claim under the FDCPA); *Thies v. Law Offices of William A. Wyman*, 969 F. Supp. 604 (S.D. Cal. 1997) (Homeowner association fees for maintenance and improvement of common areas within a housing development were a debt primarily for personal, family, and household purposes covered by the FDCPA); *Yee v. Ventus Capital Servs., Inc.,* 2006 WL 1310463 (N.D. Cal. May 12, 2006) (Collection agency's motion for summary judgment was denied where the consumer in his declaration stated the account was primarily for personal, household, and family matters, e.g., entertainment, gasoline, groceries and other such personal expenses, a question to be determined by the trier of fact); *Allen v. BRT Util. Corp.*, 1996 WL 776583 (D. Conn. Oct. 24, 1996) (A water service debt for a residential condominium owned by plaintiffs, who did not live in the condominium but instead rented it to family members, was a debt incurred primarily for household purposes); *Spiegel v. Judicial Attorney Servs., Inc.*, 2011 WL 382809 (N.D. Ill. Feb. 1, 2011) (Where the  facts of the underlying suits were taken into account, it became clear that the defendants failed to show that the legal fees at issue could not be deemed a "debt" for purposes of the FDCPA. The suits had both a personal and a commercial dimension, and therefore the court was unable to say as a matter of law whether the subject of the transactions at issue was primarily for personal or commercial purposes); *Randolph v. Crown*

*Asset Mgmt., L.L.C.,* 254 F.R.D. 513 (N.D. Ill. 2008) (A $60 business related expense included in a $12,602.69 credit card debt did not establish that the credit card was not primarily used for personal, family, or household purposes); *Altergott v. Modern Collection Techniques*, 1994 WL 319229 (N.D. Ill. June 23, 1994). (Even though consumer used a car for business approximately 5% of the time, her use of the car was primarily for personal or household purposes and accordingly the car loan was a debt for purposes of § 1692a(5) and covered by the FDCPA); *Garner v. Kansas,* 1999 WL 262100 (E.D. La. Apr. 30, 1999). (The relevant time for determining the intended use of purchased property was at the time of purchase. Accordingly, consumer's purchase of a condominium in which he immediately lived was a consumer use, notwithstanding his subsequent rental of it. In addition, consumer's return to live in the condominium and the fact that the underlying assessment arose during his personal occupancy established a consumer use, since the FDCPA requires that the use be "primarily" for a consumer purpose, not "solely"); *Kawa v. U.S. Bank,* 2009 WL 700593 (D. Neb. Mar. 13, 2009). (The complaint sufficiently alleged a possible consumer purpose for the underlying debts to require the court to deny the defendants' motion to dismiss the FDCPA claim, since "at this point in the proceedings, the Court cannot definitively say that the extensions of credit were primarily commercial in nature").

Defendants allege that the Report indicates "three stoves"[4] were discovered during the inspection and that is evidence that Plaintiffs leased all or part of the Premises to tenants, thereby removing this lawsuit from the purview of the FDCPA.

Defendant cites *Barstow Road Owners, Inc. v. Billing,* 179 Misc.2d 958, 687 N.Y.S.2d 845 (Dist. Ct. Nassau Co. 1998)("the obligation of respondent-lessees to pay the maintenance fees to the petitioner . . . were the subject of a transaction primarily for 'business' purposes, as

---

[4] The allegation in the Report is "three ranges."

the respondent-lessees had rented the premises out to subtenants"); *Piper v. Portnoff Law Associates*, 215 F.R.D. 495 (E.D.Pa., 2003) (FDCPA does not apply to debts incurred on rental properties); *Dunn v. Meridian Mortg.,* 2009 WL 1165396 (W.D.Va., 2009) (a loan taken out to fund improvements on investment property is not governed by the FDCPA); *Pollice v. National Pack Funding, L.P.,* 225 F.3d 379 (3rd Cir. 2000) ("water and sewer obligations owed by individuals who owned their property for business purposes does not qualify as 'debt' under the FDCPA); *Atuahene v. Sears Mortg. Corp.,* 2000 WL 134326 (E.D.Pa., 2000) (holding that the business or commercial purposes exemption extends to rental property).

However, the foregoing cases cited by Defendant are easily distinguished as they refer to commercial transactions or transactions that are primarily commercial in nature.

Defendant argues that part of the gas supplied by National Grid for the Beuavoirs may have been used by the tenant. However, this is belied by the fact that the gas supplied to the Tenant's Unit is metered on a separate Tenant's Meter.

Moreover, the gas furnished to the Beauvoirs is *primarily* for personal, family, or household purposes. Thus, *arguendo*, even if a small amount of gas was used to heat the Tenant's Unit, the majority of gas would be used *primarily* by the Beauvoirs.

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that Defendant's motion be denied

in its entirety.

Dated: Brooklyn, New York
        September 3, 2013

                                Respectfully submitted,

                                Levi Huebner & Associates, PC

                                        /  s  /  Levi Huebner
                                By:_____
                                        Levi Huebner (LH1360)
                                        Newyorklawyer@msn.com
                                        478 Malbone Street, Suite 100
                                        Brooklyn, NY  11225
                                        Telephone: (212) 354-5555

                                        *Attorneys for Plaintiffs*

**I**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GARY BEAUVIOR and HUSBENE BEAUVIOR      Index No.  13-CV-01236
on behalf of themselves and all other similarly      (FB) (RML)
situated consumers,

                    Plaintiffs,

        -against-

DAVID M. ISRAEL,
                        Defendant.

------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW**

L'ABBATE, BALKAN, COLAVITA & CONTINI, L.L.P.
Attorneys for Defendant
David M. Israel
1001 Franklin Avenue
Garden City, New York 11530
(516) 294-8844
Our File No. 566-97010

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

POINT I

    THE DEBT REFERENCED IN THE APRIL LETTER DOES
    NOT FALL UNDER THE PURVIEW OF THE FDCPA ............................................. 3

    A.    Plaintiffs' Defenses To The Claims Asserted Against
        Them In The Underlying Lawsuit Should Not Be
        Considered By This Court When Determining the
        Instant Motion ....................................................................................... 3

    B.    The Case Law Cited By Mr. Huebner Are Irrelevant To
        The Case At Bar, And In Some Instances, Favor Mr.
        Israel's Arguments ................................................................................ 4

    C.    Plaintiffs' Attempts To Distinguish The Cases Cited By
        Defendant Are Unavailing .................................................................... 9

POINT II

    EVEN IF THIS COURT DETERMINES THAT THE
    UNDERLYING DEBT DOES NOT CONSTITUTE
    "THEFT OF SERVICES," PLAINTIFFS STILL FAIL TO
    STATE A CLAIM UPON WHICH RELIEF CAN BE
    GRANTED ........................................................................................................ 15

CONCLUSION ............................................................................................................... 16

i

## TABLE OF AUTHORITIES

Cases             Page

*Brown v. Palisades Collection, LLC*,
    2011 WL 2532909 (S.D. Ind. 2011) ...........................................................................8

*Byrd v. City of New York*,
    2005 WL 1349876 (2d Cir. 2005) ...........................................................................1

*Covington v. City of New York*,
    171 F.3d 117 (2d Cir. 1999) ...........................................................................1

*Delgado v. A. Korenegay Senior House HDFC*,
    2008 WL 748848 (S.D.N.Y. 2008) ...........................................................................15

*DIRECTV, Inc. v. Cavanaugh*,
    321 F.Supp.2d 825 (E.D. Mich. 2003) ...........................................................9, 10, 11

*Grimard v. Palmer, Reifler and Associates, P.C.*,
    2007 WL 2287831 (E.D. Mich. 2007) ...........................................................................4

*Guglielmo v. Long Island Lighting Co.*,
    83 A.D.2d 48, 445 N.Y.S.2d 177 (2d Dep't 1981) ...........................................................4

*Holman v. West Valley Collection Services*,
    60 F.Supp.2d 935 (D. Minn. 1999) ...........................................................................7

*Kimmel v. Cavalry Portfolio Servs.*,
    2011 WL 2039049 (E.D. Pa. 2011) ...........................................................................7

*Leeds v. Meltz*,
    85 F.3d 51 (2d Cir. 1996) ...........................................................................15

*Moss v. Cavalry Investments, L.L.C.*,
    2004 WL 2106523 (N.D. Tex. 2004) ...........................................................................7

*Rachlin v. Dean Witter Reynolds, Inc.*,
    1983 WL 1327 (E.D.N.Y. 1983) ...........................................................................15

*Rochester Gas & Elec. Corp. v. Greece Park Realty Corp.*,
    195 A.D.2d 956, 600 N.Y.S.2d 985 (4th Dep't 1993) ...........................................5, 6, 17

*Shafe v. Tek-Collect, Inc.*,
    2007 WL 4365726 (W.D. Miss. 2007) ...........................................................................7

*Sheehan v. Mellon Bank, N.A.*,
  1995 WL 549018 (E.D. Pa. 1995) ..................................................................................7

*Smith v. Conway*,
  2013 WL 4046290 (W.D.N.Y. 2013) ...............................................................................1

*Zimmerman v. HBO Affiliate Group, ACS*,
  834 F.2d 1163 (3rd Cir. 1988) .......................................................................................3

<u>Statutes</u>
Penal Law Section 165.15(6) ............................................................................................13

<u>Rules</u>
Rule 11 of the FRCP ..........................................................................................................17
Rule 12 (b)(6) of the Federal Rules of Civil Procedure ............................................1, 15

## PRELIMINARY STATEMENT

This memorandum of law is submitted in reply to the opposition of plaintiffs, Gary Beauvior and Husbene Beauvior ("Plaintiffs") to the motion of the defendant, David M. Israel ("Defendant" or "Mr. Israel") for an Order pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure ("FRCP"), dismissing Plaintiffs' complaint (the "Complaint").

Every single court that has been called upon to address the issue at hand has issued a decision which follows the rationale set forth in Defendant's motion.  As expected, Plaintiffs' opposition contains nothing more than baseless and false assertions, along with irrelevant documents in an attempt to divert this Court's attention from the fact that they are unable to state a valid claim for relief under the Fair Debt Collection Practices Act ("FDCPA"). In fact, Plaintiffs' opposition sounds more like their defense of the claims asserted against them in the underlying action, which as set forth in Defendant's motion, is inconsequential to the Court's determination of this motion.  Specifically, it is undisputed that Plaintiffs' lawsuit is based upon a letter sent to them by Defendant dated April 23, 2012 regarding their suspected consumption of unmetered gas (the "April Letter").  *See, Declaration of Matthew J. Bizzaro, sworn to July 24, 2013 (Bizzaro Dec."), Ex. "1."*[1]  In their opposition, however, Plaintiffs' refer this Court to an invoice and a letter dated January 10, 2012 (the "January Letter"), which are not even annexed to or referenced in the Complaint.[2]  *See, Declaration of Levi Huebner, Esq. ("Huebner Dec."), Ex. "2."*  Moreover, Mr. Beauvoir submits a declaration (Mrs. Beauvior did not submit a declaration in opposition to Defendant's motion) wherein he disputes the amount of

---

[1] Unless expressly stated otherwise, all exhibits referenced herein are annexed to the *Bizzaro Dec.*
[2] In the event this Court determines that Defendant's Rule 12(b)(6) motion should be converted into a Rule 56 motion for summary judgment (*see, Byrd v. City of New York*, 2005 WL 1349876 (2d Cir. 2005); *Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999); *Smith v. Conway*, 2013 WL 4046290 (W.D.N.Y. 2013)) and denies Mr. Israel's motion, it is respectfully requested that Defendant be granted leave to file another dispositive motion following the conclusion of limited or complete discovery in this matter.

gas usage set forth in the invoice and proclaims in a conclusory manner that he did not interfere with the gas meter.  *See, Declaration of Gary Beauvior*.  The invoice and the January Letter, however, are entirely irrelevant to the instant lawsuit.  In addition, with respect to the case at bar, it matters not whether Plaintiffs actually tampered with the gas meter or whether the amount consumed is inaccurate.  Instead, this Court need only focus on the content of the April Letter.

In the April Letter, Mr. Israel did not seek to collect on behalf of the Brooklyn Union Gas Company d/b/a National Grid New York ("National Grid") compensation for any gas that was properly recorded on the gas meter and billed accordingly on Plaintiffs' metered gas account with National Grid.  *See, Ex. "1."*  Rather, the April Letter only sought restitution for Plaintiffs' consumption of unmetered/unregistered gas, which amount was not originally included in Plaintiffs' metered gas bills because Plaintiffs interfered with the meter's recording device.  That Plaintiffs deny any wrongdoing and are contesting the claims in the underlying lawsuit is irrelevant.  Whether Plaintiffs did or did not actually cause meter tampering and knowingly consume unmetered gas is an issue of fact to be decided in the underlying state court action, and has no hearing on the instant motion.  Instead, here it is the allegation that determines whether or not a claim falls under the purview of the FDCPA, not whether it is ultimately established in a court of law.

## STATEMENT OF FACTS

In the interest of brevity and judicial economy, this Court is respectfully referred to the "Statement of Facts" portion of Defendant's memorandum in support of the motion to dismiss the Complaint dated July 24, 2013, for an accurate version of the relevant facts and procedural history of this matter.

### POINT I

### THE DEBT REFERENCED IN THE APRIL LETTER DOES NOT FALL UNDER THE PURVIEW OF THE FDCPA

The FDCPA only applies to "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *See, Section 1692a(5)*. As set forth above, the April Letter sought only compensation for Plaintiffs' use of unmetered gas.

**A.** ***Plaintiffs' Defenses To The Claims Asserted Against Them In The Underlying Lawsuit Should Not Be Considered By This Court When Determining the Instant Motion***

As anticipated by Defendant, the crux of Plaintiffs' opposition relates to their denial of the claims asserted against them in the underlying lawsuit. Again, whether or not National Grid ultimately prevails in the underlying lawsuit is irrelevant to the instant motion. Rather, it is the context of the April Letter which is important. *See, Zimmerman v. HBO Affiliate Group, ACS*, 834 F.2d 1163 (3rd Cir. 1988) (the courts held that letters "to persons *suspected of* signal piracy" and "persons *suspected of* receiving HBO programming without a subscription"

3

did not constitute violations of the FDCPA) (emphasis added); *Grimard v. Palmer, Reifler and Associates, P.C.*, 2007 WL 2287831 (E.D. Mich. 2007) (the court held that no violation of the FDCPA existed where defendant sought to collect a debt based upon "an *alleged* tort" and a "shoplifting *allegation*") (emphasis added); *Coretti v. Lefkowitz*, 965 F.Supp.3 (D. Conn. 1997) (the court dismissed the FDCPA claims where the communication pertained to plaintiff's "*alleged*" unauthorized reception of Cablevision's Pay Per View and Premium Programming) (emphasis added).

As a result of the foregoing, all of the puffery contained in Plaintiffs' opposition regarding their denial of the claims asserted against them in the underlying matter, including their references to the "theft of services report" and whether National Grid is permitted to render a bill for 24 months or more are irrelevant to the case at bar.  Incidentally, Plaintiffs never even protested the unmetered gas invoice to the Public Service Commission, which has primary subject matter jurisdiction for billing disputes of any kind and nature between National Grid and consumers of its gas, whether metered or unmetered (*see, Guglielmo v. Long Island Lighting Co.*, 83 A.D.2d 48, 445 N.Y.S.2d 177 (2d Dep't 1981), and by their failure to do so, Plaintiffs have waived their right to even contest the invoices.

**B.      The Case Law Cited By Mr.
        Huebner Are Irrelevant To
        The Case At Bar, And In Some
        Instances, Favor Mr. Israel's
        Arguments**

Plaintiffs cite numerous cases in opposition to Defendant's motion.  A perusal of these cases, however, reveals that they are extraneous to the present matter.  Moreover, certain of the cases referenced in Mr. Huebner's memorandum actually support Mr. Israel's arguments.

Initially, Mr. Huebner relies heavily upon *Rochester Gas & Elec. Corp. v. Greece Park Realty Corp.*, 195 A.D.2d 956, 600 N.Y.S.2d 985 (4th Dep't 1993), and states that it contains "identical facts" as the instant action.  A review of *Rochester*, however, reveals that this is absolutely false.  In *Rochester*, plaintiff sought to recover against defendants, Greece Park Realty Corporation ("Realty") and Park Mall Associates (Park) for unmetered electrical service provided to the Greece Park Outlet Mall ("Mall") for the period from January 1, 1985 to February 7, 1990. Realty owned the Mall until October 8, 1985, at which time Park acquired title. The Supreme Court denied the parties' motions for summary judgment and then, invoking the doctrine of primary jurisdiction, stayed the action pending defendants' filing of a complaint with the Public Service Commission (PSC) and the PSC's final determination of the administrative proceeding. Park appealed the Supreme Court's decision.  The Appellate Division found that the Supreme Court erred in referring the matter to the PSC under the doctrine of primary jurisdiction.  Specifically, the Appellate Division held:

> "The issues involved in this action do not require the special competence of the PSC. There is no challenge to the relevant PSC regulations (16 NYCRR part 13). The issues are only whether those regulations apply as a matter of law and, if so, whether and for what period of time plaintiff is entitled to…recover for the unmetered service. Because of the absence of technical administrative questions, resort to the doctrine of primary jurisdiction was unnecessary….

The Appellate Division further held:

> Questions of fact also preclude summary judgment dismissing plaintiff's causes of action for unjust enrichment and the fraudulent obtaining of electrical service. Park's conclusory…allegations that it cannot now be reimbursed by those who were tenants during the unbilled period, thereby making restitution inequitable, are insufficient to warrant entitlement to dismissal of the unjust enrichment cause of action…Plaintiff's cause of action alleging fraudulent obtaining of electrical service is premised on the statutory presumption that Park knowingly accepted unmetered

5

electrical service… Whether Park produces sufficient proof to overcome that presumption must await determination by the trier of fact.

The *Rochester* case had nothing to do with alleged violations under the FDCPA.

In fact, nowhere in *Rochester* does the Appellate Division even mention the FDCPA!

Remarkably, Mr. Huebner proceeds to cite *Rochester* and quote language that is not even contained in the decision!  More particularly, Mr. Huebner states:

> The court in *Rochester* held that "Plaintiff may well have been an innocent recipient of faulty billing and/or defective meter equipment.  A 'naked bald assertion' by the defendant that this debt arose out of meter tampering cannot change the actual character of the debt and take it out of the FDCPA's jurisdiction the court must determine the substance and actual contractual nature of the transaction as opposed to the defendants admissible contradictory hearsay's allegation as to the debt's form."

*See, Plaintiffs' Memorandum of Law ("Plaintiffs' Memorandum,"), pg. 10.*

The foregoing language ***does not appear in the Rochester case***.  *A copy of the Rochester decision is annexed as an appendix.*

Mr. Huebner also cites the following language which he claims comes from the court's decision in *Rochester*:

> At best there is a genuine issue of material fact as to whether the 'debt' incurred by plaintiff was the subject of an erroneously billed contract transaction, or a tampered meter.  The defendant admits that the state court has not determined that the nature of the debt. This fact issue as to the nature of this debt mandates the motion to dismiss premature as a matter of law and accordingly the defendant's motion to dismiss must be denied.

*See, Plaintiffs' Memorandum, pg. 10.*

Again, this citation ***does not appear in the Rochester case***.  *See, annexed appendix.*

6

Mr. Huebner's misrepresentation that the language cited in Plaintiffs' Memorandum is contained in *Rochester*, when it is not, further demonstrates the disingenuous and frivolous nature of Plaintiffs' claims.  It is respectfully submitted that such conduct should not be tolerated by this Court.

Mr. Huebner also cites several cases which support the arguments set forth in Mr. Israel's motion. *See, Plaintiffs' Memorandum, Pg. 11. See, Sheehan v. Mellon Bank, N.A.*, 1995 WL 549018 (E.D. Pa. 1995) ("The debt at issue was not incurred for 'personal, family or household purposes.' Rather, the debt was incurred 'as additional security and collateral for the payment of Four Diamonds' debt,' which itself was incurred 'for the acquisition and development of the Poconos resort.'  As a result, FDCPA does not apply to Defendants' collection practices in this case"); *Shafe v. Tek-Collect, Inc.*, 2007 WL 4365726 (W.D. Miss. 2007) ("Here, the debt was claimed to have been incurred for commercial purposes (i.e. radio advertising).  The nature of the debt did not change merely because Defendant Tek-Collect attempted to collect from Plaintiff"); *Holman v. West Valley Collection Services*, 60 F.Supp.2d 935 (D. Minn. 1999) ("…the Court finds this debt transaction falls well beyond the ambit of the FDCPA.  The parties acknowledge that the debt was incurred for a credit card processing device"); *Kimmel v. Cavalry Portfolio Servs.*, 2011 WL 2039049 (E.D. Pa. 2011) ("In sum, Plaintiff has failed to satisfy his burden of demonstrating that the money Defendant attempted to collect was a "debt" for purposes of the FDCPA").  These cases, cited by Mr. Huebner, further demonstrate that the FDCPA only covers a specific type of debt, which is not referenced in the April Letter.

Mr. Huebner also cites *Moss v. Cavalry Investments, L.L.C.*, 2004 WL 2106523 (N.D. Tex. 2004) in opposition to Defendant's motion.  In *Moss*, defendant, Cavalry

Investments, L.L.C. d/b/a Cavalry Recoveries ("Cavalry") filed a motion for summary judgment, seeking to dismiss the complaint on the grounds that the underlying "debt" was on a business or commercial account, not a personal account.  The Court held that there was a triable issue of fact as to whether the subject of the transaction was primarily for personal, family or household purposes, as opposed to business purposes.  In *Moss* plaintiff stated on her credit application that the credit was for her business and would be used to make business purposes.  At her deposition, however, plaintiff stated that the card was used primarily for personal charges, including her private school tuition for her granddaughter, rental of an RV for a family vacation, and restaurant charges for food and liquor.

The April Letter does not seek to collect from Plaintiffs a debt they incurred on a credit card which was used for personal and business purposes.  Rather, the April Letter seeks compensation for their suspected consumption of unmetered gas brought about by meter tampering.

Mr. Huebner also cites *Brown v. Palisades Collection, LLC*, 2011 WL 2532909 (S.D. Ind. 2011) in opposition to Mr. Israel's motion.  Plaintiffs' reliance upon *Brown*, however, is misplaced.  In *Brown*, defendant sent a letter to plaintiff regarding an account with AT&T which he claims did not maintain.  Defendant argued, in part, that since plaintiff ever denied having owned the account referenced in the collection letter, he cannot plausibly argue that he knows that the debt was incurred for one of the statutorily protected purposes.  The Court, however, held that since the letter was sent to plaintiff in his personal capacity and not a corporate or business capacity, plaintiff stated a plausible claim for relief under the FDCPA.

In the present matter, Plaintiffs maintain at least one account with National Grid under their individual names and not that of a corporation or business.  Further, unlike *Brown*,

8

Plaintiffs do not deny the fact that they maintained an account with National Grid.  Finally, as set forth above, the April Letter only seeks compensation based upon the consumption of unmetered gas, and not the use of gas that was registered with National Grid, and for which Plaintiffs were previously billed.  As a result, *Brown* is factually distinguishable from the instant lawsuit.

Based upon the foregoing, it is respectfully submitted that none of the cases cited by Mr. Huebner support Plaintiffs' unfounded opposition to Defendant's motion to dismiss.

**C.    *Plaintiffs' Attempts To
Distinguish The Cases Cited
By Defendant Are Unavailing***

It is respectfully submitted that Plaintiffs' fruitless attempt to distinguish the well-settled case law cited by Mr. Israel be rejected by this Court.  It is true that Defendant has not cited a case involving alleged FDCPA violations, arising from a letter sent, seeking compensation for the use of unmetered natural gas.  This is because no such case exists.  In fact, the reason that a case involving identical facts as the case at bar is non-existent is because the of the plethora of case law throughout this country, which state that the attempt to collect a debt based upon suspected theft of services does not fall under the purview of the FDCPA. Regardless, Mr. Israel did cite to numerous cases, including *DIRECTV, Inc. v. Cavanaugh*, 321 F.Supp.2d 825 (E.D. Mich. 2003) and *Coretti*, which are particularly relevant to the case at bar.

In *DIRECTV, Inc.*, DIRECTV initiated a program called the End User Development Group ("EUDG") to target the individuals who purchased signal theft devices. EUDG sent approximately 100,000 nearly identical demand letters informing individuals *suspected of signal piracy* that DIRECTV had obtained the sales records of the equipment and was contemplating litigation.  Furthermore, the EUDG letters warned that federal and state statutes imposed fines of up to $10,000 per use of signal theft equipment to gain unauthorized

9

access.   The EUDG letters explained the statutory regime prohibiting signal theft was "[s]o strict...that Congress has made the mere possession of signal theft equipment a violation of federal law in certain circumstances."

The two EUDG letters received by Brian Cavanaugh ("Cavanaugh") indicated DIRECTV was willing to forego litigation if he agreed within two weeks to: (1) surrender any signal theft devices in his possession; (2) execute a written statement that he would not take part in further unauthorized reception of DIRECTV's programming; and (3) pay a non-negotiable amount in settlement.   According to Cavanaugh, EUDG instructed its investigators to demand payment of $3,500 per individual regardless of the facts or circumstances of each case. Cavanaugh also alleges DIRECTV utilized this settlement "strategy" to force individuals to subscribe to lengthy subscription packages as a condition for settlement.

In *DIRECTV*, Inc. the Court stated: "it is undisputed in this case that Cavanaugh purchased the piracy device, *was a DIRECTV subscriber, and possessed a DIRECTV receiver*." *Id. at 830.* (Emphasis Added).

DIRECTV asserted claims for conversion and unauthorized signal reception. Cavanaugh asserted counterclaims for extortion and conspiracy to commit extortion, fraud and misrepresentation, defamation, and alleged violations of Fair Debt Collection Practices Act (FDCPA), Michigan Fair Collection Practices Act, Racketeer Influenced and Corrupt Organizations Act (RICO), and Michigan Consumer Protection Act (MCPA). Both sides moved for summary judgment.

Cavanaugh made the same argument asserted by Mr. Huebner in the case at bar, *i.e.,* that since the service provider had no actual knowledge of the alleged theft, and as a

10

subscriber, any services received but not paid for by Plaintiffs, constitutes "debt" under the

FDCPA. *Id. at 837.* The Court rejected plaintiff's argument and held:

> Cavanaugh offers no persuasive reason why this Court should deviate from the above holdings. Cavanaugh argues that "[i]f DIRECTV has no actual knowledge of signal theft then as a subscriber of DIRECTV's services any programming received but not paid for would be a debt." This argument only serves to confuse the legal meaning of "debt" under EUDG. Cavanaugh would have the Court believe that if there is no evidence of theft, then the demand letters are mere over billing for excessive programming that was received but not paid for…
>
> *Even if there was no evidence of piracy*, Cavanaugh's argument still falters because it fails to distinguish between the dictionary and statutory meanings of the word "debt." By arguing that the receipt of unsubscribed-to signals constitutes some sort of surplus or mistaken credit, Cavanaugh attempts to divorce the notion of "debt" from the text of the statute. The receipt of satellite signals above and beyond what was subscribed to simply does not give rise to the type of consensual transaction envisioned by the FDCPA. Accordingly, the Court finds the demand letters do not seek to collect a "debt" within the meaning of the Act. (Emphasis Added).

*Id.*

In *Coretti*, Plaintiff subscribed for cable television services supplied by

Defendants' client, Cablevision Systems of Southern Connecticut, L.P. ("Cablevision"). By letter

dated April 29, 1996, Defendants charged Plaintiff with purchasing an illegal decoding device

used in obtaining premium cable services, in violation of federal and state law. Defendants

demanded, among other things, $4,000 to settle the matter. Plaintiff did not settle with

Cablevision, and Defendants filed suit on behalf of Cablevision in the United States District

Court for the District of Connecticut, alleging violations of the Federal Communications Act of

1934. Plaintiff sought damages from Defendants under § 1692k of the FDCPA, for mental

anguish, embarrassment, humiliation and damage to his reputation. Plaintiff also sought to

recover his legal fees and expenses incurred in defending Cablevision's lawsuit. He alleged a

violation of the FDCPA in attempting to collect a "debt" owed to Cablevision. Specifically, he asserted that Defendants' conduct in, among other things, sending the letter and commencing the federal lawsuit on Cablevision's behalf violated the FDCPA.  The Court dismissed the complaint and held as follows:

> Plaintiff's alleged unauthorized reception of Cablevision's Pay Per View and Premium Programming constitutes theft not a receipt of services giving rise to a "debt."  While Cablevision did extend to Plaintiff the right to defer payment with respect to its basic cable package, it did not extend any such right with respect to Cablevision's Pay Per View or Premium Programming Services.
>
> Plaintiff is correct that a debt collector cannot escape the provisions of the FDCPA by using alternative means of collecting a debt, such as through a court proceeding. However, there must be a debt. Plaintiff's alleged theft by use of an illegal decoding device does not constitute a "debt" within the meaning of the FDCPA. Accordingly, Defendants' April 29 letter and the lawsuit were not an attempt to collect a "debt."

*Id. at 5.*

> With respect to the foregoing cases, Mr. Huebner argues:
>
> Here, unlike *DIRECTV* and *Coretti* the Beauvoir had a contractual agreement to receive gas from National Grid.  Moreover, it is not alleged that the Beauvoirs used an illegal separate device to obtain gas from National Grid.

*See, Plaintiffs' Memorandum, pp. 14-15.*

Mr. Huebner's feeble attempt to distinguish *DIRECTV* and *Corretti* from this action, wreaks of desperation.  As set forth above, the plaintiffs in *DIRECTV* and *Coretti* were subscribers with the respective companies to receive cable services.  They were suspected, however, of pirating certain signals, and receiving additional services to which they were not entitled, absent additional charges.  Similarly, in the present matter, Plaintiffs also have a contract with National Grid, and are suspected of consuming additional natural gas, without

paying for same, by tampering with National Grid's gas meter. Therefore, it is respectfully submitted that both *DIRECTV* and *Coretti* are particularly instructive in the case at bar.

Mr. Huebner also argues that Mr. Israel's assertion that the statutory presumption of guilty in the Theft of Service statute in *Penal Law Section 165.15(6)* should be applied in civil causes of action, should be rejected. *See, Plaintiffs' Memorandum, pg. 15.* While it is true that there currently is not case law to support this argument, Defendant simply argues for a reasonable interpretation of existing state law. Indeed, for the presumption to be constitutional in the first place, and its constitutionality has already been upheld in New York state courts, there must be a rationale relationship between the known fact and the presumed fact, and as such, a civil court jury should be instructed by a trial judge that if the jury found that tampering occurred, they could infer that Plaintiffs caused the tampering, knew of its existence or both.

Furthermore, Mr. Huebner refers to Mr. Israel's reference in his motion to the fact that the complaint in the underlying matter pleads the elements required to charge an individual with Grand Larceny and Theft of Services "specious and legally without merit." *Id.* Based upon the arguments asserted by Mr. Huebner at the pre-motion conference, Defendant anticipated that in opposition to Mr. Israel's motion, Plaintiffs would allege that the filing of criminal charges against them was a prerequisite to the instant motion. Mr. Huebner's arguments are false. The fact that the complaint pleads the same elements as conversion and grand larceny demonstrates that this is not a consensual consumer transaction.

With regard to Defendant's argument that while the complaint in the underlying matter does not expressly state a cause of action for conversion, it sets forth the required elements of same, Mr. Huebner baselessly argues that "Mr. Israel drafts his complaints in manner intended to frighten the defendants using scandalous allegations which he never intends

13

to prove and merely prejudicial in nature." *Id.* Initially, since the alleged FDCPA violations are not based upon any of the language in the complaint, this argument is irrelevant. Moreover, this is not the proper forum for Mr. Huebner to object to the allegations in National Grid's complaint. Further, simply because National Grid and Mr. Israel may have chosen not to use the word "conversion", does not mean that conversion was not alleged since all of the elements of willful conversion were alleged in the state court complaint.

Finally, in his motion, Mr. Israel cited several cases where courts have awarded utility companies punitive damages in order to illustrate the unfortunate fact that many residents in this area utilize various devices and methods to divert the flow of natural gas and consume certain excessive quantities without paying for same and endangering the lives of their neighbors. In many of these circumstances, the punishment for these individuals has been harsh in that the court has imposed punitive damages. While the underlying matter has not yet been resolved, the Theft of Services Report, clearly demonstrates that someone at Plaintiffs' premises had tampered with the gas meter. If in fact, Plaintiffs did modify or damage their gas meter in order to consume additional gas without paying for same, to permit them to prosecute the instant action would be an aberration of law and unjust.

Based upon the foregoing, since the April Letter does not seek to collect a debt which is covered under the FDCPA, the Complaint should be dismissed in its entirety.

**POINT II**

**EVEN IF THIS COURT DETERMINES THAT THE UNDERLYING DEBT DOES NOT CONSTITUTE "THEFT OF SERVICES," PLAINTIFFS STILL FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

In opposition to Defendant's motion, Plaintiffs, for the first time, admit that a tenant occupies a portion of the subject premises. Specifically, Mr. Beauvior states: "The 3rd floor unit of the premises is occupied by our tenant." *See, Beauvior Dec., paragraph "12."* Clearly, this would explain National Grid's discovery of three ranges at the subject premises, as set forth in the Theft of Services Report. *See, Ex. "2"*. Mr. Beauvior then states in a conclusory manner that the gas supplied to their tenant is billed to a separate metered account. *Id. at paragraph "13."* While Plaintiffs annex as exhibits to their opposition, documents that are not referenced in the Complaint, they fail to produce a shred of evidence to support Mr. Beauvior's assertion. Mr. Beauvior's unsubstantiated statement alone is insufficient to defeat Mr. Israel's well-founded motion. *See, Leeds v. Meltz*, 85 F.3d 51 (2d Cir. 1996) ("bald assertions and conclusions of law will not suffice" to defeat Rule 12(b)(6) motion); *Delgado v. A. Korenegay Senior House HDFC*, 2008 WL 748848 (S.D.N.Y. 2008) ("Delgado cannot, however, respond to the motions to dismiss the amended complaint merely by referring, in a wholly conclusory fashion, back to his pleading"); *Rachlin v. Dean Witter Reynolds, Inc.*, 1983 WL 1327 (E.D.N.Y. 1983).

It is undisputed that if the unmetered gas use referenced in the April Letter pertains solely, or primarily, to use by Plaintiffs' tenant, this action would not fall under the purview of the FDCPA. In the event that this Court concludes that the Complaint should not be dismissed on the grounds that Mr. Israel was seeking compensation for theft of services and not "debt" as defined under the FDCPA, and finds that discovery must be conducted in order to

15

determine whether the natural gas was being used by solely or primarily Plaintiffs' tenant, Defendant respectfully requests leave to file another dispositive motion following the conclusion of limited or complete discovery in this matter.

## <u>CONCLUSION</u>

Every single court that has addressed the issue at hand in the instant motion, has determined that debt such as that referenced in the April Letter is not covered by the FDCPA. In doing so, these cases have made clear that the legislative intent behind the enactment of the FDCPA was to ensure that the statute would only apply to "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment*." See, Section 1692a(5).* Debt incurred from commercial and business transactions, together with debt arising from the illegal or improper consumption of services is not covered by the FDCPA.

Here, Plaintiffs had a contract with National Grid for the supply of natural gas to the subject premises. Plaintiffs commenced this lawsuit based upon the April Letter, which they claim violated the FDCPA. The April Letter, however, sought only compensation for the use of unmetered gas, and not for the consumption of natural gas which was registered by National Grid and for which National Grid provided Plaintiffs with bills. As such, the matter clearly falls outside the purview of the FDCPA.

In opposition to Defendant's motion, Plaintiffs are grasping at straws, in a desperate attempt to save their meritless and frivolous lawsuit. The fact that Plaintiffs cite several cases which support the arguments set forth by Mr. Israel in the instant motion, further demonstrate the unfounded nature of their claims. In fact, Plaintiffs go as far as citing certain

16

language and falsely stating that they are quoting from the *Rochester* case, in a last ditch effort to confuse and mislead this Court.  It is respectfully submitted that these submissions be rejected, and that this Court properly address the disingenuous nature of same.

Based upon the foregoing, it is respectfully submitted that Plaintiffs' complaint be dismissed in its entirety.

Finally, Mr. Israel reserves his right to seek costs, sanctions and reasonable attorney's fees pursuant to Rule 11 of the FRCP against both Plaintiffs and their counsel, following the Court's determination of the instant motion.

Dated: Garden City, New York
October 3, 2013

Yours, etc.,

L'ABBATE, BALKAN, COLAVITA
& CONTINI, L.L.P.

By: _____
Matthew J. Bizzaro, Esq.
Attorneys for Defendant
1001 Franklin Avenue
Garden City, NY 11530
(516) 294-8844
Our File No. 566-97010

17

## **APPENDIX**

Westlaw.

195 A.D.2d 956                                                                Page 1

195 A.D.2d 956
**(Cite as: 195 A.D.2d 956, 600 N.Y.S.2d 985)**

▷

Rochester Gas & Elec. Corp. v Greece Park Realty
Corp.
195 A.D.2d 956, 600 N.Y.S.2d 985
N.Y.A.D.,1993.

195 A.D.2d 956, 600 N.Y.S.2d 985, 1993 WL
264214

Rochester Gas & Electric Corporation, Respondent,
v.
Greece Park Realty Corporation, Defendant, and
Park Mall Associates, Appellant.
Supreme Court, Appellate Division, Fourth Department, New York

(July 16, 1993)

CITE TITLE AS: Rochester Gas & Elec. Corp. v
Greece Park Realty Corp.

Order unanimously modified on the law and as
modified affirmed without costs in accordance with
the following Memorandum: Plaintiff seeks to recover against defendants Greece Park Realty Corporation (Realty) and Park Mall Associates (Park)
for unmetered electrical service provided to the
Greece Park Outlet Mall (Mall) for the period from
January 1, 1985 to February 7, 1990. Realty owned
the Mall until October 8, 1985, at which time Park
acquired title. Supreme Court denied the parties'
motions for summary judgment and then, invoking
the doctrine of primary jurisdiction, stayed the action pending defendants' filing of a complaint with
the Public Service Commission (PSC) and the
PSC's final determination of the administrative proceeding. Park alone has appealed.

Supreme Court erred in referring the matter to the
PSC under the doctrine of primary jurisdiction.
"The doctrine of primary jurisdiction 'applies where
a claim is originally cognizable in the courts, and
comes into play whenever enforcement of the claim
requires the resolution of issues which, under a regulatory scheme, have been placed within the special

competence of an administrative body ...' *(United
States v Western Pac. R. R. Co.,* 352 US 59, 64 ...) "
*(Staatsburg Water Co. v Staatsburg Fire Dist.,* 72
NY2d 147, 156). The issues involved in this action
do not require the special competence of the PSC.
There is no challenge to the relevant PSC regulations (16 NYCRR part 13). The issues are only
whether those regulations apply as a matter of law
and, if so, whether and for what period of time
plaintiff is entitled to *957 recover for the unmetered service. Because of the absence of technical administrative questions, resort to the doctrine of
primary jurisdiction was unnecessary *(see, People v
Port Distrib. Corp.,* 114 AD2d 259, 266-267;*see
also, Missionary Sisters of Sacred Heart v Meer,*
131 AD2d 393, 395;*State of New York v Winter,*
121 AD2d 287, 289;*see generally, Hewitt v New
York, New Haven & Hartford R. R. Co.,* 284 NY
117, 125;*Leitner v New York Tel. Co.,* 277 NY 180,
189).

There is no merit to Park's contention that plaintiff
may not recover because it failed to adhere strictly
to the PSC's backbilling regulations. Pursuant to
Public Service Law § 65 (2), plaintiff is obligated
to charge and to collect full compensation for electrical service. Plaintiff would be in violation of that
statutory duty if it failed to pursue recovery for utility services furnished, irrespective of whether it did
so through administrative or judicial proceedings
*(see, Consolidated Edison Co. v Jet Asphalt Corp.,*
132 AD2d 296, 301-302;*see also, Matter of Timm v
New York State Pub. Serv. Commn.,* 144 AD2d 139,
140-141,*appeal dismissed*74 NY2d 713;*Matter of
Capital Props. Co. v Public Serv. Commn.,* 91
AD2d 726).

The PSC's regulations, however, may limit the extent of plaintiff's recovery. If plaintiff's failure to
bill for the unmetered service occurred through its
own negligence, that would not entirely bar recovery *(see, Consolidated Edison Co. v Jet Asphalt
Corp., supra; Matter of Capital Props. Co. v Public
Serv. Commn., supra),* but the period of recovery

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

195 A.D.2d 956

Page 2

195 A.D.2d 956
**(Cite as: 195 A.D.2d 956, 600 N.Y.S.2d 985)**

would be limited to 12 months (16 NYCRR 13.1 [19]; 13.9 [c] [1]). If the failure to bill was not attributable to plaintiff and it is determined that Park did not know and had no reason to know of the unmetered service, plaintiff could then recover for 24 months of unmetered service *(see,* 16 NYCRR 13.9 [c] [2]). If it is determined that Park knew or reasonably should have known of the underbilling, and there is no negligence attributable to plaintiff, the PSC's regulations, incorporated in plaintiff's tariff, would not limit the period for which plaintiff may recover for the unmetered service *(see, Matter of Gansevoort Holding Corp. v Consolidated Edison Co.,* 167 AD2d 648, 650; *Consolidated Edison Co. v Jet Asphalt Corp., supra).* Because of those issues of fact, the motions for summary judgment were properly denied. Moreover, the amount that plaintiff may recover for the appropriate period is also an issue for the finder of fact.

Questions of fact also preclude summary judgment dismissing plaintiff's causes of action for unjust enrichment and the fraudulent obtaining of electrical service. Park's conclusory *958 allegations that it cannot now be reimbursed by those who were tenants during the unbilled period, thereby making restitution inequitable, are insufficient to warrant entitlement to dismissal of the unjust enrichment cause of action *(see, Consolidated Edison Co. v Jet Asphalt Corp., supra; see also, Zuckerman v City of New York,* 49 NY2d 557). Plaintiff's cause of action alleging fraudulent obtaining of electrical service is premised on the statutory presumption that Park knowingly accepted unmetered electrical service *(see,* Penal Law § 165.15 [6]; *S & D Thrift Stores v Con Edison,* 80 AD2d 581, *mod on other grounds* 55 NY2d 1013; *Eff-Ess, Inc. v New York Edison Co.,* 237 App Div 315). Whether Park produces sufficient proof to overcome that presumption must await determination by the trier of fact.

The order appealed from is modified by striking the second ordering paragraph thereof. (Appeal from Order of Supreme Court, Monroe County, Wisner, J.-- Summary Judgment.)

Present--Denman, P. J., Balio, Lawton, Doerr and Boehm, JJ.

Copr. (c) 2013, Secretary of State, State of New York N.Y.A.D., 1993.
Rochester Gas & Elec. Corp. v Greece Park Realty Corp.
195 A.D.2d 956, 600 N.Y.S.2d 985 6021993 WL 264214999, 600 N.Y.S.2d 985 6021993 WL 264214999

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**J**

# LEVI HUEBNER & ASSOCIATES, PC
## ATTORNEYS AND COUNSELORS AT LAW

478 MALBONE STREET, SUITE 100
BROOKLYN, NY 11225
TEL: (212) 354-5555
FAX: (347) 350-8789

EMAIL: NEWYORKLAWYER@MSN.COM

October 4, 2013

**Via ECF**

Hon. Frederic Block
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> **Re:**  *Gary Beauvior, et al. v. David M. Israel*
> **CV-13-01236 (FB-RML)**

Dear Judge Block:

I represent Plaintiffs in this matter. Pursuant to Your Honor's rules I am requesting that oral argument be scheduled.

Additionally, I object to the Defendant's 20[1] page Reply Memorandum of Law ("Reply MOL") submitted in violation of Rule 2 C. of this Court wherein "unless prior permission has been granted reply memoranda are limited to 10 pages."

I request that Defendant's improper Reply MOL be rejected or alternatively that Plaintiffs be allowed to submit opposition to Defendant's Reply MOL[2].

Respectfully submitted,

Levi Huebner & Associates, PC

/ s / Levi Huebner

_____
Levi Huebner

Cc:     Via ECF To:

Matthew J. Bizzaro, Esq.
L'Abbate, Balkan, Colavita & Contini, L.L.P.

*Attorneys for Defendant*

---

[1] Defendant's Reply Memorandum of Law is 20 pages excluding the cover page, table of contents, and table of authorities.

[2] It is inappropriate for Defendant to sandbag Plaintiffs with arguments which Defendant could have made in its 15 page memorandum of law. In light of the lengthy Reply MOL, Defendant's prior request for an extension under the pretext of belated receipt of Plaintiffs opposition seems at best suspect.

**K**

# LEVI HUEBNER & ASSOCIATES, PC
## ATTORNEYS AND COUNSELORS AT LAW

_____

478 MALBONE STREET, SUITE 100
BROOKLYN, NY 11225
TEL: (212) 354-5555
FAX: (347) 350-8789

EMAIL: NEWYORKLAWYER@MSN.COM

October 4, 2013

**Via ECF**

Hon. Frederic Block
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> **Re:** *Gary Beauvior, et al. v. David M. Israel*
> **CV-13-01236 (FB-RML)**

Dear Judge Block:

     I represent Plaintiffs in this matter. After filing the letter objecting to Defendants 20 page Reply Memorandum of Law (Reply MOL) counsel for Defendant contacted my office and the parties agreed to the following:

     Plaintiffs withdraw their objection to Defendant's MOL and Defendant's consent to Plaintiffs submitting opposition of not more than 10 pages to the Reply MOL on or before August 18, 2013.

     Thus, it is respectfully requested that the within matter be adjourned to August 18, 2013 and that Plaintiffs be allowed to submit their opposition to the Reply MOL on or before August 18, 2013.

Respectfully submitted,

Levi Huebner & Associates, PC

/ s / Levi Huebner

_____

Levi Huebner

Cc:   Via ECF To:

    Matthew J. Bizzaro, Esq.
    L'Abbate, Balkan, Colavita & Contini, L.L.P.

*Attorneys for Defendant*

**L**



**LB&C** Attorneys at Law
L'Abbate, Balkan, Colavita & Contini, L.L.P.
1001 Franklin Avenue, Garden City, New York 11530
T. 516.294.8844  F. 516.294.8202
www.lbcclaw.com

**Matthew J. Bizzaro**
**Associate**
**mbizzaro@lbcclaw.com**

**Writer's Direct Dial**
**(516) 837-7441**

October 4, 2013

*VIA ECF*
Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Beauvior, Gary et ano. v. Israel, David M.*
Case No.       :     CV-13-01236
Our File No.   :     566-97010

Dear Honorable Sir:

Our office represents the defendant, David M. Israel ("Defendant") in the above-referenced Fair Debt Collection Practices Act ("FDCPA") matter.

We write this letter in response to the correspondence of plaintiffs' counsel dated October 4, 2013.

First and foremost, we sincerely apologize for inadvertently exceeding the page limit for a reply memorandum of law set forth in Your Honor's Rules.[1]

Upon my receipt of the above-referenced letter, I contacted Plaintiffs' counsel, who agreed to withdraw his objection to the submission of Defendant's reply memorandum of law on the condition that he be permitted to serve a sur reply within two weeks from today (October 18, 2013).  I agreed to plaintiffs' counsel's proposed condition.

In the event that Your Honor does not agree to the foregoing, Defendant respectfully requests that he be given one week (until October 11, 2013) to serve a reply memorandum, ten pages in length.  In the alternative, it is respectfully submitted that this Court accept the reply memorandum of law, as is.

Furthermore, Defendant has no objection to plaintiffs' request for oral argument.

---

[1] The reply memorandum of law, not including the Table of Contents and Table of Authorities, totals almost 17 pages.

7 Regent Street, Suite 711, Livingston, NJ 07039
T. 973.422.0422  F. 973.422.0420

-2-

Finally, I have spoken with plaintiffs' counsel and we have discussed the fact that the date of August 18, 2013, set forth in his most recent letter to this Court was a typographical error.  Plaintiffs' counsel and I agree that such letter was meant to state October 18, 2013.

Thank you for your kind consideration of this request, and again, we apologize for any inconvenience.

If Your Honor has any questions, please feel free to contact me.

Respectfully submitted,

L'ABBATE, BALKAN, COLAVITA
& CONTINI, L.L.P.

Matthew J. Bizzaro

MJB:
cc:  Levi Huebner, Esq. (via ECF)



**M**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GARY BEAUVIOR and HUSBENE BEAUVIOR          Index No. 13-CV-01236
on behalf of themselves and all other similarly          (FB)(RML)
situated consumers,

                              Plaintiffs,

            -against-

DAVID M. ISRAEL,
                              Defendant.
-------------------------------------------------------------X

**SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

**Levi Huebner & Associates, PC**
478 Malbone Street, Suite 100
Brooklyn, NY  11225
Phone:      (212) 354-5555

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .....................................................................................1

STATEMENT OF RELEVANT FACTS ......................................................................1

DEFENDANT'S CONTINUED MISREPRESENTATION OF RELEVANT FACTS AND UNSUPORTED ALLEGATIONS MAY NOT BE CONSIDERED……………….....................2

POINT I

THE DEBT UPON WHICH THIS LAWSUIT IS BASED DOES FALL UNDER THE PURVIEW OF THE FDCPA .....................................................................................3

    a.  The Dispute Regarding the Nature of the Debt Cannot Be Resolved by a Motion to Dismiss……………………………………………………………………………….3

    b.  The Nature of the Debt is Not Defined by the Cases cited by Defendant..........................6

POINT II

THE COURT MAY CONSIDER MATTERS OF PUBLIC RECORD IN RULING ON A RULE 12(B)(6) MOTION, INCLUDING COURT RECORDS, OR MATTERS OF WHICH JUDICIAL NOTICE MAY BE TAKEN.......................................................................................7

CONCLUSION ........................................................................................................9

## PRELIMINARY STATEMENT

This sur-reply[1] memorandum of law is submitted in response to the Defendant's reply memorandum of law dated October 3, 2013 (the "RMOL") and in further opposition to the motion of defendant, David M. Israel ("Defendant" or "Mr. Israel"), seeking an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), dismissing the complaint of plaintiffs, Gary Beauvior ("Mr. Beauvoir") and Husbene Beauvior ("Mrs. Beauvoir") and/or collectively ("Plaintiffs" or the "Beauvoirs").[2]

The underlying debt was incurred primarily for personal, family or household purposes, as required under the FDCPA. *See, ¶¶ 3-4 of the Complaint*. Therefore, it is respectfully submitted that the Defendants motion should be denied in its entirety.

## STATEMENT OF RELEVANT FACTS

The within sur-reply memorandum of law respectfully refers this Court to the "Statement of Relevant Facts" in Plaintiffs' memorandum of law dated September 3, 2013 (the "MOL")[3].

---

[1] By order dated October 7, 2013 this Court allowed Plaintiffs to submit a sur-reply.

[2] Plaintiffs' last name in the caption of this lawsuit is misspelled as "Beauvior," whereas in the underlying matter upon which this action is based, all real estate instruments and correspondence with Mr. Israel spell the last name as "Beauvoir."

[3] Plaintiffs respectfully refer this Court to the documents annexed to Plaintiffs declaration dated September 3, 2013: the "Complaint" attached as Exhibit 1, the "Invoice" attached as Exhibit 2 and the "Letter" attached as Exhibit 3. Additionally, Plaintiffs respectfully refer this Court to the documents annexed to the Defendant's motion dated July 24, 2013: the "Report" attached as exhibit 2, the "Verified Complaint" in the "Underlying Matter" attached as exhibit 3 and the "Verified Answer" in the Underlying Matter attached as exhibit 4.

### DEFENDANT'S CONTINUED MISREPRESENTATION OF RELEVANT FACTS AND UNSUPPORTED ALLEGATIONS MAY NOT BE CONSIDERED

Defendant in his RMOL alleges that the Letter "sought restitution . . . because Plaintiffs interfered with the meter's recording device" see page 2 ¶ 2 and page 8 ¶ 2 of the RMOL. However, the Letter and the annexed Invoice does not accuse the Beauvoirs of any wrongdoing or of tampering with the meter.

The foregoing bald allegations cannot be considered because they are unsupported by the facts. Moreover, they are contradicted by the Defendant who asserts that "the April Letter sought only compensation for Plaintiffs use of unmetered gas" see page 3 ¶ 2 of the RMOL and the wherein the Defendant asserted that "the April Letter only seeks compensation based upon unmetered gas" see page 9 ¶ 1 of the RMOL.

In sum, the foregoing unsupported, contradicted and disputed allegations of Defendant may not be considered at all let alone in a motion to dismiss.

Defendant alleges "Plaintiffs never even protested the unmetered gas invoice to the Public Service Commission, which has primary subject matter jurisdiction for billing disputes of any kind and nature between National Grid and the consumers of its gas, whether metered or unmetered". However, this allegation was made in ¶ 14 of the Verified Complaint and denied by the Beauvoirs in their Verified Answer see ¶ 1 of the Verified Answer wherein the Beauvoirs specifically deny the foregoing allegation.

Thus, the foregoing unsupported and disputed allegations may not be considered at all let alone in a motion to dismiss.

**POINT I**

**THE DEBT UPON WHICH THIS LAWSUIT IS BASED**
**DOES FALL UNDER THE PURVIEW OF THE FDCPA**

Here, it is undisputed that the Beauvoirs reside at the Premises and that the gas supplied by National Grid is used primarily for the heating, hot water, cooking, and a dryer of the Beauvoirs.

Thus, pursuant to *§ 1692a(5)* the Beauvoirs debt for unmetered gas which was *primarily for personal, family, or household purposes* is a debt under the FDCPA. (emphasis added).

**a. The Dispute Regarding the Nature of the Debt Cannot Be Resolved by a Motion to Dismiss**

The undersigned sincerely apologizes to this Court and to counsel for Defendant for the editing error in Plaintiffs' MOL which resulted in misquoting of *Rochester Gas & Elec. Corp. v. Greece Park Realty Corp.*, 195 A.D.2d 956, 957, 600 N.Y.S.2d 985, 1993 N.Y. App. Div. (N.Y. App. Div. 4th Dep't 1993).

However, regardless of the editing error, Defendant suffered no prejudice due to same because the proposition asserted by Plaintiffs for which *Rochester* stands remains unchanged.

*Rochester* stands for the proposition that when the nature of the debt is in dispute between a public utility and its customer in determining whether the obligation is a debt for FDCPA purposes requires an examination of whether the transaction was one of erroneous faulty billing or not and thus, the nature of the debt cannot be resolved by a motion to dismiss.

The court in *Rochester* held that billing for unmetered service by a public utility is controlled by statue pursuant to the New York Public Service Law § 65 (PSL § 65)  and the New York State Public Service Commission Rules ("NYCRR"). In Rochester the appellate division

3

held that "pursuant to PSL § 65 plaintiff is obligated to collect full compensation for electric service" and that "the [public service commission] may limit the extent of plaintiff's recovery" *Rochester* at 957.

Moreover, the court in *Rochester* held that "because of those issues of fact, the motions for summary judgment were properly denied. Moreover, the amount that plaintiff may recover for the appropriate period is also an issue for the finder of fact" *Id* at 957.

The court in *Rochester* held that when the nature of the debt is in dispute in determining whether an obligation is a contractual obligation (i.e. as in this case for  FDCPA purposes) requires an examination of whether the transaction was one of erroneous faulty billing or not.

The FDCPA is concerned with the actual substance of the transaction as opposed to any framed allegations. The court in *Rochester* held that "questions of fact preclude summary judgment dismissing plaintiff's cause of action for unjust enrichment and the fraudulent obtaining of electrical service" *Rochester* at 957.

Here, at best there is a genuine issue of material fact as to whether the debt incurred by the Beauvoirs was the subject of an erroneously billed contractual transaction, or a tampered meter. The Defendant admits that the state court has not determined the nature of the debt. This fact issue as to the nature of this debt mandates the motion to dismiss premature as a matter of law and accordingly the Defendant's motion to dismiss must be denied.

Here, as in *Rochester*, the amount the Beauvoirs allegedly owe the creditor arising from the consumption of "improperly billed" gas is an issue for the trier of fact because the obligation of the Beauvoirs to pay National Grid is not a matter of tort liability, rather, it is imposed by the ongoing gas bill invoices (i.e. the Invoice) and by statute. Thus, at this juncture the debt is clearly within the meaning of the FDCPA.

PSL § 65 and NYCRR are applicable to gas and electric corporations and service to gas or electric customers thus, though the dispute in Rochester was regarding an electric utility and its customer, Rochester is equally applicable to the within matter where the debt is between a gas utility and its customer.

The New York State Public Service Commission Rules NYCRR 11.14(e) is as follows:

> No utility may render a bill for previously unbilled service or adjust upward a bill previously rendered to a residential customer after the expiration of 24 months from the time the service to which the new billing or adjustment pertains was provided unless the *culpable conduct* of the customer *caused or contributed* to the failure of the utility to render a timely or accurate billing (emphasis added)

Pursuant to NYCRR 11.14(e) the standard for determining whether the utility may back bill a residential customer for more than 24 months is whether the *culpable conduct* of the customer *caused or contributed* to the failure of the utility to render a timely or accurate billing. Thus, before National Grid may back-bill more then 24 months, it must be determined whether the Beauvoirs *caused or contributed* to the failure of the utility to render a timely or accurate billing.

Moreover, NYCRR 11.14(a), (b) and (d) is as follows:

> No utility shall charge a residential customer for service rendered more than six months prior to the mailing of the first bill for service to the residential customer unless the failure of the utility to bill at an earlier time was not due to the *neglect of the utility* or was due to the *culpable conduct* of the customer . . .
>
> (b) A utility may not adjust upward a bill previously rendered to a residential customer after 12 months from the time the service to which the adjustment pertains was provided unless:
>
> (1) failure to bill correctly was caused by the *customer's culpable conduct*;
>
> (2) failure to bill correctly was not due to the *neglect of the utility*; (emphasis added)

5

> (d) A utility adjusting any charge for service rendered 12 or more
> months prior to the date of issuance shall include with the bill a
> notice giving the reason for the adjustment.

Pursuant to NYCRR 11.14 the standard for determining whether the utility may back bill a residential customer for more than 24 months is if the failure was not due to the *neglect of the utility* or was due to the *culpable conduct* of the customer. Thus, before National Grid can back-bill over 24 months, it must be determined whether the failure of the utility to render a timely bill at an earlier time was due to *neglect of the utility*.

Interestingly, here National Grid had to read the Beauvoirs meter every month in order to render a gas bill to the Beauvoirs. This raises the question why National grid did not discover or rectify and alleged problem with the Beauvoirs meter and or billing for the six years in question.

Moreover, pursuant to NYCRR 11.14 even if the Beauvoirs committed no *culpable conduct* National Grid could back bill 24 months.

### b.   The Nature of the Debt is Not Defined by the Cases Cited by Defendant

At best there is a genuine issue of material fact as to whether the debt allegedly incurred by the Beauvoirs was the subject of an erroneously billed contractual transaction, or a tampered meter. Moreover, it is possible that the back billing for the "consumption of unmetered gas" (see the Letter) was due to the *neglect of the utility*. Additionally, even if the Beauvoirs were not culpable for any wrongdoing National Grid would still be allowed to back bill 24 months.

Additionally, Defendant's reliance on *Directv, Inc. v. Cavanaugh,* 321 F.Supp.2d 825 (E.D. Mich. 2003) and *Coretti v. Lefkowitz,* 965 F.Supp.3 (D. Conn. 1997) is inapplicable to the within matter and they do not define the nature of Plaintiffs' debt.

6

*Directv* and *Coretti* involved disputes between cable companies and their subscribers. The subscribers were being pursued for using piracy devices and illegal decoding devices. The subscribers were accused of illegally obtain services for which they had no contract and of which they obtained *exclusively* through theft. The cable companies were *exclusively* pursing actions for theft where no contractual relationship existed between the cable companies and the subscribers for the illegally obtained cable reception. In *Directv* and *Coretti* it is without question that the cable companies were not attempting to collect debts based on contractual obligations. Thus, even if the subscribers were wrongly accused and did not have piracy devices and or illegal decoding devices then at best they could not be pursued for theft and they would not be liable to the cable companies for damages.

However, here it is without question that National Grid is attempting to collect a debt from the Beauvoirs which could be based on a contractual obligation and that National Grid is entitled to back bill 24 months pursuant to NYCRR 11.14 even if the Beauvoirs have no *culpable conduct*.

## POINT II

### THE COURT MAY CONSIDER MATTERS OF PUBLIC RECORD IN RULING ON A RULE 12(B)(6) MOTION, INCLUDING COURT RECORDS, OR MATTERS OF WHICH JUDICIAL NOTICE MAY BE TAKEN

The Defendant's complain that "Mrs. Beauvoir did not submit a declaration in opposition to Defendant's motion" and that "Mr. Beauvoir submits a declaration wherein he disputes the amount of the gas usage set forth in the invoice and proclaims in a conclusory manner that he did not interfere with the gas meter" see page 1 and 2 of the RMOL.

Attached as exhibit 3 and 4 to the Defendant's motion are the Verified Complaint and the Verified Answer in the Underlying Matter of which this Court may consider and may take

judicial notice. In ¶¶ 8, 12, and 23 of the Verified Complaint Defendant alleges that the Beauvoirs tampered with the meter. However, in ¶ 1 of the Verified Answer the Beauvoirs deny tampering with the meter and denied the accuracy of the back billing by National Grid.

Thus, even if the Beauvoirs failed to submit a Declaration their denial of National Grid's allegations of meter tampering and their denial of the veracity of the National Grid's back billing is a matter of public record of which this court may take judicial notice. Furthermore, National Grid is a public utility and thus the fact that National Grid maintains two separate accounts for which it bills at the Beauvoirs residence is a matter of public record of which this Court may take judicial notice.

Moreover, the Defendant complains that the Invoice was not attached to the Complaint and that it is "irrelevant to the instant lawsuit". However, the Invoice is also a matter of public record as same is attached to the Verified Complaint in the Underlying Matter and thus, this Court may take judicial notice of the Invoice. Furthermore, Defendant's claims of irrelevancy are belied by the Invoice. Without repeating the arguments in Plaintiff's MOL in part the Invoice contains the following language: "billing period from 10/25/05 to 09/07/11" and that "This is an estimated bill calculated according to a degree day formula and/or equipment utilizing unmetered gas".

Thus, National Grid in its own language in the Invoice in the Underlying Matter admits that the Invoice is "an estimated bill" further evidencing that amount of the debt of the Beauvoirs is in dispute and thus, a triable issue of fact.

Interestingly, the only document which this Court may not consider is the Report submitted by Defendant.

This Court may consider matters of public record in ruling on a Rule 12(B)(6) motion, including court records, or matters of which judicial notice may be taken. *See Day v. Moscow*, 955 F.2d 807, 22 Fed. R. Serv. 3d 425 (2d Cir. 1992); *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263 (S.D. N.Y. 2005) (McMahon, J.); *G-I Holdings, Inc. v. Baron & Budd, R.I.C.O. Bus. Disp. Guide* (CCH) P 10458, 2003 WL 193502 (S.D. N.Y. 2003) (Sweet, J.); *Debora v. WPP Group PLC*, 1994 WL 177291 (S.D. N.Y. 1994) (Duffy, J.) [referring to affidavit filed with court in prior motion for class action certification]. *See also Samuels v. Air Transport Local* 504, 992 F.2d 12, 143 L.R.R.M. (BNA) 2177, 125 Lab. Cas. (CCH) P 10650, 25 Fed. R. Serv. 3d 958 (2d Cir. 1993); *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150, 19 U.C.C. Rep. Serv. 2d 1148 (2d Cir. 1993); *Tonken v. Loving & Weintraub Inc.*, 22 F. Supp. 2d 86, 89 (S.D. N.Y. 1998) (Scheindlin, J.). *See Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425, Fed. Sec. L. Rep. (CCH) P 95014 (2d Cir. 2008); *Cerasani v. Sony Corp.*, 991 F. Supp. 343 (S.D. N.Y. 1998) (Chin, J.)(judicial notice taken of plaintiff's criminal record).

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that Defendant's motion be denied in its entirety.

Dated: Brooklyn, New York
   October 18, 2013

       Respectfully submitted,

       Levi Huebner & Associates, PC

        / s / Levi Huebner

     By:_____
        Levi Huebner (LH1360)
        Newyorklawyer@msn.com
        478 Malbone Street, Suite 100
        Brooklyn, NY  11225
        Telephone: (212) 354-5555

        *Attorneys for Plaintiffs*

**N**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
GARY BEAUVIOR and HUSBENE
BEAUVIOR, on behalf of themselves
and all other similarly situated
customers,

                      Plaintiffs,               **MEMORANDUM AND ORDER**
                                           No. 13-CV-01236 (FB) (RML)

       -against-

DAVID M. ISRAEL,

                      Defendant.
-----------------------------------------------x

*Appearances*
*For the Plaintiffs:*                    *For the Defendant:*
LEVI HUEBNER, ESQ.             MATTHEW J. BIZZARO, ESQ.
Levi Huebner & Associates, PC     L'Abbate, Balkan, Colavita & Contini, LLC
478 Malbone Street, Suite 100      1001 Franklin Avenue, 3rd Floor
Brooklyn, New York 11225         Garden City, New York 11530

**BLOCK, Senior District Judge:**

       Gary and Husbene Beauvoir allege that David Israel violated the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p.[1]  Pursuant to

Federal Rule of Civil Procedure 12(b)(6), Israel moves to dismiss on the ground

that he was not attempting to collect a "debt" within the meaning of the statute.

For the following reasons, the motion is granted.

---

     [1]Although the plaintiffs' last name is spelled "Beauvior" in the complaint, all
agree that the correct spelling is "Beauvoir."

# I

The allegations of the complaint are brief.  The Beauvoirs allege that they received a letter dated April 23, 2012, from Israel.  In the letter, which is attached as an exhibit to the complaint, Israel identified himself as an attorney representing National Grid New York, the Beauvoirs' natural gas company.  He stated that his client had referred the matter to him "for purposes of collection of the debt in the amount set forth above, based upon the consumption of unmetered gas at [the Beauvoirs' residence.]" Compl., Ex. 1.[2]  Although the April 23rd letter advised the Beauvoirs of their right to dispute National Grid's claim, it did not advise them that they had thirty days to do so.  The Beauvoirs allege that the omission violated the FDCPA.  *See* 15 U.S.C. § 1692g(a).

With his motion to dismiss, Israel has submitted a copy of a state-court complaint filed by Natural Grid against the Beauvoirs.[3]  In that complaint, National

---

[2]Despite the reference, the letter did not include a specific amount due.

[3]Israel has submitted other documents that the Court cannot consider.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("For purposes of [Rule 12(b)(6)], the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (internal quotation marks and citations omitted)).  Court filings, however, are matters of which judicial notice may be taken, and are therefore appropriately considered on a motion to dismiss.  *See Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 426 (2d Cir. 2008) ("[M]atters judicially noticed by the District Court are not considered matters outside the pleadings.")

Grid alleges that the Beauvoirs "diverted and consumed unmetered natural gas . . . by means of unlawfully tampering with [National Grid's] gas meter to impede, impair, obstruct and prevent the said meter from performing its recording function."  Mot. to Dismiss, Ex. 3.  The Beauvoirs deny that allegation.

## II

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction." 15 U.S.C. § 1692a(5).  "[A]t a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value." *Beggs v. Rossi,* 145 F.3d 511, 512 (2d Cir. 1998).  Beyond that pronouncement, the Second Circuit has not offered much guidance as to when a particular demand for payment qualifies as a "debt."  The uniform rule in other circuits, however, is that the statute does not cover liability for theft and other torts.  *See Fleming v. Pickard*, 581 F.3d 922, 926 (9th Cir. 2009) ("[W]e have little difficulty concluding that Defendants' cause of action against Plaintiffs for wrongful conversion does not, as a matter of law, constitute a debt for purposes of the FDCPA."); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) ("Because Hawthorne's alleged obligation to pay Mac Adjustment for damages arising out of an accident does not arise out of any consensual or business dealing, plainly it does not constitute a 'transaction' under the FDCPA."); *Bass v. Stolper, Koritzinsky,*

3

*Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997) ("[A]lthough a thief undoubtedly has an obligation to pay for the goods or services he steals, the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services.").  Agreeing with that line of  reasoning, another district court in this circuit has held that "unauthorized reception of [cable service] constitutes theft, not a receipt of services giving rise to a 'debt.'" *Coretti v. Lefkowitz*, 965 F. Supp. 3, 5 (D. Conn. 1997).  The Court similarly concludes that obtaining natural gas through meter tampering is theft and, as such, outside the scope of the FDCPA.

The Beauvoirs emphasize that they have denied National Grid's claim of theft.  They are correct that the merits of that claim is not a matter for the Court to decide. *See Global Network Commc'ns, Inc. v. City of New York.* 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").  But the Court need not determine whether the Beauvoirs are or are not actually liable to National Grid for theft.  What matters in the context of an FDCPA claim is the asserted basis for the obligation to pay.  Since the April 23rd letter and the state-court complaint make it clear that Israel was asserting an obligation to pay arising out of an alleged theft, the Court can decide the issue on a motion to dismiss.

### III

For the reasons set forth above, Isreal's motion to dismiss is granted

and the complaint is dismissed.

**SO ORDERED.**


           /S/Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 7, 2014

O

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y

★ AUG 07 2014 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
GARY BEAUVIOR and HUSBENE
BEAUVIOR, on behalf of themselves
and all other similarly situated
customers,

              Plaintiffs,

    -against-

DAVID M. ISRAEL,

              Defendant.
-------------------------------------------------X

JUDGMENT
13-CV-1236(FB)

        An Order of Honorable Frederic Block, United States District Judge, having been

filed on August 7, 2014, granting defendant's motion to dismiss; it is

        ORDERED and ADJUDGED that defendant's motion to dismiss is granted and

plaintiffs shall take nothing of the defendant.

Dated: Brooklyn, New York
       August 7, 2014

                            Douglas C. Palmer
                            Clerk of Court

                            Digitally signed by Michele Gapinski
                            DN: cn=Michele Gapinski, o=U.S. Courts, ou=NY-
                            E, email=michele_gapinski@nyed.uscourts.gov,
                            c=US
          by:

                            Michele Gapinski
                            Chief Deputy for
                            Court Operations

**P**

ב"ה

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GARY BEAUVIOR and HUSBENE BEAUVIOR
on behalf of themselves and all other similarly
situated consumers,

                              Plaintiffs,

        -against-

DAVID M. ISRAEL,

                              Defendant.
------------------------------------------------------------------X

## <u>NOTICE OF APPEAL</u>

        NOTICE is hereby given that Gary Beauvior and Husbene Beauvior, Plaintiffs in the

above entitled action, hereby appeal to the United States Court of Appeals for the Second

Circuit, from the Memorandum and Order of the U.S.D.J., granting Defendant's Motion and

dismissing this action.

        entered in this action 7th day of August, 2014.

        Dated:          Brooklyn, New York
                        October 6, 2014

                                **Levi Huebner & Associates, PC**

                                     / s / Levi Huebner
                                By: _____
                                     Levi Huebner

                                478 Malbone Street, Suite 100
                                Brooklyn, NY  11225
                                (212) 354-5555

                                *Attorneys for Plaintiffs*

**Q**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
GARY BEAUVIOR and HUSBENE BEAUVIOR      Index No. 13-CV-01236
on behalf of themselves and all other similarly     (FB)(RML)
situated consumers,

                 Plaintiffs,      **NOTICE MOTION**

      -against-      **FOR EXTENSION OF TIME**

DAVID M. ISRAEL,

                Defendant.
--------------------------------------------------------------X

**Motion By**:      Levi Huebner & Associates, PC
             *Attorneys for Plaintiffs*

**Date, Time &**
**Place of Hearing**:     October 20, 2014 at the time and place to be determined by the Court in the United States District Court, Eastern District of New York, 225 Cadman Plaza East, Brooklyn, NY 11201.

**Supporting Papers**:  (1) Declaration of Levi Huebner, dated October, 6, 2014, together with the exhibits annexed thereto; and

                (2) Plaintiffs' memorandum of Law dated October, 6, 2014,

**Relief Demanded**:   Pursuant to FRAP §4(a)(5) Plaintiffs, Gary Beauvior and Husbene Beauvior submits this motion requesting leave to file the within Notice of Appeal out of time; and such further relief as this court deems just and proper.

DATED:  Brooklyn, NY        LEVI HUEBNER & ASSOCIATES, PC
       October 6, 2013

                      /s/ Levi Huebner
               BY: _____
                    Levi Huebner

               478 Malbone Street, Suite 100
               Brooklyn, NY 11225
               (212) 354-5555

               *Attorneys for Plaintiffs*
               .

**R**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GARY BEAUVIOR and HUSBENE BEAUVIOR     Index No. 13-CV-01236
on behalf of themselves and all other similarly     (FB)(RML)
situated consumers,

                    Plaintiffs,             **DECLERATION**

        -against-

DAVID M. ISRAEL,
                    Defendant.
---------------------------------------------------------------X
State of New York )
               )ss.:
County of Kings    )

Levi Huebner under penalties affirms to the following:

1.      I am the principal of Levi Huebner & Associates, PC, attorneys for the Plaintiffs in the within matter and as such I am fully familiar with the within matter.

2.      A true copy of the Notice of Appeal in this action is attached hereto as **Exhibit "1".**

3.      Plaintiffs, Gary Beauvior and Husbene Beauvior desire to appeal the Memorandum and Decision of the Honorable District Judge Frederic Block, dismissing the within action, dated August 7, 2014.

4.      Plaintiffs failed to file a Notice of Appeal on or before September 6, 2014.

5.      My office has suffered a setback due to the illness of co-counsel during the ongoing relocation of my office.

6.      I have been relocating to a new office. However, the move has been delayed.

7.      My co-counsel Mr. Poltorak is responsible for appeals of matters from this office; however, he has been unable to work due to a debilitating illness. Thus, I have not had his assistance and have been shorthanded.

8.      When the matter was decided I had our paralegal calendar the matter so that a timely Notice of Appeal could be filed.

9.      The paralegal noted the time for filing the Notice of Appeal in the Redbook, however, the paralegal erroneously failed to notice the deadline to file the Notice of Appeal on our electronic calendar.

10.     Moreover, the Redbook was water damaged due to flooding while temporarily held in a different location while in transit prior to relocating. Moreover, due to co-counsel's illness, and other difficulties in setting up the new office the move to that location has not been completed.

11.     Due to Mr. Poltorak's illness he can only work for limited periods on line. However, because the paralegal did not notice the deadline to file the Notice of Appeal on our electronic calendar Mr. Poltorak did not have notice of the deadline.

12.     Additionally, because the Redbook was damaged due to flooding I did not have the benefit of the Redbook.

13.     Today I had a telephone conference with Mathew Bizzaro counsel for Defendant regarding another unrelated matter. During that conversation he mentioned this case. That is when I realized that an appeal had not yet been filed regarding this matter.

14.     Whereupon, I immediately prepared the within Notice of Appeal and motion requesting leave to file the within Notice of Appeal out of time.

15.     FRAP §4(a)(5) provides that "the district court may extend the time to file a notice of appeal if: (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause." The

Case 1:13-cv-01236-FB-RML   Document 26-1   Filed 10/06/14   Page 3 of 3 PageID #: 273

time prescribed by Rule 4(a) is, "within 30 days after the judgment or order appealed from is entered."

16.     Accordingly, Plaintiffs' deadline to request an extension of time to file and appeal was 30 days after entry of the judgment on August 7, 2014.  However, Plaintiffs' request was made on October 6, 2014, before the deadline passed to request an extension of time to file an appeal. Thus, Plaintiff's request for an extension of time to file an appeal is timely.


**WHEREFORE**, it is respectfully requested that Plaintiffs' motion be granted in its entirety together with such further relief as this court deems just and proper.

DATED:  Brooklyn, NY
        October 6, 2014

LEVI HUEBNER & ASSOCIATES, PC

          /s/ Levi Huebner
BY: _____
         Levi Huebner


*Attorneys for Plaintiffs*
.