# 14-3794-cv

## United States Court of Appeals

*for the*

## Second Circuit

GARY BEAUVIOR, HUSBENE BEAUVIOR, on behalf of
themselves and all other similarly situated consumers,

*Plaintiffs-Appellants,*

— v. —

DAVID M. ISRAEL,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

MATTHEW J. BIZZARO
L'ABBATE, BALKAN, COLAVITA
& CONTINI, L.L.P.
*Attorneys for Defendant-Appellee*
1001 Franklin Avenue, 3rd Floor
Garden City, New York 11530
(516) 294-8844

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...........................................................................ii

STATEMENT OF APPELLATE ISSUES ................................................... 1

STATEMENT OF THE CASE ..................................................................... 1

COUNTER-STATEMENT OF FACTS ....................................................... 3

SUMMARY OF THE ARGUMENT ........................................................... 8

STANDARD OF REVIEW ........................................................................... 8

POINT I
    THE DISTRICT COURT PROPERLY DISMISSED
    THE COMPLAINT, SINCE THE LETTER DID NOT
    SEEK TO COLLECT A "DEBT", AS DEFINED
    UNDER THE FDCPA ...................................................................... 8

POINT II
    THE BEAUVIORS' ARGUMENTS ARE WITHOUT
    MERIT ........................................................................................... 16

POINT III
    THE CASE LAW CITED BY THE BEAUVIORS IS
    FACTUALLY DISTINGUISHABLE AND
    IRRELEVANT FROM THE CASE AT BAR ................................. 20

CONCLUSION ........................................................................................... 24

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                        <u>Page</u>

*Bass v. Stolper, Koritzinsky, Brewster & Nelder, S.C.*,
   111 F.3d 1322 (7th Cir. 1997) .................................................................. 10

*Caceres v. McCalla Raymer, LLC*,
   755 F.3d 1299 (11th Cir. 2014) ................................................................ 22

*Caires v. JP Morgan Chase Bank, N.A.*,
   880 F.Supp.2d 288 (D. Conn. 2012) ........................................................ 20

*Directv, Inc. v. Cavanaugh*,
   321 F.Supp.2d 825 (E.D. Mich. 2003) ..................................... 9, 13, 14, 22

*Directv, Inc. v. Cephas*,
   294 F.Supp.2d 760 (M.D. N. Car. 2003) ........................................... passim

*Fleming v. Pickard*,
   581 F.3d 922 (9th Cir. 2009) .................................................................. 10

*Franklin v. Parking Revenue Recovery Services, Inc.*,
   2014 WL 6685472 (N.D. Ill. 2014) ........................................................... 9

*Goldman v. Cohen*,
   445 F.3d 152 (2d Cir. 2006) ................................................................... 23

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*,
   374 F.3d 56 (2d Cir. 2003) ..................................................................... 23

*Grimard v. Palmer, Reifler and Associates, P.C.*,
   2007 WL 2287831 (E.D. Mich. 2007) ..................................................... 10

*Hamilton v. United Healthcare of Louisiana, Inc.*,
   310 F.3d 385 (5th Cir. 2002) .................................................................. 22

*Hill v. Didio*,
  191 Fed.Appx. 13 (2d Cir. 2006)................................................................. 8

*Hustler v. Shapiro*,
  2014 WL 2452977 (E.D. Miss. 2014) ........................................................ 9

*Kahn v. New York University Medical Center*,
  328 Fed.Appx. 758 (2d Cir. 2009)............................................................. 8

*Kapsis v. American Home Mortgage Servicing Inc.*,
  923 F.Supp.2d 430 (E.D.N.Y. 2013) ......................................................... 20

*Romea v. Heiberger & Associates*,
  163 F.3d 111 (2d Cir. 1998) ........................................................ 20, 21, 22

*Shorts v. Palmer*,
  155 F.R.D. 172 (S.D. Ohio 1994).............................................................. 10

*Wilson v. Draper & Goldberg, P.L.L.C.*,
  443 F.3d 373 (4th Cir. 2005) .................................................................. 23

*Zimmerman v. HBO Affiliate Group, ACS*,
  834 F.2d 1163 (3rd Cir. 1988).................................................................. 9

<u>Rules</u>
Rule 12(b)(6) of the Federal Rules of Civil Procedure .............................. 6, 8

## STATEMENT OF APPELLATE ISSUES

1.      Whether the District Court properly determined that the underlying debt does not fall under the purview of the Fair Debt Collection Practices Act ("FDCPA").

      Answer:     Yes.

2.      Whether the complaint of Plaintiffs-Appellants, Gary Beauvior and Husbene Beauvior (the "Beauviors") was properly dismissed.

      Answer:  Yes.

## STATEMENT OF THE CASE

The Beauviors seek damages for alleged violations of the FDCPA, based upon the actions of Appellee, David M. Israel ("Mr. Israel") in sending a letter to Plaintiffs, on behalf of his client (the "Letter"), The Brooklyn Union Gas Company d/b/a National Grid New York ("National Grid"), regarding the Beauviors' alleged improper consumption of "unmetered gas"[1] at certain premises located at 10 Paerdegat 7th Street, Brooklyn, New York 11236 (the "Premises") (JA-E1).  As explained below, the underlying debt referenced in the Letter pertains to the suspected "theft of services," which is not covered by the

---

[1] "Unmetered gas" is gas which the Beauviors allegedly consumed without it being read by the meter, and for which the Beauvoirs did not pay.

1

FDCPA.[2] Therefore, the Beauviors' complaint (the "Complaint") was properly dismissed.

The Beauviors spend most of their brief asserting alleged defenses to the claims filed against them by National Grid in the underlying lawsuit. The Beauviors are entitled to pursue their purported defenses to National Grid's claims in the underlying lawsuit that is still pending in state court. These arguments, however, are irrelevant to the Beauviors' appeal, and are not properly before this Court. Rather, the only issue before this Court is whether Mr. Israel's attempt to collect this "theft of services" debt on National Grid's behalf, based upon the Beauviors alleged improper consumption of "unmetered gas" brought about by meter tampering, falls within the scope of the FDCPA.

In addition, the Beauviors argue that since their alleged unauthorized consumption of unmetered gas has not been established in the underlying lawsuit, it constitutes a "debt" under the FDCPA. This argument has been raised before and rejected by courts throughout the nation. Therefore, the

---

[2] Additionally, it is respectfully submitted that the underlying debt was not incurred primarily for personal, family or household purposes, as required under the FDCPA.

District Court properly determined that the Letter and the underlying claim alleged therein do not fall under the purview of the FDCPA.

## COUNTER-STATEMENT OF FACTS

Mr. Israel was retained by National Grid to represent it with respect to a debt owed by Plaintiffs, which arose out of their alleged consumption of "unmetered gas" at the Premises. Specifically, the Beauviors had an account with National Grid governing their usage of natural gas at the Premises. Thereafter, National Grid detected evidence that the Beauviors unlawfully tampered with National Grid's gas meter that was located at the Beauviors' residence to monitor their gas usage, so as to prevent the meter from recording the full and actual amount of their gas usage. Since National Grid's regular invoices were based upon the meter readings, National Grid alleges that the Beauviors received a quantity of unregistered natural gas, which was not reflected in the regular invoices that National Grid rendered.

The record on appeal reveals that an inspector from National Grid visited the Premises, inspected the meter and concluded that the Beauviors had indeed tampered with the gas meter to prevent it from recording all of their (gas usage).

More particularly, the inspector prepared a "Theft of Services Report" (the "Report"), which states in part:

> *Green tamper seal torn;*
>
> *Red tamper seal torn;*
>
> *Missing screws on index box missing; and*
>
> *Tamper seals on index box missing.*

(JA-E2).

The Report further states that in addition to gas used for house heating, three "ranges" (or stoves) were present at the Premises, a multi-family house, where the Beauviors claim to reside by themselves. (JA-E2).

Subsequent to the foregoing, National Grid retained Mr. Israel to collect from the Beauviors compensation for their suspected improper consumption of unmetered gas allegedly obtained by meter tampering in the amount of $28,305.64.

On April 23, 2012, Mr. Israel prepared and sent to the Beauviors the Letter, which stated in pertinent part as follows:

> Please be advised that I am an attorney and that I
> represent The Brooklyn Union Gas Company d/b/a

4

> National Grid New York, the original creditor with respect to the above-described matter. My client has referred the above-described claims to me for purposes of collection of the debt in the amount set forth above, based upon the consumption of **unmetered gas** at the above stated location. I have annexed my client's invoice to this letter.
>
> If you do not respond to this letter and do not dispute all or a portion of the debt, my client and I shall assume that the debt is valid and we now believe it is. However, if you communicate with this office, in writing, and dispute all or a portion of the debt, I shall obtain and provide you with verification of the claims, or a copy of the judgment, if applicable, and mail it to you, within five (5) days from my receipt of your request. If you so dispute all or a portion of this claim, my office shall cease collection of the debt, or any disputed portion thereof, until I provide you with verification of the debt, or the name and address of the original creditor, as applicable. (Emphasis Added)

(JA-G5).

Mr. Israel did not seek to collect on National Grid's behalf compensation for any gas that was properly recorded on the gas meter and billed accordingly. Instead, the Letter sought only compensation for the Beauviors' alleged consumption of unmetered gas, which amount National Grid claimed had not originally been billed due to the Beauviors interference with the meter's recording function.

As a result of the Beauviors' failure to pay the requested amount, Mr. Israel commenced a lawsuit against them on National Grid's behalf, in the Supreme Court, Kings County, seeking compensatory and punitive damages. (JA-E3). The Beauviors served an answer to National Grid's summons and complaint. (JA-E4). This lawsuit is still pending.

After the State action had been pending for months, the Beauviors filed a lawsuit against Mr. Israel, alleging that the Letter failed to comply with the FDCPA. (JA-G2). Mr. Israel filed a motion seeking the dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), on the grounds that the Letter sought to collect a debt relating solely to the Beauviors' consumption of unmetered natural gas, and therefore, is not covered by the FDCPA. (JA-D; F; G).

The District Court properly granted Mr. Israel's motion and dismissed the Complaint. In doing so, the District Court held in relevant part:

> The Beauviors emphasize that they have denied National Grid's claim of theft. They are correct that the merits of that claim is not a matter for the Court to decide…*But the Court need not determine whether the Beauviors are or are not actually liable to National Grid for theft. What matters in the context of an FDCPA claim is the asserted basis for the obligation to pay.* Since the April 23rd letter and the

6

> state-court make it clear that Israel was asserting an
> obligation to pay arising out of an alleged theft, the
> Court can decide the issue on a motion to dismiss.
> (Emphasis Added).

(JA-N, pg.4).

As set forth below, the District Court's rationale is in line with every circuit throughout this country that has addressed the very issue presently before this Court.

Now, the Beauvoirs appeal the District Court's Order wherein they assert the very same arguments that were property rejected.[3]

For the reasons set forth below, it is respectfully submitted that the District Court's Order should be affirmed in all respects.

---

[3] The Beauvoirs failed to timely file a notice of appeal. The Beauvoirs, however, sought permission to file a late notice of appeal. Their request was granted by the lower court, before Mr. Israel had a reasonable opportunity to oppose the Beauvoirs' motion. Subsequently, Mr. Israel filed a motion seeking reconsideration of the district court's decision on the grounds that the Beauvoirs failed to establish "good cause" or "excusable neglect," as is required to file a late notice of appeal. This motion was fully submitted and is currently pending before the district court. Mr. Israel sent correspondence to this Court requesting that the briefing schedule for the Beauvoirs' appeal be extended until a decision on the motion seeking reconsideration was issued. This Court, however, declined to do so. Regardless, Mr. Israel is not waiving any of the arguments set forth in his motion seeking reconsideration by opposing the Beauvoirs' appeal on the merits.

## SUMMARY OF THE ARGUMENT

The instant action was properly dismissed pursuant to Rule 12(b)(6) of the FRCP, since the underlying debt does not fall under the purview of the FDCPA.

## STANDARD OF REVIEW

This Honorable Court reviews the appropriateness of a decision dismissing an action pursuant to Rule 12(b)(6) *de novo*. *See, Kahn v. New York University Medical Center*, 328 Fed.Appx. 758 (2d Cir. 2009); *Hill v. Didio*, 191 Fed.Appx. 13 (2d Cir. 2006). Following this review, it is respectfully submitted that the District Court's Order should be affirmed in all respects.

## POINT I

## THE DISTRICT COURT PROPERLY DISMISSED THE COMPLAINT, SINCE THE LETTER DID NOT SEEK TO COLLECT A "DEBT", AS DEFINED UNDER THE FDCPA

The term "debt" as defined under the FDCPA means: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *See, Section 1692a(5)*.

8

The FDCPA does not cover actions constituting the theft or conversion of goods and services. In fact, every court that has been called upon to address this issue has decided that it does not. *See, Franklin v. Parking Revenue Recovery Services, Inc.*, 2014 WL 6685472 (N.D. Ill. 2014) ("As far as the undisputed facts in the record show, the fine did *not* arise from a business dealing creating an obligation to pay and therefore cannot be a debt under the FDCPA"); *Hustler v. Shapiro*, 2014 WL 2452977 (E.D. Miss. 2014) ("Here, as in the above cases, there is nothing to suggest that Plaintiffs ever entered into an agreement or transaction obligating them to pay double the amount of the reasonable rental value of the property…") *Directv, Inc. v. Cavanaugh*, 321 F.Supp.2d 825 (E.D. Mich. 2003) ("The receipt of satellite signals above and beyond what was subscribed to simply does not give rise to the type of consensual transaction envisioned by the FDCPA"); *Directv, Inc. v. Cephas,* 294 F.Supp.2d 760 (M.D. N. Car. 2003) ("There is simply no indication that North Carolina courts would extend the definition of debt to include obligations arising from alleged tortious or criminal conduct…"); *Zimmerman v. HBO Affiliate Group, ACS*, 834 F.2d 1163 (3rd Cir. 1988) (Cable television companies were not seeking to collect a "debt" within meaning of the FDCPA when they demanded monetary compensation in the settlement of asserted legal claims against persons

suspected of having illegally received microwave television signals); *Grimard v. Palmer, Reifler and Associates, P.C.*, 2007 WL 2287831 (E.D. Mich. 2007) ("Federal courts have consistently held that a money obligation arising from a tort does not constitute a "debt" for purposes of the FDCPA"); *Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009) ("Plaintiffs fail to recognize, however, that Ace did not consent to Barnes's stealing the merchandise, selling it at a discount, or pocketing the proceeds. Barnes's actions far exceeded the scope of Ace's consent, placing the resulting obligations well outside the scope of the debt obligation contemplated by the FDCPA"); *Bass v. Stolper, Koritzinsky, Brewster & Nelder, S.C.*, 111 F.3d 1322 (7th Cir. 1997) ("And although a thief undoubtedly has an obligation to pay for the goods or services he steals, the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services"); *Coretti v. Lefkowitz*, 965 F.Supp.3 (D. Conn. 1997) ("Plaintiff's alleged unauthorized reception of Cablevision's Pay Per View and Premium Programming constitutes theft not a receipt of services giving rise to 'debt'"); *Shorts v. Palmer*, 155 F.R.D. 172 (S.D. Ohio 1994) (the court held that plaintiff was not a "consumer" within the meaning of the FDCPA when the obligation arose out of a theft).

The Letter seeks to collect a debt related solely to the Beauviors' alleged consumption of unmetered/unregistered natural gas. (JA-G3). Therefore, the debt referenced in the Letter is not covered by the FDCPA.

The Beauviors argue that since they denied the allegations in the underlying lawsuit and there has been no finding against them, as of yet, Mr. Israel was attempting to collect a "debt" as defined under the FDCPA. This argument has been rejected by prior courts.

In *Franklin* (decided on November 25, 2014), the plaintiffs brought suit against the Parking Revenue Services, Inc. ("Parking Revenue") and its attorney, alleging violations of the FDCPA, due to the law firm's attempt to collect a debt based upon an unpaid parking fee. Parking Revenue moved for summary judgment, and its motion was granted.

Similar to the Beauviors, in *Franklin*, the plaintiffs disputed the amount Parking Revenue sought to collect. Specifically, the plaintiffs claimed they paid the $1.50 parking fee at the parking lot. *Id.* at 5. The Court properly rejected this argument and found that the debt the defendants were seeking to collect did not invoke the FDCPA. More particularly, the Court held in pertinent part as follows:

11

As far as the undisputed facts in the record show, the fine did not arise from a business dealing creating an obligation to pay and therefore cannot be a debt under the FDCPA. To illustrate this conclusion, consider a situation in which someone parks in the parking lot without paying the $1.50 parking fee. This situation does not create a consensual transaction; the parker has not undertaken any obligation to pay or created any contract. He is, in effect, stealing the services of the parking lot…And "although a thief undoubtedly has an obligation to pay for the goods or services he steals, the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where the parties negotiate or contract for consumer-related goods or services…" When the parking lot owner then leaves a "parking violation notice" on that parker's windshield, it is not seeking payment of a contracted-for amount, it is imposing a penalty for violating the rules of the lot requiring payment to park.

*Id.* at 4.

> *It makes no difference that Plaintiff claims to have paid the $1.50 parking fee at the parking lot*…Returning to the parking meter example, consider a parker who in fact does feed the parking meter, but nevertheless receives a parking ticket that is mistakenly handed out by an officer. The fact that the parker paid the meter does not transform the fine into a debt. The nature of the transaction is the same. The municipality is still penalizing the parker for what is essentially theft of services; the parking enforcement officer was simply mistaken in assessing the fine. *This does not mean that the parker cannot challenge the imposition of the fine, just that he may not invoke the FDCPA when the government tries to collect on a parking fine.* Thus, regardless of the merits of the dispute over the underlying transaction, the amount charged by Parking Revenue is still a fine (Emphasis Added).

*Id.* at 5.

Similar to *Franklin*, the fact that the Beauviors dispute that they engaged in the unauthorized consumption of natural gas is irrelevant, and does not permit them to invoke the FDCPA.

In *Directv v. Cavanaugh*, Directv initiated a program called the End User Development Group ("EUDG") to target the individuals who purchased signal theft services. EUDG sent approximately 100,000 nearly identical demand letters informing individuals "*suspected of* signal piracy" that Directv had obtained the sales records of the equipment and was contemplating litigation. (Emphasis Added). *Id.* at 829. The court held that Directv did not violate the FDCPA or the Michigan Fair Collection Practices Act.

In *Directv v. Cavanaugh*, the plaintiff argued that "[i]f DIRECTV has no actual knowledge of signal theft then as a subscriber of DIRECTV's services any programming received by not paid for would be a debt." *Id.* at 837. The court rejected this claim and held:

> Even if there was no evidence of piracy, [Plaintiff's] argument still falters because it fails to distinguish between the dictionary and statutory meanings of the word "debt." By arguing that the receipt of unsubscribed-to signals constitutes come sort of surplus or mistaken credit, [Plaintiff] attempts to divorce the notion of "debt" from the text of the statute. The receipt of satellite signals above and beyond what was subscribed to simply does not give rise to the

13

type of consensual transaction envisioned by the FDCPA. Accordingly, the Court finds the demand letters do not seek to collect a "debt" within the meaning of the Act.

*Id.*

The fact that the Beauviors have a contract with National Grid for natural gas is inconsequential to the issues before this Court. The Beauviors' contract certainly did not permit them to tamper with the gas meter to prevent the meter from recording their full consumption, as alleged by National Grid.

Similar to *Directv v. Cavanaugh*, the Letter sought to collect a debt based upon the Beauviors "suspected" consumption of unmetered natural gas. Therefore, since this was not a consensual transaction, the Letter did not violate the FDCPA.

Furthermore, in *Directv v. Cephas*, the satellite television broadcaster sued an "alleged" user of illegal signal theft equipment. The defendant counterclaimed for unfair and deceptive practices under the North Carolina Debt Collection Act ("NCDCA") and the North Carolina Unfair and Deceptive Trade Practices Act.

In *Directv v. Cephas*, the defendant received a letter from Directv, accusing him of violating various federal statutes by possessing and/or using

14

signal theft equipment and announcing that litigation would be pursued against him. *Id.* at 762. The defendant replied with a letter denying these accusations. *Id*. Directv issued a second letter stating that the defendant would be given an additional ten days to pursue a settlement with the company before it retained counsel and filed suit. *Id.* The defendant did not respond and Directv commenced the lawsuit.

The court in *Directv v. Cephas* dismissed the defendant's counterclaims and held as follows:

> There is simply no indication that North Carolina courts would extend the definition of debt to include obligations arising from alleged tortious or criminal conduct; to do so would imprudently expand the scope of the NCDCA's consumer protection measures. Since debt under the NCDCA does not include *alleged* theft, [Plaintiff] is unable to assert a claim under that statute as a matter of law. (Emphasis Added).

*Id.* at 764.

Based upon the foregoing, the Beauviors' denials of National Grid's allegations that they engaged in the unauthorized consumption of natural gas, along with their defense to the allegations in the underlying lawsuit are nothing more than a red herring. It is also irrelevant that the Beauviors had a contract with National Grid for the consumption of natural gas. What matters is that Mr.

15

Israel did not seek to collect debt based upon a consensual transaction, which obligated the Beauviors to make a payment. Rather, Mr. Israel sought from the Beauviors compensation for their alleged unauthorized (unconsensual) consumption of unmetered natural gas, which National Grid claims was brought about by meter tampering.

Just as in *Directv v. Cephas*, the Letter and the subsequent state court complaint alleged that the Beauviors' conduct that was tortious and punitive damages were requested. Since this activity clearly does not fall under the scope of the FDCPA, the Complaint should be dismissed in its entirety.

## POINT II

## THE BEAUVIORS' ARGUMENTS ARE WITHOUT MERIT

The majority of the Beauviors' brief consists of arguments as to why they are not liable in the underlying lawsuit. For the reasons set forth above, the Beauviors' defenses to National Grid's claims are irrelevant to the issue of whether debt Mr. Israel sought to collect invokes the FDCPA.

The Beauviors also argue (without citing any authority to support their position) that this Court should adopt a standard of requiring a debt collector to demonstrate by "clear and convincing evidence" that an individual is a "thief,"

before making such assertion in a communication to the debtor. If a debt collector does not meet this proposed threshold, the Beauviors propose that the communication to the debtor and the debt sought therein should fall under the purview of the FDCPA. Such a suggestion is irrational since it would essentially require a trial and fact finding process, prior to even sending an initial claim letter.[4]

The result sought by the Beauviors would also be disastrous for the United States economy, produce absurd results, and flood the courts with possibly thousands of new lawsuits because virtually every type of claim letter would fall within the statute since the trial which determines the ultimate question of liability always follows the sending of an initial claim. This was not the legislative intent when the FDCPA was enacted, and is likely the reason why there is no single Circuit in this nation which applies the test proposed by the Beauviors.

In order to establish something by "clear and convincing evidence," a party must prove not merely that his version of events is "more likely than not"

---

[4] Notwithstanding the foregoing this Court's attention is respectfully drawn to Penal Law Section 165.15 which contains within it a statutory presumption that if the gas meter in question was tampered with then the Beauvoirs who benefitted by the tampering by getting lower metered gas bills caused the tampering or had knowledge thereof.

true, but that it is "substantially more likely than not" his/her claims are true. *See,*[http://www.rotlaw.com/legal-library/what-is-clear-and-convincing-evidence/](http://www.rotlaw.com/legal-library/what-is-clear-and-convincing-evidence/).

Preventing a debt collector from seeking to collect a debt which is based upon suspected illegal conduct, such as theft of services, until after the creditor or debt collector can establish such conduct by "clear and convincing evidence," would wreak havoc on the United States' economy. For example, if a company suspected that one of its customers had obtained and used its goods and/or services through improper and/or illegal means, but could not seek to collect the debt until after the customer's conduct was proven by "clear and convincing evidence," this debt may sit on the company's books for years, while a lawsuit to commence same proceeds. If the FDCPA applied to such claims, a debt collector could not make an assertion to the debtor (in writing or over the phone) that his conduct is illegal, without facing a lawsuit under the FDCPA based upon "false," "harassing" or "threatening" statements. *See, Sections 1692d and 1692e.*

The more sensical solution, which is not only in legion with every other circuit in this country, but coincides with the legislative intent of Congress, is to

preclude communications seeking to collect a debt based upon alleged illegal, tortious or criminal misconduct from the FDCPA.

Additionally, the Beauviors' counsel makes the false statement to this Court that: "In each case cited by the district court there was clear and convincing evidence to make the thief assertion…" *See, Brief of Appellants' Counsel, Levi Huebner, pg. 16.* This is simply untrue. None of the cases cited by the District Court held that there was "clear and convincing evidence" of thievery. Rather, it appears that the Beauviors' counsel has rendered his own opinion, based upon his reading of these cases, that "clear and convincing evidence" was established. Clearly, the Beauviors' attorney's conclusory assertion does not constitute persuasive authority.

Furthermore, it matters not that the Letter states that the claim was referred to Mr. Israel "for purposes of collection of debt…" The debt referenced in the Letter does not constitute "debt" as defined under the FDCPA. Rather, the debt that was asserted by Mr. Israel arose from the Beauviors' alleged theft of services.

Finally, the fact that the Letter contains certain language required under the FDCPA is of no consequence, and does not transform the debt to one that

invokes the FDCPA. *See, Kapsis v. American Home Mortgage Servicing Inc.*, 923 F.Supp.2d 430 (E.D.N.Y. 2013) ("merely including FDCPA language or disclaimers in correspondence with a debtor does not make one collecting on a debt a 'debt collector' for the purposes of the FDCPA"); *Caires v. JP Morgan Chase Bank, N.A.*, 880 F.Supp.2d 288 (D. Conn. 2012) ("whether the FDCPA would apply to a particular defendant is a legal questions and 'merely announcing that one is an FDCPA debt collector does not make you one").

Based upon the foregoing, even when viewing the facts in a light most favorable to the Beauviors, the District Court properly dismissed the Complaint.

## POINT III

### THE CASE LAW CITED BY THE BEAUVIORS IS FACTUALLY DISTINGUISHABLE AND IRRELEVANT FROM THE CASE AT BAR

The Beauviors rely heavily upon *Romea v. Heiberger & Associates*, 163 F.3d 111 (2d Cir. 1998) in support of their position. *Romea*, however, is completely inapposite to the present matter.

In *Romea*, the defendant/law firm sent to the plaintiff a letter demanding payment for back rent. The plaintiff filed a class action lawsuit alleging that the letter contained numerous violations of the FDCPA. The defendant/law firm

filed a motion to dismiss the complaint arguing that the rent due was not "debt" and the letter was not a "communication" under the FDCPA. The district court denied the defendant/law firm's motion and an appeal ensued.

In its appeal, the defendant/law firm first argued that that rent is not a debt because leases customarily require a tenant to prepay rent for a specified period, generally on a monthly basis, for the use of the premises for that period. *Id.* at 114. The defendant/law firm also argued that that back rent is not a debt under the FDCPA because by definition a tenant who owes back rent has breached her lease and thereby terminated it. *Id.* Because the landlord is not consenting to the tenant's occupancy under such conditions and is prevented by New York Real Property and Proceedings Law § 711 from immediately evicting the tenant, the defendant/law firm argued that the result is "a nonconsensual relationship no different than the unauthorized use of cable television services or the nonpayment of taxes." *Id.*

This Court in *Romea* determined that back rent constituted debt under the FDCPA. *Id.* This Court, however, did not address the issue of whether the attempt to collect a debt based upon the suspected illegal, unauthorized and/or improper use of goods and services constitutes debt under the FDCPA.

21

The *Romea* decision was also issued almost seventeen years ago. As such, this Court only referenced those FDCPA cases involving "theft," which did not involve an existing contractual relationship, and distinguished those instances from the landlord/tenant relationship involving "back rent." This Court did not have the benefit of the plethora of much more recent decisions (some of which involve instances where contractual relationships existed) cited in Point I above. *See, Franklin* (N.D. Ill. 2014); *Hustler* (E.D. Miss. 2014); *Directv, Inc. v. Cavanaugh* (E.D. Mich. 2003); *Directv, Inc. v. Cephas* (M.D. N. Car. 2003); *Grimard* (E.D. Mich. 2007); *Fleming* (9th Cir. 2009). Therefore, the *Romea* decision is inapposite to the instant action.

None of the remainder of the cases the Beauviors rely upon pertain to situations involving alleged violations of the FDCPA when a debt collector is seeking to collect a debt due to an alleged theft. *See, Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299 (11th Cir. 2014) (the court held that a letter informing a borrower that she was behind on her payments on her residential mortgage was an initial communication in connection with the collection of a debt within the meaning of the FDCPA); *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385 (5th Cir. 2002) (the court held that the group health insurer's contract-based subrogation claim, for reimbursement of benefits

which it had paid to injured employee from employee's recovery of third-party uninsured motorist benefits, was in nature of "debt" collection of which was subject to the requirements of the FDCPA); *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56 (2d Cir. 2003) (the court held that the defendant/law firm "regularly" engaged in debt collection activity, so as to qualify as a "debt collector"); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2005) (the court held that a law firm that initiated foreclosure proceedings on a lender's behalf, pursuant to a loan secured by deed or trust, attempted to collect "debt" within the meaning of the FDCPA); *Goldman v. Cohen*, 445 F.3d 152 (2d Cir. 2006) (the court held that the initiation of a lawsuit in state court seeking recovery of unpaid rent was "initial communication" within the meaning of the FDCPA).

Based upon the foregoing, none of the cases cited by the Beauviors are relevant to the issue presently before this Court.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, it is respectfully submitted that the District Court's Order should be affirmed in its entirety.

Dated:  Garden City, New York
         March 13, 2015

                            Respectfully submitted,

                            L'ABBATE, BALKAN, COLAVITA
                              & CONTINI, L.L.P.


                     By:    <u>s/ Matthew J. Bizzaro</u>
                            Matthew J. Bizzaro, Esq.
                            Attorneys for Defendants-Appellees
                            1001 Franklin Avenue
                            Garden City, New York 11530
                            (516) 294-8844
                            File No. 566-97010