No. 14-3794-cv

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

GARY BEAUVIOR and HUSBENE BEAUVIOR on behalf of themselves and all other similarly situated consumers,

*Appellants-Plaintiffs,*

v

DAVID M. ISRAEL,

*Appellee-Defendant.*

———————————————————

On appeal from the United States District Court
For the Eastern District of New York

———————————————————

**PETITION FOR REHEARING or**
**REHEARING EN BANC**

———————

Pursuant to Rule 35 and 40 of the Federal Rules of Appellate Procedure and Circuit Local Rule 35.1, Plaintiffs-Appellants move for rehearing or rehearing en banc of the published decision rendered on July 21, 2015 ("Opinion"). (Exhibit 1).

**RULE 35(b) STATEMENT**

1.    The underlying case has been identified as an issue of first impression. (Exhibit 1, p 8). The Opinion reasons, "What matters in the context of an FDCPA claim is the asserted basis for the obligation to pay." (Exhibit 1, p 10). The Opinion's mistaken reasoning flatly contradicts well-established case law and the clear language of the Federal Debt Collectors Practices Act ("FDCPA").

1

2.     The FDCPA states: "The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).  "In determining whether an obligation is a 'debt' under the FDCPA, the relevant consideration is whether the obligation arose out of a transaction of the type specified in the FDCPA."  *Eades v. Kennedy, PC Law Offices*, ___ F.3d ___, ___ 2015 WL 3498784 *5 (2nd Cir. 6-4-2015).  For example, "Back rent by its nature is an obligation that arises only from the tenant's failure to pay the amounts due under the contractual lease transaction."  *Romea v. Heiberger & Associates*, 163 F.3d 111, 115 (2nd Cir. 1998).  The *Romea* Court provides an example, "The obligation to pay the bounced check, like the duty to pay back rent, does not derive from an extension of credit but rather because the payor breached its payment obligations in the contract between the parties."  *Id*.

3.     The plain language of this Circuit's earlier precedent, according to the FDCPA, is that the Court looks to the "subject of the transaction," whether the obligation to pay *arises out* of a *transaction*.  The Opinion rests on an honest mistake by diverting from the long-standing precedent of examining the subject transaction.  The Opinion gives the impression that Court's should merely look to

2

the "asserted basis for the obligation to pay" instead of whether the *obligation to pay arises out of a transaction* and is the *subject of the transaction*. This change in precedent, literally changes the entire scope of the FDCPA, to tell debt collectors, the FDCPA means nothing if you assert that the consumer is a thief.

4.     The Opinion offers no procedural safeguards for analyzing when the lower courts may divert from reviewing whether the *obligation to pay arises out of a transaction*. Instead, the Opinion allows the lower courts to be distracted with the `thief´ rhetoric of the debt collector. The district court expressed this concern in its memorandum, "the Second Circuit has not offered much guidance as to when a particular demand for payment qualifies as a debt." Joint Appendix ("J.A.") 186. Yet, the Opinion mistakenly took the district court's plea to elaborate on the *demand for payment* and declared the precedent of *asserted basis*, instead of following the plain language of § 1692a(5).

**I.     Pursuant to FRAP 35(b)(1)(A), the review of the "asserted basis for the obligation to pay," instead of reviewing the "subject of the transaction" whether the *obligation to pay arises out of a transaction*, is a intra-circuit conflict that requires *en banc* review, and at the minimum rehearing should be granted under FRAP 40(a)(2).**

5.     The uniform rulings of this Circuit are like in *Romea*. "Virtually all circuits that have addressed the issue of dishonored checks have held such checks to fall under the plain language of the FDCPA's definition of 'debt'." *Romea* at 115. Though issuing a bad check is a crime, much like theft, consumers are still

3

protected under the FDCPA because the obligation to pay arises out of a transaction. *See Federal Trade Comm. v. Check Investors, Inc.*, 502 F.3d 159, 167-171 (3rd Cir. 2007). According to *Romea,* a Court looks at the obligation to pay whether the debt arose out of a transaction. This requires applying the plain language of § 1692a(5) for a case like the *Beauviors*; whether the obligation to pay for unmetered gas *arises out of a transaction*. Looking at the facts in the light most favorable to plaintiff, the obligation to pay arises from a contract requiring the Beauviors to pay for consuming gas.[1] As National Grid said in its state-court complaint, "when Defendants consumed Plaintiff's natural gas . . . a contractual relationship existed by and between the Plaintiff, which Defendants breached." (J.A. 56). Exactly for that, the Beauviors are in collection **only** for that use of "gas." The demand for payment involves the use of *gas*. The instant demand for payment does **not** involve an obligation to pay for a meter.[2] J.A. 107. Neither the Opinion nor the district court denied that a transaction and a contractual relationship exist. Yet, the Opinion provides new and conflicting precedent of an

---

[1] *Romea* holds "a dishonored check constitutes debt because it evidences the check writer's failure to fulfill an obligation arising out of a 'consensual transaction for goods or services'." *Romea* at 115, n5. By the same token, the existence of a meter on the Beauviors property evidences the Beauviors obligation arising out of a consensual transaction for goods or services.

[2] Because the Beauviors are in collection only for back gas, and not for a meter, *Romea* is still on point. "Back rent by its nature is an obligation that arises only from the tenant's failure to pay the amounts due under the contractual lease transaction." *Romea* at 115. Realistically, back billing of gas by its nature is an asserted obligation that arises only from the Beauviors's failure to pay the amounts due under the contractual service agreement. Neither the district court, nor the Opinion explains how the term `unmetered´ changed that obligation to be a theft.

4

*asserted basis* conflicts with *Romea* by not reviewing whether the debt arose out of a transaction.

6.     Nonetheless, the Opinion made an honest mistake to arrive at this conclusion.  Instead of looking at the subject of the transaction of consumed gas, the Opinion looks at the "asserted basis for the obligation to pay."  The asserted basis, the Opinion said, is for "unmetered gas."  Yet, the Beauviors are in collection for alleged gas they were authorized to consume as consumers, an undisputed fact.  There was no evidence presented whatsoever denying the Beauviors the authorization to consume that gas.  In other words, the Opinion rules, if the debt collector merely attaches the term *unmetered* to the consumption of gas, under the FDCPA, the obligation to pay automatically changes from *authorized to use* as being a *theft*.  Yet, in many instances, a gas company bills the consumer for `unmetered gas´, such as when the meter reader could not access the meter.  According to the Opinion's logic, if the bill uses the word *unmetered*, the consumer is a *thief*.[3]  The Opinion's conclusion is thus in contrast to reality.

7.     The precedent for this case should mirror what the Court explained in *Romea,* once it found that the obligation to pay *arises out of a transaction*.  "The

---

[3] See *In Re 2222 Mgt. Corp. Katz v. Dept. of Envtl. Prot.*, 2004 NY Slip Op 51647(U) (12-15-2004), consumers were charged for unmetered water.  According to the conclusion of the Opinion, the petitioners were thieves because the DEP asserted basis is unmetered consumption of water.  Also see *Empire St. Bldg. v. N.Y. St. Dept. of Tax.*, 219 A.D.2d 459 [1st Dept 1995], the Empire State Building was charged tax for `unmetered´ electricity of some of its tenants.  Likewise, according to the conclusion of the Opinion, the Empire State Building tenants are thieves, for using unmetered electricity.

obligation to pay the bounced check, like the duty to pay back rent, does not derive from an extension of credit but rather because the payor breached its payment obligations in the contract between the parties." *Romea* at 115. According to *Romea,* the obligation to pay for the consumed gas does not derive from a meter. The meter exists only to measure the gas consumed by the customer. Like National Grid said in its state-court complaint, "when Defendants consumed Plaintiff's natural gas . . . a contractual relationship existed by and between the Plaintiff." (J.A. 56). Thus, the FDCPA should apply to this case because the contract authorized the Beauviors to consume the gas.

## II.     Pursuant to FRAP 35(b)(1)(B), *en banc* review is clearly warranted because the Opinion squarely conflicts with the precedent cited by the other Circuits.

8.     The Opinion relies on *Zimmerman v. HBO Affiliate Grp*. 834 F.2d 1163, 1168 (3d Cir. 1987). Therefore, the Opinion is in clear conflict with *Federal Trade Comm. v. Check Investors, Inc.*, 502 F.3d 159, 167-171 (3rd Cir. 2007). In *Federal Trade Comm*. the Third Circuit distinguished *Zimmerman* and held that the FDCPA does not contain a consumer fraud exception. Instead, the Third Circuit clearly held, even if the consumer is at fault for bouncing the check, the FDCPA still prohibits calling the consumer a 'thieve,' 'deadbeat,' 'criminal,' 'retard,' or 'idiot.' The Third Circuit agreed with the Seventh Circuit in distinguishing *Zimmerman,* "that the FDCPA was enacted to protect people who

6

have 'contracted for goods or services and are unable to pay for them,' ... clearly, there was no `debt´ in *Zimmerman* because the obligations arose out of a theft rather than a `transaction´." *Federal Trade Comm.* at 169. Here, the Beauviors obligation arose out of their contractual relationship with National Grid, even if they they may have consumed unmetered gas.

9.     Instead of following unified precedent, as in *Federal Trade Comm.,* by reviewing whether the obligation to pay *arises out of a transaction*. The Opinion creates a new and conflicting standard of an "asserted basis." Even on its own terms, the Opinion forgot to view the 'asserted basis for the obligation to pay' in the light most favorable to Plaintiff. Here the term *unmetered* was only the excuse of the debt collector as to why the Beauviors were not billed any sooner, similar to *Check Investors* calling its consumers thieves and criminal check writers. The Beauviors were not billed for a meter or for anything else; the asserted basis of the bill is that the Beauviors consumed that alleged amount of gas. J.A. 107. Still, National Grid never said that the Beauviors were not authorized to use that amount of gas, yet the Opinion authorizes David M. Israel to call the Beauviors thieves. Indeed, if the Opinion would have viewed the facts in light most favorable to Plaintiffs, National Grid did say in its state-court complaint, "when Defendants consumed Plaintiff's natural gas . . . a contractual relationship existed by and

7

between the Plaintiff." (J.A. 56). The Opinion flatly contradicts the very same state-court complaint it relied upon in reaching its conclusion.

10. All Courts understood that in the cases of *Zimmerman v. HBO Affiliate Grp*. 834 F.2d 1163, 1168 (3d Cir. 1987), *Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009), and *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998) "the obligations to pay were created by something other than a consumer transaction and were not consensual." *Heritage Pacific Financial, LLC v. Monroy*, 215 Cal.App.4th 972, 999 (2013). The Opinion missed that basic point, instead of viewing the subject of how the transaction arises as the obligation to pay. The Opinion cites cases like *Zimmerman, Fleming,* and *Hawthorne* but fails to apply the very same standard these cases applied to reach their conclusions.

11. Conterminously, the Opinion collides head on with settled precedent from this Circuit, such as *Romea*, which held that *Zimmerman* "misconstrues the issue." The appellant in *Romea* relied on *Zimmerman v. HBO Affiliate Grp*. 834 F.2d 1163, 1168 (3d Cir. 1987) and *Coretti v. Lefkowitz*, 965 F. Supp. 3 (D. Conn. 1997). *See Romea* 114-115 at ¶¶ 10 and 11 holding these cases "misconstrues the issue." The Opinion also conflicts with *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 *infra* (7th Cir. 1997), a case in which the Seventh Circuit distinguished *Zimmerman* and held the FDCPA focuses on whether there is a contract or transaction. Also *see Brown v. Budget Rent-a-car*

8

*Systems*, 119 F.3d 922, 925 (11th Cir. 1997) joining *Bass* to part ways with *Zimmerman.* Likewise, the Third Circuit adopted the *Bass* distinction in *Federal Trade Comm. v. Check Investors, Inc.*, 502 F.3d 159, 167-171 (3rd Cir. 2007) and held *Zimmerman* is not applicable case law when involving a transaction or contract. Moreover, the Third Circuit rejected *Zimmerman* and adopted *Romea* "We are not bound by the 'disavowed' statement in *Zimmerman*, as it was dictum. In our view, the plain meaning of section 1692a(5) indicates that a 'debt' is created whenever a consumer is obligated to pay money as a result of a transaction whose subject is primarily for personal, family or household purposes. No 'offer or extension of credit' is required." *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 169 (3rd Cir. 2000). Yet, the Opinion mistakenly relies on the clearly disavowed reasoning of *Zimmerman* and jumps to a conclusion that unmetered gas is a theft, without also reviewing the subject of the transaction whether the obligation to pay arises out of a transaction.

12. Indeed, the Opinion's mistaken conclusion of "asserted basis" clearly conflicts with *Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009), which holds "that a consensual obligation must be the basis for a transaction covered by § 1692a(5)." *Id* at 926. *Fleming* clearly looks at the subject of the transaction that made the obligation to pay and analyzes whether there was a consensual obligation. *Fleming* does not review the asserted basis. This Opinion clearly conflicts with *Fleming* by

creating a new standard to review standing under the FDCPA of an *asserted basis* instead of the *consensual* element of the *subject of the transaction*. Thus, the Opinion conflicts with *Fleming* and mistakenly disregarded that the Beauviors were in a consensual agreement with National Grid to consume as much gas they desired, and the consensual relationship was based on the amount of gas used. As National Grid declared in its state-court complaint, "when Defendants consumed Plaintiff's natural gas . . . a contractual relationship existed by and between the Plaintiff." (J.A. 56). Absent from the Opinion, is any reference to the record, alleging that the Beauviors were not authorized to use that gas.

13.   The Opinion also conflicts with *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998). "[T]he FDCPA may be triggered only when an obligation to pay arises out of a specified 'transaction'." *Hawthorne* at 1371. "[W]hen we speak of 'transactions,' we refer to consensual or contractual arrangements." *Id*. "[A] 'transaction' under the FDCPA must involve some kind of business dealing or other consensual obligation." *Id* at 1372. Because the subject of the transaction in *Hawthorne* involved a car accident, which transaction was not consensual, the FDCPA was held inapplicable. Here, the fact is that the Beauviors are in collection for the consensual contention of "current therm usage" deducing to $28,305.64. *See* J.A. 107. How the Opinion reached the conclusion of *Hawthorne* without also reviewing *Hawthorne*'s standard is hard to explain.

10

*Hawthorne* clearly reached its conclusion—unlike the Opinion—only after reviewing the subject of the transaction to see whether the obligation to pay *arises out of a transaction*. By contrast, the Opinion's new precedent reviews a "debt" using an *asserted basis* rather than the *subject of the transaction*, thus conflicting with *Hawthorne* and mistakenly disregarding the element of consensual usage of gas.

14. The Opinion's reliance on *Beggs v. Rossi*, 145 F.3d 511 (2nd Cir. 1998) also does not explain this new standard of an *asserted basis* enunciated in the Opinion. *Beggs* clearly relies on the subject of the transaction, by understanding that automobile taxes is not a per transaction obligation, "but rather upon the ownership of the vehicle by the citizen." *Id* at 512. This case involving the usage of gas is a charge per transaction, like National Grid declared in its state-court complaint, "when Defendants consumed Plaintiff's natural gas . . . a contractual relationship existed by and between the Plaintiff." (J.A. 56).

15. In each authority, the Opinion relied upon when arriving at the mistaken conclusion, the Opinion disregarded whether the obligation to pay money arises out of a transaction. The Opinion's reliance on *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) is vague. The Opinion mistakenly infers that the Beauviors did not allege the "existence of a 'consumer debt,'" because "National Grid's May 31, 2012 state-court complaint, alleg[e] that the Beauviors diverted and consumed

11

unmetered natural gas ... by means of unlawfully tampering with National Grid's
gas meter."  (Exhibit 1, p 9).  But in the very same state-court complaint National
Grid declared "when Defendants consumed Plaintiff's natural gas . . .  a
contractual relationship existed by and between the Plaintiff."  (J.A. 56).

16.   Nonetheless, the Supreme Court has clarified, "Federal pleading rules
call for 'a short and plain statement of the claim showing that the pleader is entitled
to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a
complaint for imperfect statement of the legal theory supporting the claim
asserted." *Johnson v. City of Shelby, Mississippi*, 574 U.S. ____, ____ (11-10-
2014)(per curium).  "Our decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S.
544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), are not in point, for they
concern the factual allegations a complaint must contain to survive a motion to
dismiss." *Johnson* at id.  "A plaintiff, they instruct, must plead facts sufficient to
show that her claim has substantive plausibility."  *Id*. "Petitioners' complaint was
not deficient in that regard."  *Id*.  "Rule 8(a)(2) 'indicates that a basic objective of
the rules is to avoid civil cases turning on technicalities'.  In particular, no
heightened pleading rule requires plaintiffs seeking damages for violations of
constitutional rights to invoke § 1983 expressly in order to state a claim." *Johnson*
at id.  Yet, the Opinion declares that the Beauviors failed to plead the technicality
"existence of a 'consumer debt.'"  (Exhibit 1, p. 9).  Given that National Grid

acknowledges that the Beauviors consumer-transaction was contingent on the use of gas, leave to amend should be granted like in *Johnson*, to avoid this civil case from resting on mere technicalities.

III.     **Contrary to the Opinion, all Circuits that addressed the issue held that the text of FDCPA does not create a fraud exception. If the obligation to pay arises out of a transaction, regardless of the fraud allegation against the consumer, the FDCPA governs the debt collector practices.**

17.   The Opinion framed the question of this case, "whether money owed as a result of theft of unmetered natural gas qualifies as a 'debt,' . . . We hold that money owed as a result of theft is not an 'obligation or alleged obligation of a consumer to pay money arising out of a transaction' and, therefore, does not constitute a "debt" for purposes of the FDCPA. 15 U.S.C. § 1692a(5)." (Exhibit 1, p 2-3). Other than the new "asserted basis" precedent, the Opinion does not articulate how a transaction of natural gas becomes theft if the gas is unmetered.

18.   Even if assuming arguendo that the mere allegation of diverting gas or breaking the meter constitutes theft, the Opinion still stands inapposite to all circuits that have addressed the issue. "Moreover, courts generally will not create a fraud exception where none exists in the text of the statute. The wrong occasioned by debtor fraud is more appropriately redressed under the statutory and common law remedies already in place." *Duffy v. Landberg*, 133 F.3d 1120, 1124 (8th Cir. 1998), also see *Romea* following *Duffy* at 114-5, n4 and n5. The Third

13

Circuit adopted *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 *infra* (7th Cir. 1997) even if the "consumer engaged in fraud at the time of the transaction," the FDCPA still applies. *Federal Trade Comm. v. Check Investors, Inc.*, 502 F.3d 159, 170-171 (3rd Cir. 2007). "As we explained in *Bass*, neither the text nor underlying legislative history of the FDCPA lends itself to the recognition of a fraud exception." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). "We find the Seventh Circuit's reasoning to be sound." *Charles v. Lundgren & Associates, P.C.*, 119 F.3d 739, 742 (9th Cir. 1997). Thus, even if National Grid alleged that the Beauviors "diverted and consumed unmetered natural gas by means of unlawfully tampering with National Grid's gas meter," at the most this is an allegation of committing fraud to deceive National Grid, better addressed in the State courts. The FDCPA simply does not contain a fraud exception. If the Beauviors show that their consumption of gas arises out of a consensual transaction with National Grid, the Opinion is flatly contradicted by the facts and the law. Here, National Grid conceded that in the same period of consuming unmetered gas, "when [the Beauviors] consumed [National Grid]'s natural gas . . . a contractual relationship existed by and between the [National Grid]." (J.A. 56). Conterminously, National Grid conceded that in the same time of the alleged unmetered gas, the Beauviors paid National Grid $5,414.24 in accordance with the invoices. (J.A. 107). Therefore, rehearing is required. The

14

proper course for the Court to apply "In determining whether an obligation is a 'debt' under the FDCPA, the relevant consideration is whether the obligation arose out of a transaction of the type specified in the FDCPA, not whether the obligation is imposed or enforceable by statute." *Eades v. Kennedy, PC Law Offices*, ___ F.3d ___, ___ 2015 WL 3498784 *5 (2nd Cir. 6-4-2015). If a transaction existed, the Court should reconsider to determine if the unmetered gas arose out of that transaction. Then the next review should be whether the subject of that transaction−gas is for personal, family, or household purposes. If the Court's reconsideration answers all three questions in the affirmative, the Opinion should be set aside, and the Court should vacate and reverse the district court's judgment.

## CONCLUSION

The Petitioner for Rehearing or Rehearing En Banc of the panel's published decision rendered on July 21, 2015 should be granted.

Dated:     Brooklyn, NY
            August 4, 2015                Levi Huebner & Associates, PC

                               /s/ Levi Huebner

                           _____

                           By: Levi Huebner

                           *Attorneys for Appellants*

                           535 Dean Street, Suite 100
                           Brooklyn, NY 11217
                           Tel: (212) 354-5555
                           Fax: (347) 350-8789
                           Email: newyorklawyer@msn.com

14-3794-cv
*Beauvoir v. Israel*

# In the
# United States Court of Appeals
## for the Second Circuit

———

AUGUST TERM 2014
No. 14-3794-cv

GARY BEAUVOIR, HUSBENE BEAUVOIR,
on behalf of themselves and all other similarly situated consumers,
*Plaintiffs-Appellants,*

*v.*

DAVID M. ISRAEL,
*Defendant-Appellee.*<sup>*</sup>

———

On Appeal from the United States District Court
for the Eastern District of New York

———

ARGUED: JUNE 24, 2015
DECIDED: JULY 21, 2015

———

Before: CABRANES, POOLER, and DRONEY, *Circuit Judges.*

———

<sup>*</sup> The Clerk of Court is directed to amend the official caption to conform
with the above.

--------

The question presented is whether money owed as a result of theft of unmetered natural gas qualifies as a "debt" for purposes of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p ("FDCPA").

We hold that money owed as a result of theft is not an "obligation or alleged obligation of a consumer to pay money arising out of a transaction" and, therefore, does not constitute a "debt" for purposes of the FDCPA. 15 U.S.C. § 1692a(5).

We thus affirm the August 7, 2014 judgment of the United States District Court for the Eastern District of New York (Frederic Block, *Judge*).

--------

LEVI HUEBNER, Levi Huebner & Associates, PC, Brooklyn, NY, *for Plaintiffs-Appellants*.

MATTHEW J. BIZZARO, L'Abbate, Balkan, Colavita & Contini, L.L.P., Garden City, NY, *for Defendant-Appellee*.

--------

JOSÉ A. CABRANES, *Circuit Judge*:

The question presented is whether money owed as a result of theft of unmetered natural gas qualifies as a "debt" for purposes of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p ("FDCPA").

We hold that money owed as a result of theft is not an "obligation or alleged obligation of a consumer to pay money arising out of a transaction" and, therefore, does not constitute a "debt" for purposes of the FDCPA. 15 U.S.C. § 1692a(5).

We thus affirm the August 7, 2014 judgment of the United States District Court for the Eastern District of New York (Frederic Block, *Judge*).

## BACKGROUND

Plaintiffs Gary and Husbene Beauvoir appeal from the District Court's August 7, 2014 judgment granting defendant's motion to dismiss and dismissing plaintiffs' complaint.

On March 8, 2013, the Beauvoirs filed their putative class action complaint against defendant David M. Israel, an attorney representing National Grid New York ("National Grid"), a company that provided natural gas to the Beauvoirs' home. The complaint alleged that Israel sent the Beauvoirs a letter on April 23, 2012, which stated that National Grid had referred the matter to him "for purposes of collection of the debt in the amount set forth above, based upon the consumption of unmetered gas" at the Beauvoirs' residence. J.A. 20. Although the letter advised the Beauvoirs of their right to dispute National Grid's claim, it did not advise them that they had thirty days to do so or state the amount of the debt. The Beauvoirs allege that these omissions violated the FDCPA. *See* 15

3

U.S.C. § 1692g(a).[1] The Beauvoirs also allege that the collection letter violated 15 U.S.C. § 1692e(5) and (10) because it purportedly "engag[ed] in deceptive and falsely threatening practices." J.A. 15.[2]

---

[1] Section 1692g(a) provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

> (1) the amount of the debt;

> (2) the name of the creditor to whom the debt is owed;

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

[2] Sections 1692e(5) and (10) provide:

Separately, in a state-court complaint filed on May 31, 2012 by National Grid against the Beauvoirs, National Grid alleged that the Beauvoirs "diverted and consumed unmetered natural gas . . . by means of unlawfully tampering with [National Grid's] gas meter to impede, impair, obstruct and prevent the said meter from performing its recording function." J.A. 54. In proceedings before the District Court, Israel asserted that the Beauvoirs had failed to state a claim under the FDCPA, because the collection action he initiated concerned an alleged *theft* of natural gas and, thus, did not concern a *debt*, as that term is defined in the statute.

On August 7, 2014, the District Court granted Israel's motion to dismiss, holding that "obtaining natural gas through meter tampering is theft and, as such, outside the scope of the FDCPA." The District Court further held that it was immaterial that the

---

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Beauvoirs deny the alleged theft because "the merit[] of that claim is not a matter for the Court to decide. . . . What matters in the context of an FDCPA claim is the asserted basis for the obligation to pay."

This appeal followed.

## DISCUSSION

### I.

As a preliminary matter, we must address whether we have jurisdiction to hear this case. Plaintiffs filed a notice of appeal out of time. Simultaneous with that late filing, plaintiffs filed a motion to extend the time to file a notice of appeal, which the District Court granted before defendant responded. Defendant then filed a motion for reconsideration. That motion remained pending in the District Court for several months while the parties briefed this appeal. Because that motion was still pending, we issued an order to show cause why this appeal should not be dismissed for lack of jurisdiction. Shortly thereafter, the District Court denied the motion for reconsideration.

The Federal Rules of Appellate Procedure do not appear to address this unusual situation. *See generally* Fed. R. App. P. 4(a). Had the motion for reconsideration remained pending in the District Court while we heard this appeal, we may very well have lacked appellate jurisdiction. If that were not the rule, and we had exercised jurisdiction, then the appeal may have overtaken the motion still pending in the District Court, the result of which may have

determined whether we had jurisdiction in the first place. In such a case, a party effectively may never be able to have a district court reconsider its grant of a motion to extend the time to file a notice of appeal.

In any event, the District Court's intervening denial of the motion for reconsideration has mooted this issue. We conclude that, in the circumstances presented, we have appellate jurisdiction.

## II.

"We review *de novo* a district court judgment granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), accepting all factual allegations in the complaint as true." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014).

The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). We have held that, "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value." *Beggs v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998) (internal quotation mark omitted).

Although we have not previously had occasion to address whether money owed as a result of theft constitutes a "debt" for purposes of the FDCPA, several of our sister circuits have addressed the question and unanimously held that liability deriving from theft or torts does not constitute a "debt" within the meaning of the FDCPA. *See Fleming v. Pickard*, 581 F.3d 922, 926 (9th Cir. 2009) ("[W]e have little difficulty concluding that Defendants' cause of action against Plaintiffs for wrongful conversion does not, as a matter of law, constitute a debt for purposes of the FDCPA."); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) ("[T]he FDCPA may be triggered only when an obligation to pay arises out of a specified 'transaction' . . . . Because Hawthorne's alleged obligation to pay Mac Adjustment for damages arising out of an accident does not arise out of any consensual or business dealing, plainly it does not constitute a 'transaction' under the FDCPA."); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997) ("[A]lthough a thief undoubtedly has an obligation to pay for the goods or services he steals, the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services."); *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1168 (3d Cir. 1987) ("[N]othing in the statute or the legislative history leads us to believe that Congress intended to equate asserted tort liability with asserted consumer debt.").[3] Each

---

[3] *See also Coretti v. Lefkowitz*, 965 F. Supp. 3, 5 (D. Conn. 1997) ("A claim arising out of an alleged theft does not constitute a 'debt' under the FDCPA.").

8

court reasoned that the "transaction" from which the obligation to pay money arises must, by definition, be one that is consensual in nature.

We join our sister circuits and hold that money owed as a result of theft is not an "obligation or alleged obligation of a consumer to pay money arising out of a transaction" and, therefore, does not constitute a "debt" for purposes of the FDCPA. 15 U.S.C. § 1692a(5). Such an obligation plainly is not one that has "arisen as a result of the rendition of a service or purchase of property or other item of value." *Beggs*, 145 F.3d at 512.

Applying this holding, we conclude that the Beauvoirs have not plausibly alleged a "debt" within the meaning of the FDCPA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint alleges in only conclusory terms the existence of a "consumer debt." J.A. 11–12. This threadbare recital is contradicted by the April 23, 2012 letter from Israel, attached as an exhibit to the Beauvoirs' complaint, stating that the money owed is a result of "the consumption of unmetered gas," J.A. 20, and by National Grid's May 31, 2012 state-court complaint, alleging that the Beauvoirs "diverted and consumed unmetered natural gas . . . by means of unlawfully tampering with [National Grid's] gas meter," J.A. 54. *See Iqbal*, 556

9

U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[4]

This does not mean that we accept the allegation of theft as true. As the District Court observed, "the Court need not determine whether the Beauvoirs are or are not actually liable to National Grid for theft. What matters in the context of an FDCPA claim is the asserted basis for the obligation to pay."[5] The Beauvoirs are correct that a defendant may not evade the protections of the FDCPA

---

[4] It is well established that "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Furthermore, we may take judicial notice of the *fact* that the state-court complaint contained certain statements, albeit "not for the truth of the matters asserted." *Id.* (internal quotation marks and emphasis omitted); *see also Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 157 (1969) ("As the respondent suggests, we may properly take judicial notice of the record in that [separate] litigation between the same parties who are now before us."); *In re Thelen LLP*, 736 F.3d 213, 223 n.13 (2d Cir. 2013) ("This panel has taken judicial notice of the arguments raised in [a separate] appeal."); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) ("[T]he Complaint's attenuated allegations of control are contradicted both by more specific allegations in the Complaint and by facts of which we may take judicial notice."); *Kaggen v. I.R.S.*, 71 F.3d 1018, 1020 (2d Cir. 1995) ("[T]his Court may appropriately take judicial notice of the fact that banks do send monthly statements to customers and that those statements tell customers to whom their money was paid and in what amounts.").

[5] *See, e.g.*, *Zimmerman*, 834 F.2d at 1164, 1166 (affirming dismissal of complaint brought by plaintiff merely "*accused* of having illegally received microwave television signals" because plaintiff had not alleged a "debt" within the meaning of the FDCPA, even though plaintiff had "no antenna on his roof" and wires from neighbor's antenna were "not connected to anything" (emphasis supplied)).

merely by framing the basis of the alleged obligation in terms of theft or tort.[6] By the same token, however, a plaintiff may not impose the burdens of the FDCPA on an obligation outside the scope of the statute.

## CONCLUSION

We hold that money owed as a result of theft is not an "obligation or alleged obligation of a consumer to pay money arising out of a transaction" and, therefore, does not constitute a "debt" for purposes of the FDCPA.

For the reasons set forth above, we **AFFIRM** the District Court's August 7, 2014 judgment.

---

[6] *Cf. Coretti*, 965 F. Supp. at 5 ("Plaintiff is correct that a debt collector cannot escape the provisions of the FDCPA by using alternative means of collecting a debt, such as through a court proceeding. However, there must be a debt.").